1/22/2024 9:21 PM
24CV03484

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

| | |
|---|---|
| **CHARLYN ELLIS,** an individual, | Case No. 24CV03484 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** (ORS 28.010 *et seq.*) |
| vs. | |
| **CITY OF CORVALLIS**, acting by and through the Corvallis City Council, | Fee pursuant to ORS 21.135(1), (2)(f) |
| Defendant. | JURY TRIAL DEMANDED |
| | <u>Not</u> subject to mandatory arbitration |

## OVERVIEW OF CASE

1.      Elected by the people, Plaintiff Charlyn Ellis ("Councilor Ellis") serves on the Corvallis City Council representing Ward 5. Due to controversial comments Councilor Ellis made during several public meetings, she is now the target of a formal removal proceeding initiated by the City under color of Section 23(f) of the Corvallis City Charter. The matter is scheduled to be heard by the Corvallis City Council on February 5, 2024.

2.      The City's decision to initiate and prosecute an expulsion proceeding based solely on the content of Councilor Ellis's protected speech violates Article I, section 8 of the Oregon Constitution and the First Amendment to the U.S. Constitution, as made applicable to the states

PAGE 1 OF 7 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF **Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com
Ex. 1
Page 1 of 73

through the Fourteenth Amendment. It is also having the effect of chilling public speech in Corvallis, and is disenfranchising local voters.

3.      Councilor Ellis seeks a judgment, among other things: (1) declaring that the City's expulsion proceeding, which is solely based upon Councilor Ellis's protected speech, violates Article I, section 8 of the Oregon Constitution and the First Amendment; (2) declaring void any City Council decision that purports to remove Councilor Ellis from office based on her protected speech; and (3) declaring Section 23(f) of the Corvallis City Charter void. Councilor Ellis also seeks corresponding and appropriate injunctive relief.

## PARTIES

4.      As indicated above, Councilor Ellis is the elected Corvallis City Council representative from Ward 5. She was first elected to that position in 2016, and has served multiple two-year terms since then. She is currently serving her fourth term, from January 2023 through December 2024.

5.      The Corvallis City Council is the governing body of the City of Corvallis. The City Council is composed of nine voting Councilors, one elected from each of nine wards, plus a non-voting Mayor.

## FACTS

6.      As part of her duties as a City Councilor, Councilor Ellis is a member of (and Chairs) the Corvallis Climate Action Advisory Board (CAAB). The CAAB is tasked, among other things, with helping Corvallis meet the greenhouse gas emissions target set forth in the Corvallis Climate Action Plan (CAP), and with advising the City Council on all matters related to implementation of the CAP.

PAGE 2 OF 7 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF   **Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com
Ex. 1
Page 2 of 73

7.      On September 13, 2023, at a public meeting of the CAAB, Councilor Ellis raised a concern that the CAAB had insufficient City staff support to fulfill its mission, and pointed out that the position of Climate Program Specialist, a City job, was vacant. As a result, the CAAB agreed to advise the City Council to consider directing the City Manager to post the position of Climate Program Specialist for hiring. The City Manager was not present at that meeting.

8.      In keeping with the direction from the CAAB, on September 18, 2023, at a public meeting of the City Council, Councilor Ellis moved the Council "to direct the City Manager to post the full-time job position of Climate Program Specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled." The motion was not adopted. The City Manager was not present at that meeting.

9.      On November 27, 2023, the Mayor, Council President, and City Attorney met with Councilor Ellis. At that meeting, Councilor Ellis was told that, due to her public statements made at the September 13th and September 18th meetings, she was being accused of violating Section 23(f) of the City Charter, and that removal proceedings were being initiated by the City.

10.     Section 23(f) of the City Charter provides, in full, as follows:

> Interference in administration and elections.  Neither the Mayor nor any member of the Council shall in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies; or attempt to exact any promise relative to any appointment from any candidate for Manager, or discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment. A violation of the foregoing provisions of this section shall forfeit the office of the offender.  Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

11.     The allegations and charges filed against Councilor Ellis are set forth in a document entitled "A Resolution Regarding a Violation of Charter Section 23(f) and Declaring a

PAGE 3 OF 7 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  **Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

Vacancy in the Ward 5 Council Position" (hereinafter "the Expulsion Resolution"), as supported by the joint Declaration of Mayor Charles Maughan, Council President Tracey Yee, Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James Brewer.

12.     The Expulsion Resolution is scheduled for a so-called "due process hearing" on February 5, 2024.

13.     But-for Councilor Ellis' statements at the September 13th and 18th meetings, the City would not have initiated proceedings to remove her from office under Section 23(f) of the City Charter.

14.     Due to the above-described pending expulsion proceeding at the City, including the threat to remove Councilor Ellis from office, and the City's application of Section 23(f) of the City Charter, Councilor Ellis has refrained from speaking further on the subject of City hiring activities, including her political position on the importance of posting the Climate Program Specialist position for hiring.

## LEGAL FRAMEWORK

### Article 1, section 8 of the Oregon Constitution

15.     Article I, section 8 of the Oregon Constitution provides that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever."

### First Amendment to the U.S. Constitution

16.     As made applicable to the states through the Fourteenth Amendment, the First Amendment prohibits both any law "abridging the freedom of speech" and governmental retaliation based on the content of protected speech.

PAGE 4 OF 7 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

17.     Monetary damages are available to successful First Amendment retaliation plaintiffs under 42 U.S.C. § 1983.

**FIRST CLAIM FOR RELIEF**
**(Violations of Or. Const., Art. I, § 8)**
**(ORS 28.010 *et seq*)**

18.     Councilor Ellis realleges and incorporates by reference all prior paragraphs.

19.     Section 23(f) is both facially void and void as applied under Article I, section 8 of the Oregon Constitution because it constitutes a content-based restraint on speech, or it is unconstitutionally overbroad.

20.     The City's expulsion proceeding against Councilor Ellis under Section 23(f) of the City Charter is unconstitutional and impermissible under Article I, section 8 of the Oregon Constitution and should be enjoined.

21.     Any City Council decision that purports to remove Councilor Ellis from office based on her protected speech made in public meetings on September 13 and/or 18, 2023, is invalid.

22.     Any Corvallis City Charter or code provision purporting to authorize a removal proceeding solely based on protected speech is, to that extent, invalid.

23.     Upon prevailing on this claim, Councilor Ellis is entitled to her reasonable attorney fees under Oregon's public benefit doctrine.

**SECOND CLAIM FOR RELIEF**
**(Violations of First Amendment)**
**(ORS 28.010 *et seq* and 42 U.S.C. § 1983)**

24.     Councilor Ellis realleges and incorporates by reference all prior paragraphs.

25.     Section 23(f) is both facially void and void as applied under the First Amendment to the U.S. Constitution, as made applicable to the states under the Fourteenth Amendment.

PAGE 5 OF 7 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  **Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

26.     Councilor Ellis' speech made in public meetings on September 13 and 18, 2023, was protected speech under the First Amendment. There is no probable cause to support the City's expulsion proceeding.

27.     The City would not have brought its expulsion proceeding against Councilor Ellis but-for her protected speech made on September 13 and/or 18, 2023. In other words, the expulsion proceeding is retaliatory.

28.     The City's action in bringing and prosecuting is expulsion proceeding against Councilor Ellis would have a chilling effect on a person of ordinary firmness in the same or similar circumstances, and in fact is having such a chilling effect.

29.     The City's expulsion proceeding against Councilor Ellis under Section 23(f) of the City Charter is unconstitutional and impermissible under the First Amendment and should be enjoined.

30.     Any City Council decision that purports to remove Councilor Ellis from office based on her protected speech made in public meetings on September 13 and/or 18, 2023, is invalid.

31.     Any Corvallis City Charter or code provision purporting to authorize a removal proceeding solely based on protected speech is, to that extent, invalid.

32.     The City's actions described herein have caused and will continue to cause Councilor Ellis significant noneconomic damages, however she seeks only $1.00 in nominal damages under 42 U.S.C. § 1983.

33.     Upon prevailing on this claim, Councilor Ellis is entitled to an award of reasonable attorney fees and costs under 42 U.S.C. §§ 1983 and 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Councilor Ellis respectfully requests that this Court issue a judgment against the City of Corvallis as follows:

A.    Declaring that Section 23(f) of the Corvallis City Charter is invalid under Article I, section 8 of the Oregon Constitution and the First Amendment;

B.    Declaring that the City's expulsion proceeding against Councilor Ellis is unconstitutional under Article I, section 8 of the Oregon Constitution and the First Amendment;

C.    Declaring void any City Council decision that purports to expel Councilor Ellis from office based on her protected speech on September 13 and/or 18, 2023;

D.    Issuing preliminary and permanent injunctive relief preventing the City from enforcing Section 23(f) of the Charter against Councilor Ellis or anyone else;

E.    Awarding Councilor Ellis nominal damages in the amount of $1.00;

F.    Awarding Councilor Ellis her reasonable costs, litigation expenses, and attorney fees associated pursuant to Oregon's public benefit doctrine and 42 U.S.C. §§ 1983 and 1988; and

G.    Granting such further relief as this Court deems just and proper.


Dated this 22nd day of January 2024.


 *s/ Jesse A. Buss*
Jesse A. Buss, OSB # 122919
WILLAMETTE LAW GROUP, PC
411 Fifth St.
Oregon City OR 97045
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

*Attorney for Plaintiff*

PAGE 7 OF 7 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF   Jesse A. Buss, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
Ex. 1    503-656-4884, jesse@WLGpnw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

|  | 24CV03484 |
|---|---|
| **CHARLYN ELLIS,** an individual, | Case No. |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | (ORCP 79) |
| **CITY OF CORVALLIS**, acting by and through the Corvallis City Council, | Oral Argument Requested: 1 hour |
| Defendant. | EXPEDITED CONSIDERATION REQUESTED |

## I.  Introduction

The issue in this free-speech case is whether a local government can bring and prosecute a local proceeding to expel an elected local government official from office based solely on the content of that official's speech. The answer is no, and even the attempt to do so is a violation of Article I, section 8 of the Oregon Constitution and the First Amendment to the U.S. Constitution. The electorate cannot be disenfranchised so brazenly, nor may political speech be so easily chilled.

Plaintiff Charlyn Ellis ("Councilor Ellis") is an elected member of the Corvallis City Council currently subject to an expulsion proceeding brought and being prosecuted by Defendant City of Corvallis ("the City"). As alleged in the Complaint and as supported by the

PAGE 1 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

accompanying declaration, the City's proceeding, brought under Section 23(f) of the City

Charter, is solely based upon and is in retaliation for the content on Councilor Ellis' protected

speech. The speech for which Councilor Ellis is being prosecuted was *her mere suggestion that*

*the City Council direct the City Manager to post the job opening for an existing, yet vacant City*

*employee position* relating to climate change mitigation. The ongoing prosecution of the

expulsion proceeding against Councilor Ellis, including the planned February 5th "due process

hearing," violates her rights to free expression. A preliminary injunction pausing the local

proceeding is appropriate because Councilor Ellis is likely to succeed on the merits of her

Article I, section 8 and First Amendment claims, Councilor Ellis will suffer irreparable harm if

the local prosecution continues, the balance of the equities tips in Councilor Ellis' favor, and the

public interest favors an injunction.

An expedited decision is requested no later than Friday, February 2nd, as the local

hearing is scheduled for Monday, February 5th.

**Motion**

Pursuant to ORCP 79 A, therefore, Councilor Ellis moves the Court for an order granting

a preliminarily injunction against the City and its officers, agents, servants, employees, and

attorneys as follows:

1.     Enjoining the City from continuing to prosecute Councilor Ellis under Section

23(f) of the Corvallis City Charter until further order of this Court.

2.     Ordering the City to cancel the so-called "due process hearing" currently

scheduled in the local proceeding for February 5, 2024, and to set no future hearing date in that

matter until further order of this Court.

PAGE 2 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

3.      Enjoining the City from adopting the proposed resolution entitled "A Resolution Regarding a Violation of Charter Section 23(f) and Declaring a Vacancy in the Ward 5 Council Position" (hereinafter "the Expulsion Resolution"),[1] or any similar resolution, until further order of this Court.

4.      Enjoining the City from bringing or prosecuting any additional proceedings against Councilor Ellis or any other City Councilor under Section 23(f), until further order of this Court.

5.      For any other preliminary relief the Court deems just and proper under the circumstances.

This motion is supported by the declaration of Councilor Ellis, submitted herewith.

The City's prosecution of Councilor Ellis is currently causing harm to her rights of free expression and, if the City is allowed to continue the prosecution or take any of the other above-described actions, it will cause and will continue to cause immediate and irreparable injury to Councilor Ellis because:

1.      Section 23(f) of the City Charter regulates speech in violation of Article I, section 8 of the Oregon Constitution; and

2.      Section 23(f) of the City Charter regulates speech in violation of the First Amendment to the U.S. Constitution.

Councilor Ellis further requests that the surety amount pursuant to ORCP 82 be set at $0.00 because a preliminary injunction is sought to prevent unlawful conduct and the effect of the injunction is to restrict the enjoined party to available judicial remedies. Further, issuance of a preliminary injunction will not prejudice the City or its prosecution, but will only have the effect of postponing any local hearing until the Court renders a final judgment on Councilor

---

[1]      A true copy of the Expulsion Resolution is attached to the Ellis Declaration as Exhibit 1.

PAGE 3 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

Ellis' claims under Article I, section 8 of the Oregon Constitution and the First Amendment to the U.S. Constitution.

### Statement of Points and Authorities

#### I.  Facts

Councilor Ellis is an elected City Councilor for the City of Corvallis, representing Ward 5. Ellis Decl. at ¶ 3. She serves with eight other City Councilors, each of whom have voting rights, and a non-voting elected Mayor. The City Council is the governing body of the City of Corvallis, serving as the final decision-maker for the City's legislative and adjudicative matters.

Due to comments Councilor Ellis made during several public meetings in late 2023, including a motion she offered to the City Council, she is now the target of a formal removal proceeding initiated by her political opponents under color of Section 23(f) of the Corvallis City Charter. *Id.* at ¶¶ 7-8. The matter is scheduled to be heard by the Corvallis City Council on February 5, 2024. *Id.* at ¶ 9.

According to the proposed Expulsion Resolution, to be considered for adoption at the February 5th hearing, "the purpose of the [February 5th] hearing [is] for the City Council to determine if, at the September 13, 2023 Climate Action Advisory Board meeting, or if at the September 18, 2023 City of Corvallis City Council meeting[,] or if by actions at both meetings, Councilor Ellis violated Section 23(f) of the Corvallis Charter[.] Ellis Decl., Ex. 1 at 2.

Section 23(f) of the City Charter reads in full as follows:

> "Interference in administration and elections. Neither the Mayor nor any member of the Council shall in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies; or attempt to exact any promise

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

relative to any appointment from any candidate for Manager, or discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment. A violation of the foregoing provisions of this section shall forfeit the office of the offender. Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City."

With regard to the September 13th meeting, the Expulsion Resolution alleges that "Councilor Ellis introduced and discussed a concern that the Corvallis Climate Action Advisory Board had insufficient staff support to conduct its meetings and work and advocated to the Climate Action Advisory Board that it adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties to support the work of the Corvallis Climate Action Advisory Board within a specific amount of time[.]" Ellis Decl., Ex. 1 at 2. With regard to the September 18th meeting, the Expulsion Resolution alleges that "Council Ellis moved 'to direct the City Manager to post the full-time job position of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled[.]'" *Id.*[2]

The Expulsion Resolution charges Councilor Ellis with violating Section 23(f) of the City Charter, and calls for her removal from elected office, as follows:

"[T]he actions of Councilor Ellis at the [September 13th meeting] were a direct and indirect attempt to influence the City Manager in the appointment of an employee and an attempt to discuss indirectly with the City Manager the matter of specific appointment to City employment; and

---

[2]    Councilor Ellis also told City Council: "So I am asking that the council direct the city manager to post the job [of climate program specialist] so that we can hire, because the work, we are in a climate emergency, we have had the hottest summer on record, and we're just not going to get anywhere unless we have staff, at least not as a city." September 18, 2023 City Council Meeting, https://vimeo.com/866087718?share=copy, beginning at 2:19:42.

PAGE 5 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

Jesse A. Buss, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

> "[T]he actions of Councilor Ellis at the [September 18th meeting] were a direct attempt to influence the City Manager in the appointment of an employee and an attempt to discuss directly with the City Manager the matter of specific appointment to City employment[.]"

Ellis Decl., Ex. 1 at 3. The Expulsion Resolution makes no other charges against Councilor Ellis. As the charges themselves make clear, they are based solely on the content of Councilor Ellis' speech.

The Expulsion Resolution concludes by stating that, "based on the recitals set out in this resolution, Councilor Charlyn Ellis violated Section 23(f) of the Corvallis City Charter and has forfeited her office as a Councilor effective immediately." Ellis Decl., Ex. 1 at 3. It then declares her position vacant, and directs the City Manager to start the process of finding a replacement for Councilor Ellis' Ward 5 position, which is to be filled by appointment. *Id.*

As noted, the City Council is scheduled to consider and vote on the Expulsion Resolution on February 5, 2024. The City hired special counsel to represent the City in prosecuting the local proceeding against Councilor Ellis. *Id.* at ¶ 10. On January 22, 2024, that special prosecutor submitted a 29-page brief in anticipation of the February 5th hearing, a copy of which is attached to the Ellis Declaration at Exhibit 3. In that memorandum, the City faults Councilor Ellis for "Introduc[ing] an 'Emergency' Hiring Demand," "Initiat[ing] the Strategy and Motion" before the CAAB, "Ask[ing] CAAB to Make a Strong Statement and a Motion for a Permanent Position to Support CAAB," "Agree[ing] that the Motion Should be for a Sustainability Position to Support CAAB," and "Ask[ing] the CAAB Members to Pack the City Council meeting to Make a Powerful Statement," among other allegedly expulsion-worthy public political statements. *Id.*, Ex. 3 at 2. The entirety of the City's hearing memorandum is provided so that this Court can see that the City's entire argument for Councilor Ellis' expulsion from elected office is based on, and in retaliation for, her protected political speech.

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

1

### III.  Argument

2

If this Court does not act quickly by granting a preliminary injunction, Councilor Ellis

3

will be subject to a politicized local proceeding to determine if she should lose her elected

4

position representing Corvallis' Ward 5, and for no other reason than that she suggested, in two

5

open public meetings, that the City Council should adopt a motion directing the City Manager

6

to get working on hiring for the existing, yet vacant, position of climate program specialist. At

7

the February 5th hearing the City Council may vote to remove Councilor Ellis from office, and

8

then proceed, as outlined in the Expulsion Resolution, to recruit for and appoint a replacement

9

councilor for Ward 5. Ellis Decl, Ex. 1 at 3. That would undermine democracy in Corvallis, and

10

would completely disenfranchise the voters of Ward 5 who elected Councilor Ellis to her

11

position. If the voters have a problem with the way Councilor Ellis is doing her job, then they

12

can recall her under Article II, Section 18 of the Oregon Constitution. The City Council,

13

however, does not have that power, and to the extent Section 23(f) of the Corvallis City Charter

14

suggests otherwise, it is void as purporting to regulate the content of speech.

15

16

17

### A.     Preliminary injunction standards

18

This motion is brought under ORCP 79 A(1), which provides that a "preliminary

19

injunction may be allowed under this rule [] when it appears that a party is entitled to relief

20

demanded in a pleading, and such relief, or any part therefor, consists of restraining the

21

commission or continuance of some act, the commission or continuance of which during the

22

litigation would produce injury to the party seeking the relief," or "[w]hen it appears that the

23

party against whom a judgment is sought is doing or threatens, or is about to do, or is procuring

24

or suffering to be done, some act in violation of the rights of a party seeking judgment

25

concerning the subject matter of the action, and tending to render the judgment ineffectual."

26

PAGE 7 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

1

2   There is little Oregon appellate caselaw governing the preliminary injunction standard, so

3   Oregon courts typically look to and rely on caselaw interpreting and applying FRCP 65, which

4   governs preliminary injunctions in federal court. *See Von Ohlen v. German Shorthaired Pointer*

5   *Club of Am., Inc.,* 179 Or App 703, 710–711 (2002). This motion therefore explains and then

6   applies the federal standard under FRCP 65.

7        Under FRCP 65, the Court may issue a preliminary injunction pending final resolution of

8   a plaintiff's claims. Typically, a plaintiff must demonstrate "[1] that he is likely to succeed on the

9   merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

10  the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Shell*

11  *Offshore, Inc. v. Greenpeace, Inc.*, 709 F3d 1281, 1289 (9th Cir 2013) (citing *Winter v. Nat. Res.*

12  *Def. Council, Inc.*, 555 US 7, 20 (2008)).[3] "The first factor . . . is the most important." *Garcia v.*

13  *Google, Inc.,* 786 F3d 733, 740 (9th Cir 2015). However, a plaintiff need "only show that there

14  are 'serious questions going to the merits'… if the 'balance of hardships tips *sharply* in the

15  plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore*, 709 F3d at 1291

16  (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F3d 1127, 1135 (9th Cir 2011)). As the

17  concurring opinion in *Alliance for the Wild Rockies* explained, 632 F3d at 1139 (Mosman, J.,

18  concurring): a "district court at the preliminary injunction stage is in a much better position to

19  predict the likelihood of harm than the likelihood of success … in many, perhaps most, cases the

20  *better* question to ask is whether there are serious questions going to the merits." *Id.* at 1140.

21

22       Although injunctive relief is an extraordinary remedy and requires a clear showing that a

23  plaintiff is entitled to such relief, *Winter,* 555 US at 22, Councilor Ellis can make such a showing

24  here.

25  ───────────────

    [3]     The test for issuing a TRO is essentially the same. *W. Watersheds Project v. Bernhardt,*
26  391 F Supp 3d 1002, 1007 (D Or 2019).

PAGE 8 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

**B.** **In the absence of a preliminary injunction, Councilor Ellis will suffer immediate and irreparable harm.**

In order to obtain a preliminary injunction, plaintiffs must show that they are likely to suffer irreparable harm absent an injunction. *Winter*, 555 US at 20. In the freedom of expression context, "[i]rreparable harm is relatively easy to establish." *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F3d 832, 851 (9th Cir 2019) (First Amendment case). The Ninth Circuit has suggested that a plaintiff who brings a colorable free-speech claim has necessarily shown that the remaining preliminary injunction factors also favor an injunction. *See Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F3d 749, 757-58 (9th Cir 2019) (colorable First Amendment claim compelled finding of irreparable harm and that balance of hardships and public interest tipped in plaintiff's favor); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S Ct 63, 67 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (Internal quotation marks omitted.)).

As will be explained, Councilor Ellis has brought colorable free-speech claims under both Article I, Section 8 of the Oregon Constitution and the First Amendment to the U.S. Constitution, and she is likely to prevail on the merits of those claims.[4] If the Court agrees, then that finding itself compels findings of irreparable harm, and that the balance of the equities and the public interest tip in her favor. In other words, in this case all Councilor Ellis needs to show in order to obtain a preliminary injunction is that she is likely to succeed on the merits of one of her free-speech claims.

Even if irreparable harm was not presumed in this free expression case, though, irreparable harm is easily shown. As the U.S. Supreme Court has explained, it is not necessary

---

[4]    At a minimum, she raises "serious questions" going to the merits, and the balance of the equities tips sharply in her favor.

PAGE 9 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

Jesse A. Buss, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

for a plaintiff to await actual prosecution or conviction under a statute before they can bring a

free-speech challenge to that law. Rather, the *threat* of prosecution itself constitutes irreparable

harm because of the chilling effect on speech, justifying judicial intervention:

> "A criminal prosecution under a statute regulating expression usually involves
> imponderables and contingencies that themselves may inhibit the full exercise of
> First Amendment freedoms. *See, e.g., Smith v. People of State of California*, 361
> U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205. When the statutes also have an overbroad
> sweep, as is here alleged, the hazard of loss or substantial impairment of those
> precious rights may be critical. For in such cases, the statutes lend themselves too
> readily to denial of those rights. The assumption that defense of a criminal
> prosecution will generally assure ample vindication of constitutional rights is
> unfounded in such cases. *See Baggett v. Bullitt*, supra, 377 U.S., at 379, 84 S.Ct.,
> at 1326. For '(t)he threat of sanctions may deter * * * almost as potently as the
> actual application of sanctions. * * *' *NAACP v. Button*, 371 U.S. 415, 433, 83
> S.Ct. 328, 338, 9 L.Ed.2d 405. Because of the sensitive nature of constitutionally
> protected expression, we have not required that all of those subject to overbroad
> regulations risk prosecution to test their rights."

*Dombrowski v. Pfister*, 380 US 479, 85 S Ct 1116 (1965). Of course, here Councilor Ellis is

*already* being prosecuted for violating Section 23(f) of the City Charter, so the threat of

prosecution is not hypothetical, but has passed into actual prosecution.[5] Furthermore, as stated

in Councilor Ellis' declaration, the City's prosecution under Section 23(f) of the City Charter

has already chilled her speech. *See* Ellis Decl. at ¶ 12. Councilor Ellis would make further

public statements of opinion regarding the City Manager's failure to post the vacant climate

program specialist position for hiring, but-for the City's prosecution and its application and

interpretation of Section 23(f)). *Id.* (so stating).

The very real prospect of losing her elected seat on February 5th also constitutes

irreparable harm. If the City Council votes to expel Councilor Ellis from her seat that day, then

---

[5]     *Dombrowski* makes is clear that the likelihood of a *successful* prosecution is irrelevant to
the question of irreparable harm in free-speech cases: "Moreover, we have not thought that the
improbability of successful prosecution makes the case different. The chilling effect upon the
exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by
the prospects of its success or failure." 380 U.S. at 487.

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

Councilor Ellis will likely be excluded from the dais immediately thereafter, and the City Council will not recognize her office or her vote on legislative and other matters. *See id.*, Ex. 1 at 3 (vacant position to be "timely" filled by recruitment and appointment so someone else can hold Councilor Ellis' seat for the remainder of her term). If she is so ousted, then even under the best-case scenario it will take weeks, if not months, to reverse that decision in this Court via a writ of review proceeding. In that time, Councilor Ellis would have been excluded from an unknowable number of legislative votes and quasi-judicial votes, and there would be no way for this Court to somehow undo that harm retroactively. The only way to ensure that this irreparable harm is prevented is for the Court to issue a preliminary injunction immediately, before the February 5th hearing.

**C.    Councilor Ellis is likely to prevail on the merits of her claims.**

To obtain a preliminary injunction, Councilor Ellis must show that she is likely to succeed on either her Article I, section 8 challenge, or her First Amendment claim. As explained below, even though likely success on one claim is sufficient, she is likely to succeed on both claims. A preliminary injunction is therefore appropriate.

**1.    Article I, section 8 of the Oregon Constitution[6]**

Article I, section 8 of the Oregon Constitution provides that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever." In *State v. Robertson*, 293 Or 402 (1982), the Supreme Court held that, with a few historical exceptions, Article I, section 8 prohibits content-based restraints on speech. This provision, the Court said in an oft-quoted passage:

---

[6]    This section relies in large part on the well-written briefing submitted by Tom Christ in *Oregon Wild v. Port of Portland*, Mult. Co. Circuit Court Case No. 130913593, *aff'd*, 286 Or App 447 (2017).

PAGE 11 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

1

"forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach. * * *'"

2

3

4

5

293 Or at 412.

6

*Robertson* went on to explain that speech may be regulated by laws that prohibit "the

7

pursuit or accomplishment of forbidden results," even by means of speech. *Id.* at 416-17. Thus,

8

the government can make it unlawful to cause public inconvenience, annoyance, or alarm, and

9

can proscribe speech which has that effect. *See State v. Moyle*, 299 Or 691 (1985) (rejecting

10

challenge to crime of harassment by telephonic of written threat). But it cannot suppress speech

11

on certain topics on the ground that such speech might, in some circumstances, discommode,

12

annoy, or alarm. The distinction, then, is between laws that focus on the content of speech and

13

laws that focus on the effects. *See State v. Plowman*, 314 Or 157, 163 (1992), *cert den*, 508 US

14

974 (1993) (summarizing holding of *Robertson*). Laws that focus on content -- so-called "first-

15

category" or "category one" laws -- violate Article I, section 8, unless the prohibition comes

16

within a well-established historical exception. Laws that focus on undesirable effects, but

17

prohibit expression to achieve them, are called "second-category" or "category two" laws, and

18

are analyzed for "overbreadth." *Id.* at 164. A third category includes laws that focus on effects

19

without referring to expression at all; they are analyzed to determine whether they violate

20

Article I, section 8, "as applied." *Ibid.*

21

22

In the forty years since *Robertson* was decided, the Supreme Court has consistently

23

followed its methodology -- usually referred to as the *Robertson* "framework" -- for analyzing

24

free speech claims under Article I, section 8. *See Outdoor Media Dimensions v. Dept. of*

25

*Transportation*, 340 Or 275, 295 (2006) (so noting).

26

PAGE 12 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

In keeping with *Robertson*, the Supreme Court has struck down content-based restrictions on expression when it has found no support for them in free-speech jurisprudence circa 1859. In *State v. Henry*, 302 Or 510 (1987), for example, the court invalidated a statute that prohibited the possession of obscene material, because it was directed at a particular type of expression. The court rejected the state's contention that obscenity fell within a well-established exception to the free-speech guarantee, equivalent to the exceptions for libel, perjury, and forgery. In *City of Portland v. Tidyman*, 306 Or 174, 182 (1988), the court struck down a city ordinance that prohibited "adult bookstores" in certain locations. The court said the ordinance was unconstitutional because it was "flatly directed against one disfavored type of pictorial or verbal communication," 306 Or at 184, in other words, because it was a content-based restraint on speech, and because that restraint did not fall within a "well-established and demonstrably preserved historical exception." *Id.* at 179.

This case, like all Article I, section 8 cases, presents a two-step inquiry under the *Robertson* framework. At the first step, the court should inquire whether Section 23(f) of the City Charter is a content-based restraint on speech. if so -- and it is so, as will be seen -- the court should inquire whether the restraint fits wholly within some well-established historical exception.

The first inquiry is easy. Section 23(f) prohibits City Councilors from "in any manner," including "by suggestion," "attempt[ing] to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies." It also prohibits a City Councilor from "discuss[ing], directly or indirectly, with the Manager the matter of specific appointments to any City office or employment." *Id.* Section 23(f) thus prohibits a City Councilor from *speaking* or *expressing an opinion* about the subjects of City

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

hiring and purchasing, matters of great public importance.[7] Political speech regarding any other subject -- for example, expressing an opinion about which streets or sewer lines the City should repair -- is permitted. The charter provision, then, is content-based; it discriminates based on the topic of the message because it is "written in terms directed to the substance of any opinion or subject of communication." *Matter of Validation Proceeding to Determine the Regularity and Legality of Mult. Co. Home Rule Charter Sec. 11.60*, 366 Or 295, 301 (2020) (en banc) ("*Mult. Co.*") (*citing Robertson*).

The second inquiry under the *Robertson* framework -- whether Section 23(f) falls wholly within some well-established historical exception -- is just as easy as the first. "[T]he 'party opposing a claim of constitutional privilege' has the burden of demonstrating that a restriction on speech falls within an historical exception," and it is "a heavy burden." *Moser*, 315 Or at 376 (quoting *Henry*, 302 Or at 521). The City cannot carry that burden here. It cannot cite to a single pre-1857 law -- of any kind, anywhere -- that prohibited a city councilor from speaking with their own employee, a city manager, about the topics of municipal hiring and purchasing. Which is not surprising. After all, "[p]olitical speech is an essential form of expression protected by Article I, section 8." *Oregon State Police Assn. v. State of Oregon*, 308 Or 531, 536 (1989) (declaring unconstitutional a statute that prohibited state police from engaging in political expression). Section 23(f) is therefore facially void under Article I, section 8 of the Oregon Constitution.

---

[7]    Section 23(f) does have a "safe harbor" provision, which states that "Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City." Thus, speech and expression that takes place in public City meetings is not subject to the constraints of Section 23(f).

PAGE 14 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

Page 21 of 73

1      *Fidanque v. Oregon Govt. Standards and Practices*, 328 Or 1 (1998), is on point. At

2  issue there was a law that imposed a registration fee on lobbyists. The law defined "lobbyist" as

3  a person who lobbies, and defined "lobby" as attempting to influence pending legislation

4  through "oral or written communications" with legislators or their staff. 328 Or at 4. The court

5  noted that the fee was viewpoint-neutral in the sense that it applied equally to lobbying for a

6  particular bill as to lobbying against it, *id.* at 8 n 4, and thus applied as much to lobbying by,

7  say, Planned Parenthood as to lobbying by Right to Life. But, the court said, the law was not

8  "content-neutral," because "[i]ts focus is political speech." *Ibid.* The court thus held that the law

9  was unconstitutional, taking it for granted that laws against communicating with legislators

10  about pending legislation were not well-established when Article I, section 8, was enacted. *See*

11  *also Outdoor Media Dimensions*, 340 Or at 294 (explaining *Fidanque*); *see also Picray v.*

12  *Secretary of State*, 140 Or App 592, 596*, aff'd by equally divided court*, 325 or 279 (1997) (law

13  banning political insignia in polling place was unconstitutional "content-driven limitation on

14  expression").

15        In sum, Section 23(f) of the City Charter imposes an ahistorical, content-based restraint

16  on speech. As such, it violates Article I, section 8, under the *Robertson* framework.

17        **2.    First Amendment**

18        The First Amendment states that "Congress shall make no law . . . abridging the freedom

19  of speech." U.S. Const. amend. I. This prohibition applies to state and local governments by

20  way of incorporation. *Nordyke v. Santa Clara Cty.*, 110 F3d 707, 710 (9th Cir 1997). "As a

21  general matter," the First Amendment prohibits governments from subjecting individuals to

22  "retaliatory actions" after the fact for having engaged in protected speech. *Houston Cmty Coll*

23  *Sys v. Wilson*, 142 S Ct 1253, 1259 (*citing Nieves* v. *Bartlett*, 587 US ___, ___, 139 S.Ct. 1715,

PAGE 15 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1
Page 22 of 73

1722, 204 L.Ed.2d 1 (2019) (internal quotation marks omitted)). If a goverment takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim. *See id.*

Official reprisal for protected speech, including prosecution for that speech, "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford-El* v. *Britton,* 523 US 574, 588, n 10, & 592 (1998); *see also Perry* v. *Sindermann*, 408 US 593, 597 (1972) (noting that the government may not punish a person or deprive her of a benefit on the basis of her "constitutionally protected speech"); *Hartman v. Moore* , 547 US 250, 256, 126 S Ct 1695, 164 L.Ed.2d 441 (2006). Retaliation for protected speech is unlawful even where disciplinary proceedings are otherwise authorized by law. *O'Brien v. Welty*, 818 F3d 920, 932 (9th Cir 2016) (holding that "lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment.").

An elected official may raise a First Amendment retaliation claim against the government they serve. *See Boquist v. Courtney*, 20-35080 (9th Cir Apr 21, 2022) (citing *Blair v. Bethel Sch. Dist.*, 608 F3d 540, 542-43 (9th Cir 2010). To succeed on a First Amendment retaliation claim, the plaintiff must prove that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F3d 858, 867 (9th Cir 2016).

The first prong is readily met when an elected official expresses their views and opinions. *Boquist*, 20-35080 at *11.

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

The second prong is met if the elected official was subjected to a "materially adverse action." *Houston Cmty Coll Sys*, 142 S Ct at 1261. "Some adverse actions may be easy to identify—an arrest, a prosecution, or a dismissal from governmental employment." *Id.* at 1260 (*citing Nieves*); *see Hartman* , 547 US at 256, 126 S Ct 1695 (prosecution); *Perry v. Sindermann*, 408 US 593, 596–597, 92 S Ct 2694, 33 L Ed 2d 570 (1972) (employment). "[D]eprivations less harsh than dismissal" can sometimes qualify, too. *Rutan v. Republican Party of Ill.*, 497 US 62, 75, 110 S Ct 2729, 111 L Ed 2d 52 (1990). *Blair* made it "very clear" that "retaliatory acts of elected officials against their own" can violate the First Amendment, and that the result in that case would have favored plaintiff had plaintiff's peers on the school board "somehow managed to vote him off the Board or deprive him of authority he enjoyed by virtue of his popular election." 608 F3d at 545 n.4. As the Ninth Circuit recently and eloquently stated in *Boquist*: "[i]n short, an adverse action against an elected official is material when it prevents the elected official from doing his job, deprives him of authority he enjoyed by virtue of his popular election, or otherwise prevents him from enjoying the full range of rights and prerogatives that came with having been publicly elected." 20-35080 at *15 (internal citations and quotation marks omitted).

And the third prong is satisfied if the "protected conduct played a part, substantial or otherwise," in the defendant's wrongdoing. *Nieves*, 139 S Ct at 1722 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 US 274, 285 (1977)).

In a recent case also involving a local elected official, the U.S. Supreme Court reaffirmed that "'[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement' that it was adopted in part to 'protect the free discussion of governmental affairs.' *Houston Cmty Coll Sys,* 142 S Ct at 1261 (*citing Mills v. Alabama*, 384

PAGE 17 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

US 214, 218, 86 S Ct 1434, 16 L Ed 2d 484 (1966)). Accordingly, "[t]he First Amendment surely promises an elected representative [] the right to speak freely on questions of government policy," *id.*, and an elected official's role "makes it all the more imperative that they be allowed to freely express themselves." *Id.* (*citing Republican Party of Minn. v. White*, 536 US 765, 781, 122 S Ct 2528 (2002).

"[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F4th 468, 478 (9th Cir 2022) (internal quotation marks omitted).

There is no question that Councilor Ellis is being prosecuted because of her protected political speech; the City expressly identifies her speech activities as the basis of its prosecution. *See generally* Ellis Decl., Exs. 1 & 3. Therefore the first prong of the First Amendment retaliation claim test is met.

The second prong is met because the City's prosecution of Councilor Ellis is a materially adverse action under the First Amendment, as it threatens to expel her from her democratically elected seat. That adverse action, it should go without saying, is enough to deter an elected official like Councilor Ellis from exercising her right to speak -- in other words, the threat of prosecution from the City, under penalty of losing your elected office, is clearly enough to chill a Councilperson of ordinary firmness from speaking about City hiring and purchasing matters. This contrasts with *Houston Cmty Coll Sys*, where the elected official was subject to official censure for this speech, which did not violate the First Amendment. 142 S Ct at 1261-62 ("[T]he censure did not prevent Mr. Wilson from doing his job, [and] it did not deny him any

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

privilege of office[.]"). As the Court pointed out in that case, "we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers--and to continue exercising their free speech rights when the criticism comes." *Id.* at 1261.

Neither is expulsion from office a "long exercised" means of responding to an elected officials protected speech. According to the Ninth Circuit just last year in *Boquist*:

> "Our research reveals that, unlike censure, the exercise of the power to bar an elected official from the legislative chamber (whether temporarily or permanently) is not a 'long exercised' means of responding to protected speech. Legislatures have historically exercised the power to expel their members, as well as to discipline them through the use of censures, reprimands, and fines. But we are aware of no case upholding the expulsion or exclusion of elected officials due to their protected speech."

20-35080 at *25-26 (internal citations omitted).

*Bond v. Floyd*, 385 US 116, 87 S Ct 339 (1966), is also instructive. There, the plaintiff was elected to the Georgia House of Representatives, but the legislative clerk refused to administer the oath of office to him because of public statements the plaintiff had made opposing the war in Vietnam. *Id.* at 123. He was thereby excluded from office. *Id.* The plaintiff sued under the First Amendment as made applicable to the states under the Fourteenth Amendment, alleging that his exclusion from office based on his statements violated his rights of free expression. In finding for the plaintiff, the Court explained as follows:

> "The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy [...] Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy *and the implementation of it* must be similarly protected. [...] The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators. Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates by the person they have elected to represent them. We therefore hold that that disqualification of Bond from membership in the Georgia

PAGE 19 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

1    House because of his statements violated Bond's right of free expression under

2    the First Amendment."

3    *Bond*, 385 US at 136-37 (emphasis added).[8] Thus, as the Court recently noted in

4    *Houston Cmty Coll Sys*, "[t]he legislature's action in *Bond* implicated not only the

5    speech of an elected official, it also implicated the franchise of his constituents. And it

6    involved not just counterspeech from colleagues but exclusion from office." 142 S Ct at

7    1263.

8        This case is controlled by *Bond*. Here the local prosecution expressly seeks to

9    exclude Councilor Ellis from her elected office precisely because of the content of her

10   public expression. While in *Bond* the plaintiff was prevented from taking his elected seat

11   from the outset, and here Councilor Ellis is threatened with losing her seat, the

12   distinction is immaterial. The point is that elected officials cannot be excluded from

13   office, completely disenfranchising their constituents, for speech "criticizing public

14   policy and the implementation of it." *Bond*, 385 US at 136.

15

16   **D.    The balance of the equities and the public interest strongly favor a
        preliminary injunction.**

17

18       As noted above, where a free-speech plaintiff has shown a likelihood of success on the

19   merits, then irreparable harm is presumed, and the balance of the equities and the public interest

20   strongly favor the issuance of an injunction. *See Am. Beverage Ass'n*, 916 F3d at 757-58. Even

21   without that presumption, however, here the balance of the equities and the public interest

22   clearly favor an injunction.

23
_____

24   [8]    The 9th Circuit has commented that "[c]itizens have an enormous first amendment
     interest in directing speech about public issues to those who govern their city." *White v. City of*

25   *Norwalk*, 900 F2d 1421, 1425 (9th Cir. 1990). Under *Bond*, elected lawmakers have just as
     robust First Amendment interests and protections in directing speech about public issues to

26   government.

PAGE 20 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

1

2

3

4

5

6

7

8

9

10

11

      The harm to Councilor Ellis if an injunction is *not* issued is addressed above, and includes the ongoing and active suppression of her speech and the risk of losing her City Council voting power as an elected representative for Corvallis' Ward 5. The harm to the City if an injunction *is* issued, however, is minimal if not non-existent. A preliminary injunction would preserve the status quo. If a preliminary injunction is issued, Counselor Ellis would retain her elected seat while the Court fully resolves her free-expression claims, and the City would be prohibited, for the time being, from proceeding with its prosecution of Councilor Ellis under Section 23(f) of the City Charter. The harm to the City, then, if it is harm, would merely amount to a delay in the local prosecution. The balance of harms clearly tips sharply in Councilor Ellis' favor.

12

13

14

15

16

17

      For similar reasons, the public interest weighs heavily in favor of an injunction. Councilor Ellis was elected to her position by the people, and unless and until her term expires, the people recall her, or she resigns, she is the people's elected representative. It is in the public interest to honor the people's choice of representative. It is not in the public interest for an elected official to lose their office through an undemocratic process that excludes the people,[9] and that is based entirely on the suppression of political speech.

18

19

20

21

      The public also has an interest in hearing the uncensored views of their elected representatives, on any topic or subject, but certainly on the topic of City policies and governance.

22

23

      Further, the public has a concrete interest in encouraging *all* their elected representatives to speak on matters local and political. So long as the prosecution of Council Ellis is allowed to

24

25

26

---

[9]     The City's planned February 5th "due process hearing" does not provide for public comment or any other form of public participation. The public will be allowed to observe the hearing, nothing more.

PAGE 21 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

Page 28 of 73

continue, and if the February 5th hearing takes place, the other eight elected Councilors (plus

the Mayor) will feel the chill of suppressed speech, too. That is, if their colleague and fellow

elected member of Council is subject to a formal removal proceeding for merely suggesting that

the Council take a more active role in ensuring a vacant climate change mitigation position is

filled, then the other Councilors will not feel at liberty to speak up on matters of City

administration, and power will be transferred, *de facto*, to the unelected City Manager. The

public deserves elected officials who feel empowered to take stands on matters of local politics,

without trepidation or fear of retaliation. Accordingly, the public interest strongly supports the

issuance of a preliminary injunction.

## CONCLUSION:

ORCP 79 A and ORS 28.010 *et seq.* empower this Court to issued preliminary injunctive

and declaratory relief if the Court finds that Councilor Ellis is likely to succeed on the merits of

one or both of her claims under Article I, section 8 and the First Amendment. Councilor Ellis

respectfully requests that the Court do so, thus pausing the City's pending speech-based

prosecution against Councilor Ellis while this Court fully considers her claims.

A preliminary injunction will not prejudice the City, nor alter the status quo. In fact, a

preliminary injunction will merely preserve the status quo, honoring Ward 5 voters' decision to

have Councilor Ellis represent them on the City Council, at least until this Court issues a final

decision. In this way the Court can ensure local stability while promoting democracy, and reject

unlawful -- and judicially unsupervised -- incursions on individual and collective rights to

freedom of expression under Article I, section 8 and the First Amendment.

/ / / / /

/ / / / /

PAGE 22 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Ex. 1

RESPECTFULLY SUBMITTED this 22nd day of January 2024.

/s/ Jesse A. Buss
Jesse A. Buss, OSB #122919
Attorney for Plaintiff

PAGE 23 OF 23 - MOTION FOR PRELIMINARY INJUNCTION

**Jesse A. Buss**, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
Ex. 1    503-656-4884, jesse@WLGpnw.com

Page 30 of 73

24CV03484

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF BENTON

**CHARLYN ELLIS**, an individual,

                Plaintiff,

    vs.

**CITY OF CORVALLIS**, acting by and through the Corvallis City Council,

                Defendant.

Case No. 24CV03484

**DECLARATION OF CHARLYN ELLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

I, Charlyn Ellis, hereby declare as follows:

1.    I am the Plaintiff in this case. I am over the age of 18, and I make this declaration from personal knowledge. If called to testify, I could and would testify as follows.

2.    The allegations of the Complaint are true and correct to the best of my knowledge.

3.    In November 2016 I was elected by voters to serve on the Corvallis City Council, representing Ward 5. I have since served multiple two-year terms, and am currently serving my fourth term, from January 2023 through December 2024.

4.    As part of my duties as a City Councilor, I am a member of (and I Chair) the Corvallis Climate Action Advisory Board (CAAB). The CAAB is tasked, among other things,

PAGE 1 OF 3 - DECLARATION OF CHARLYN ELLIS

Jesse A. Buss, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

with helping Corvallis meet the greenhouse gas emissions target set forth in the Corvallis

Climate Action Plan (CAP), and with advising the City Council on all matters related to

implementation of the CAP.

5.    On September 13, 2023, at a public meeting of the CAAB, I raised a concern that

the CAAB had insufficient City staff support to fulfill its mission, and pointed out that the

position of Climate Program Specialist, a City job, was vacant. As a result, the CAAB agreed to

advise the City Council to consider directing the City Manager to post the position of Climate

Program Specialist for hiring. The City Manager was not present at that meeting.

6.    In keeping with the direction from the CAAB, on September 18, 2023, at a public

meeting of the City Council, I moved the Council "to direct the City Manager to post the full-

time job position of Climate Program Specialist within two weeks and provide an update of the

hiring process at every meeting until the position is filled." The motion was not adopted. The

City Manager was not present at that meeting.

7.    On November 27, 2023, the Mayor, Council President, and City Attorney met

with me. At that meeting, I was told that, due to my public statements made at the September

13th and September 18th meetings, I was being accused of violating Section 23(f) of the City

Charter, and that removal proceedings were being initiated by the City, such that I would be

expelled from my elected office representing Ward 5.

8.    The allegations and charges filed by the City against me are set forth in a

document entitled "A Resolution Regarding a Violation of Charter Section 23(f) and Declaring

a Vacancy in the Ward 5 Council Position" (hereinafter "the Expulsion Resolution"), as

supported by the joint Declaration of Mayor Charles Maughan, Council President Tracey Yee,

Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James

PAGE 2 OF 3 - DECLARATION OF CHARLYN ELLIS

Jesse A. Buss, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

Brewer. True and correct copies of those documents are attached hereto as Exhibits 1 and 2, respectively.

9.     The Expulsion Resolution is scheduled for a so-called "due process hearing" on February 5, 2024.

10.     The City has hired special counsel to represent the City in prosecuting the local proceeding against me. Today that attorney submitted a Hearing Memorandum for the February 5th hearing, a true and correct copy of which is attached hereto as Exhibit 3.

11.     It has been made clear to me that, but-for my statements at the September 13th and 18th meetings, the City would not have initiated proceedings to remove me from office under Section 23(f) of the City Charter.

12.     Due to the City's prosecution against me, including the effort to remove me from office, and the City's application of Section 23(f) of the City Charter, I have refrained from speaking further on the subject of City hiring activities, including my political position on the importance of posting the Climate Program Specialist position for hiring. If the City had not brought its enforcement proceeding against me, I would have continued making similar statements to those I made at the September 13th and 18th public meetings. I feel that my speech is being chilled, and my ability to represent my constituents in Ward 5 has been compromised.

**I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.**

DATED this 22nd day of January 2024.

_____
Charlyn Ellis

PAGE 3 OF 3 - DECLARATION OF CHARLYN ELLIS

Jesse A. Buss, OSB No. 122919
WILLAMETTE LAW GROUP, PC
411 5th St., Oregon City OR 97045
503-656-4884, jesse@WLGpnw.com

**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Jordan E. Pahl, OSB #194335**
JordanPahl@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Fax: (503) 323-9105

Special Council to City of Corvallis

**RE: COUNCILOR CHARLYN ELLIS**

**CITY OF CORVALLIS' DUE
PROCESS HEARING
MEMORANDUM**

**Due Process Hearing: February 5, 2024**

CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Ex. 1    Ex. 3 - Page 1 of 32

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....................................................................................................1

VIOLATION OF CITY CHARTER– SECTION 23(f)........................................1

CITY CHARTER...................................................................................................2

    I.      Separation of Powers and Duties of Officers; Remedy for
           Violation – Chapter 5..............................................................................2

    II.     Rules for Construing the Charter. ..........................................................5

EXHIBITS .............................................................................................................6

STIPULATIONS ...................................................................................................8

STATEMENT OF FACTS ....................................................................................9

    I.      Councilor Ellis' Actions During the CAAB Meeting.................................9

        A.    Councilor Ellis Introduced an "Emergency" Hiring
               Demand and Initiated the Strategy and Motion ..............................9

        B.    Councilor Ellis Asked CAAB to Make a Strong Statement
               and a Motion for a Permanent Position to Support CAAB............11

        C.    Councilor Ellis Agreed that the Motion Should be for a
               Sustainability Position to Support CAAB .....................................13

        D.    Councilor Ellis Asked the CAAB Members to Pack the
               City Council Meeting to Make a Powerful Statement ...................15

    II.     Councilor Ellis' Actions During the September 18, 2023, City
           Council Meeting......................................................................................16

ARGUMENT ......................................................................................................19

    I.      Section 23(f) Insulates the City Manager from the Council on
           Matters Relating to Staffing and Hiring.................................................19

    II.     Councilor Ellis Violated the Influence or Coercion Clause of
           Section 23(f)...........................................................................................222

         A.    Councilor Ellis Attempted "Influence or Coerce the
               Manager in the Making of Any Appointment or Removal
               of Any Officer or Employee" ........................................................23

    III.    The Legislative Privilege Exception Does Not Apply..............................25

        A.    The Exception Does Not Apply to the CAAB Meeting. ...............25

            1.     The CAAB Meeting Was Not an "Open Session" of
                the Council. ........................................................................25

        2.    Councilor Ellis' Statements Were Not "in Discussion With" or "Suggestions to" the City Manager ..........................................................26

    B.    The Exception Does Not Apply to the Council Meeting Because Councilor Ellis' Actions Were Not "Discussions With" or "Suggestions to" the City Manager ................................26

IV.    Forfeiture is Mandatory and Self-Executing................................................28

CONCLUSION............................................................................................................28

## INTRODUCTION

The City Attorney's Office retained Markowitz Herbold PC to assist in presenting the record for charges that City Councilor Charlyn Ellis violated Section 23(f) of the Corvallis City Charter, and has forfeited the Ward 5 seat on City Council. The purpose of this Hearing Memorandum is to describe the issues presented under the City Charter, summarize the factual record, and outline the pertinent legal issues for the City Council's consideration. With this record in mind, Special Counsel is firmly convinced that Councilor Ellis violated the City Charter by attempting to influence or coerce the City Manager to hire a permanent climate specialist or sustainability employee to service the needs of her advisory committee. By attempting to do so, Councilor Ellis forfeited the remainder of her term on the City Council. It is the Council's duty to find a violation based on the given facts.

## VIOLATION OF CITY CHARTER – SECTION 23(f)

The City of Corvallis has charged Councilor Ellis with violating the Charter, specifically Section 23(f), in two particulars:

1.    During the September 13, 2023 Corvallis Climate Action Advisory Board ("CAAB") meeting (the "CAAB Meeting"), Councilor Ellis introduced and discussed her concern that the CAAB had insufficient staff support to conduct its meetings and work and advocated that the CAAB adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties to support the work of the CAAB within a specific amount of time; and,

2.    In the regular City of Corvallis City Council meeting held on September 18, 2023 (the "Council Meeting"), Councilor Ellis moved "to direct the City Manager to post the full-time job position of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled," which motion was later amended by substitution.

Page 1 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

The actions of Councilor Ellis violated Section 23(f) in that they were both direct and indirect attempts, by suggestion or otherwise, to influence or coerce the City Manager in the appointment of an employee or officer. These charges are reflected in the Resolution noted for hearing on February 5, 2024.

## CITY CHARTER

The voters in Corvallis adopted the current version of the City Charter in 1948. It is based on model charters developed by the Bureau of Governmental Research and Service and League of Oregon Cities. The pertinent provisions for this hearing are in Chapter 5 related to separation of powers and duties.

The Charter was *not* enthusiastically endorsed by every City Councilor when proposed in the post-World War II era. There was a split 5-4 vote among the Council about sending this new Charter to the people for consideration because it evinced a fundamental shift in administrative and operational authority and would move the City to a Council-Manager form of government organization.

The legislative history reflects debate among the Councilors in 1948—before sending it out to the people—regarding an amendment that would have permitted the City Council to "override" the City Manager on "any action." But that amendment was rejected, and the voters chose to adopt a new form of government organization that delegates broadly to a manager.

I.      **Separation of Powers and Duties of Officers; Remedy for Violation – Chapter 5.**

As adopted by the people, Chapter 5 of the Charter sets forth the "Powers and Duties of Officers," including the Mayor, City Manager, and City Council. It also sets forth a remedy for violating just *one* Section of the Charter, that being Section 23(f). It warrants emphasis that there is no remedy or sanction for any other Charter violation, highlighting the importance of Section 23(f) to the drafters and the voting public.

Page 2 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

As relevant to these proceedings, Section 23(f) applies to City Councilors and reads as follows. For convenience, we have separated the independent clauses in the correct grammatical form:

> **(f)**    <u>**Interference in administration and elections.**</u>  Neither the Mayor nor any member of the Council shall
>
> [i]  *in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee* or in the purchase of supplies; or
>
> . . . .[1]
>
> [iii] discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment.
>
> *A violation of the foregoing provisions of this section shall forfeit the office of the offender.*
>
> Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

Section 23(f) (emphasis added).

There are two independent clauses in Section 23(f). First is the influence or coercion clause, italicized above, prohibiting a Councilor from attempting to "influence or coerce," "directly or indirectly," the City Manager in "the making of any appointment or removal of any officer or employee." Notably, the influence or coercion need not be successful; it need not be direct communication to the City Manager; and it need not relate to a specific person.

Second is the specific appointment clause, which prohibits a Councilor from "discuss[ing], directly or indirectly, with the Manager the matter of specific appointments to any City office or employment." Again, there is no limitation for this prohibited

---

[1] The omitted text is inapplicable: "or attempt to exact any promise relative to any appointment from any candidate for Manager. . . ."

Page 3 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

discussion to be with the City Manager directly. There is no "coerce" or "influence" qualification at issue. This clause does, however, require that the discussion pertain to a "specific appointment" to any "City office or employment."

These two clauses are distinct and independent of the other, separated by the word "or." Violation of either clause in Section 23(f) comes with a mandatory remedy: forfeiture. In the context of statutory interpretation, "[t]he term 'shall' is a command expressing what is mandatory." *Bacote v. Johnson*, 333 Or 28, 33 (2001). The word "shall" in a city charter also denotes a mandatory provision. *See State by and through. State Hwy. Comm. v. Sauers*, 199 Or 417, 419 (1953). When mandatory language is used, the city has no discretion but to take the prescribed action. *See State ex rel. Stewart v. City of Salem*, 241 Or App 528, 535 (2011).

For context, it is relevant that the Charter's provisions in Section 23(f) are preceded by provisions that expressly delegate to the City Manager all administrative authority, duties, and control. Section 23 begins by designating the City Manager as the "administrative head of the government of the City." (Section 23(a).) The City Manager is chosen by the Council without regard to political considerations, and solely for executive and administrative qualifications. *Id.*

The Charter also specifies that the City Manager's role includes the sole and exclusive authority to "appoint all appointive offices and employees," *id*.; to "have general supervision and control over them and their work, with power to transfer an employee from one department to another," "to the end of obtaining the utmost efficiency in each of them." Section 23(c)(3). And, it is the City Manager's job to prepare and submit budgets to the Budget Commission (Section 23(c)(4)), and to supervise all public utilities. (Section 23(c)(6).)

In recent times like these, with severe weather events and global health crises like COVID-19, some people may wonder who within the City has the power to declare an emergency, and the answer is that it is the City Manager's job to do so. (Corvallis Municipal Code § 7.09.020 (Authorization to declare an emergency).) It is also the City

Page 4 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Manager's job to see that all ordinances are enforced and the obligations of the City are observed.  (Charter, Section 23(c)(2)).  And, the City Manager is "entitled to sit with the Council" and "take part in the discussion of all matters before it."  (Charter, Section 23(d).)

In contrast, the Charter gives no such administrative and operational authority to the City Council, subject to very narrow exceptions.  Indeed, the City Council appoints the City Attorney, Municipal Judge, and City Manager (Section 11); may create new Council appointive positions (Section 12); and sets the compensation for all City officers and employees (Section 13).  Otherwise, all other administrative and operational authority is delegated to the City Manager.  That said, the Council may, if it so desires, remove the City Manager (Section 23(b)), but may not interfere with the City Manager's administrative duties.  In short, the administrative and operational strategies for achieving the City's policy objectives have been delegated to the experience, professionalism, and discretion of the City Manager as the means of achieving the "the utmost efficiency."

## II.    Rules for Construing the Charter.

The Oregon Supreme Court has decided the interpretive rules for construing and applying legislation, including the provisions of the City Charter.  And it is the City Council's duty to interpret and apply the Charter as instructed by those rules.

The Charter is local legislation.  The Council's task is to ascertain the meaning of Section 23(f) as intended by the drafters and approved by the voters.  *State v. Gaines*, 346 Or 160, 171 (2009); *Portland Gen. Elec. Co. v. Bureau of Labor and Indus*., 317 Or 606, 610 (1993).  Charters are "an individual matter for each city, a form of local legislation to be interpreted by the same means as any other legislation, including attention to the intent and purpose of those who adopted it."  *DeFazio v. Washington Pub. Power Supply Sys.*, 296 Or 550, 580 (1984); *see also City of Corvallis v. State*, 304 Or App 171, 185 (2020) ("Charter amendments are the product of local legislation and are 'to be interpreted by

Page 5 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

the same means as other legislation.'  That is, we consider the text, context, and any useful legislative history offered by the parties." (quoting *DeFazio*, 296 Or at 580)).

The City Council, as the decision-maker applying the Charter, must first examine the Charter's text and context.  *Gaines*, 346 Or at 171.  The Council may also consider relevant legislative history offered by the parties.  *Id*. at 172; *see also State v. Blair*, 348 Or 72, 80 (2010) (following *Gaines*, "we may always consider pertinent legislative history," even in the apparent absence of ambiguity).[2]

The plain meaning of the Charter controls.  It is the City Council's role to review Section 23(f), declare what it was intended to mean in substance when adopted, and apply it to the facts of this matter.  Conversely, it is *not* the City Council's function to insert new terms or provisions into the Charter, or to ignore or omit terms of the Charter as they were adopted by the voters.  ORS 174.010.  And it is not the Council's function to consider current public sentiment or comment as expressed by, for example, those who either do or do not support Councilor Ellis.  In other words, the question is not how the voters or groups today would choose to construe and apply this provision were they to reconsider it; the question is what the provision, which is in effect today, plainly means by its terms as adopted in 1948.

## EXHIBITS

The City of Corvallis submits the following evidence into the record:

| Ex. No. | Document Description | Date |
|---------|---------------------|------|
| 1. | Transcript of the Climate Action Advisory Board meeting ("CAAB Transcript"). | Sept. 13, 2023 |

---

[2] Stated another way, the decision-maker proceeds "from what the legislature has written, to what the legislature has considered, and finally, as a last resort, to what the court determines makes sense."  *Young v. State*, 161 Or App 32, 37 (1999).  The decision-maker is "not to insert what has been omitted, or to omit what has been inserted."  ORS 174.010.

Page 6 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

| Ex. No. | Document Description | Date |
|---------|---------------------|------|
| 2. | The video recording of the relevant discussion and deliberations of the Corvallis Climate Action Advisory Board on September 13, 2023, located at the City's website: https://vimeo.com/864621682, beginning at approximately 38 minutes into the recording. | Sept. 13, 2023 |
| 3. | Transcript of the City Council meeting ("Council Meeting Transcript"). | Sept. 18, 2023 |
| 4. | Link to the video recording of the motion and the subsequent deliberations of the City of Corvallis City Council on September 18, 2023, which can be found on the City's website at https://vimeo.com/866087718?share=copy and beginning at approximately two hours and fourteen minutes into the recording. | Sept. 18, 2023 |
| 5. | Letter from City of Corvallis to Councilor Charlyn Ellis with a copy of draft Resolution Regarding a Violation of Section 23(f) and Declaring a Vacancy in Ward 5 Council Position. | Dec. 6, 2023 |
| 6. | Declaration signed by Mayor Charles Maughan, Council President Tracey Yee, Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James Brewer. | Dec. 5, 2023 |
| 7. | Letter from City of Corvallis to Councilor Charlyn Ellis (with attachments noted in Exhibit 6). | Dec. 22, 2023 |
| 8. | Memorandum from City Manager, Mark Shepard, to City Council. | Jan. 16, 2024 |
| 9. | Letter from Attorney Jesse Buss, attorney for Councilor Charlyn Ellis. | Dec. 22, 2023 |
| 10. | Email from David Coulombe to Jesse Buss. | Jan. 2, 2024 |
| 11. | Email from Councilor Ellis regarding two motions to present at the September 18, 2023 City Council meeting. | Sept. 17, 2023 |
| 12. | Collection of emails from CAAB members to the Mayor and City Council for September 18, 2023 City Council meeting. | Sept. 15 – Sept. 18, 2023 |

Page 7 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Ex. 1   Ex. 3 - Page 10 of 32

| Ex. No. | Document Description | Date |
|---|---|---|
| 13. | City of Corvallis, Council Action Minutes, from September 18, 2023 City Council meeting. | Sept. 18, 2023 |
| 17. | Collection of memoranda spanning 1988 to 2020 from the City Attorney's Office regarding orientation training for City Council. | 1988 to 2020 |

Additionally, the attorney for Councilor Ellis has submitted the following supplemental exhibits, which are included with the City's submission as a professional courtesy:

| Ex. No. | Document Description | Date |
|---|---|---|
| 14. | Transcript of the City Council meeting on December 18, 2023, beginning at one hour and fifty-five minutes and forty-five seconds (1:55:45) into the recording.  The City agreed to have this selection transcribed at the request of Councilor Ellis' attorney. | Dec. 18, 2023 |
| 15. | The video recording of the discussion at the City Council on December 18, 2023, which can be found on the City's website at https://vimeo.com/896334597 | Dec. 18, 2023 |
| 16. | Letter to the City Council from former elected representatives. | Jan. 8, 2024 |

## STIPULATIONS

Councilor Ellis has stipulated, through her attorney, that the agreed process and factual record satisfy Councilor Ellis' procedural due process rights.  The factual record is set forth in the referenced exhibits.  The process of the hearing will be that the lawyers will present their arguments to the City Council based on the factual record, there will be no live testimony, and the City Council will make its decision based on this record. However, Councilor Ellis has reserved objections as to procedural due process based on issues that are out of the parties' control or that we have not foreseen.

**STATEMENT OF FACTS**

Councilor Ellis has served Ward 5 on the City Council since 2016, and currently serves as the Chair of CAAB.  On September 13, 2023, Councilor Ellis chaired the CAAB Meeting by initiating a targeted discussion of an "emergency" arising from perceived staffing shortages, followed by motions that she invited for identified positions and purposes, all of which were designed to influence and coerce the City Manager in areas that are solely within the City Manager's administrative purview.  The focus of Councilor Ellis' leadership was to devise a strategy to force the City Manager into hiring a permanent sustainability employee to service CAAB.

**I.      Councilor Ellis' Actions During the CAAB Meeting.**

     **A.      Councilor Ellis Introduced an "Emergency" Hiring Demand and Initiated the Strategy and Motion.**

The first action taken by Councilor Ellis at the CAAB Meeting was to pitch an emergency hiring demand for a permanent City job to support the committee, and to ask the committee to make a motion.  Councilor Ellis had been "thinking about" this problem for "a couple of weeks," but at no time did she reach out to the City Manager to discuss administrative support needs.  Instead, she used this CAAB Meeting as the opening scene in her effort to influence the City Manager to hire a climate specialist on a permanent basis.

1          CHAIR ELLIS:  Okay.  So we are kind of in

2     a -- a climate board emergency.  I -- I've been

3     thinking about this for a couple of weeks, and I

4     think that is the way to put it.  Jerry is going out

5     on family leave for three months, which is

6     absolutely his right to do, and it's a positive

7     thing, and that is great.

8               In that time, we are left with no staff.

9     The point person for the climate board is going to

10    be the city manager, and the city manager is not --

11    it is not his job to do agendas, run meetings,

12    certainly not to run board work.  Yeah.

13          CAAB MEMBER:  Isn't it his job to appoint

14    somebody to do it?

15          CHAIR ELLIS:  It may be, but he is not --

16          CAAB MEMBER:  -- temporary --

17          CHAIR ELLIS:  -- he is so -- I'm getting

18    there.  We need somebody to do that, and we need

19    somebody to do it on a permanent basis.  Maybe that

20    somebody is Jerry when he comes back, but we don't

21    know.

22               So here we are.  We are -- we have no --

23    and until we have that person, as you all just had

24    your orientation about what we can or we can't do,

25    we do not have a functional climate board.  It is an

Page 10 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
1    emergency.
2              So I -- I cannot make the motion because I
3    am the chair.  But I believe that we, with our first
4    action, could be -- for tonight is to recommend to
5    the city council that we need to hire Catherine's
6    position as our climate specialist who supported
7    community actions.
```

(Ex. 1, CAAB Transcript at 2-3.)

     **B.**    **Councilor Ellis asked CAAB to Make a Strong Statement and a Motion for a Permanent Position to Support CAAB.**

Councilor Ellis followed her introduction of an emergency, and the need for a climate specialist, by making it clear that she wanted a permanent position hired by the City Manager to focus on sustainability, and again requested a motion from a CAAB member.

```
23             So having been thinking about this for a
24    while, because I know that Jerry was going for three
25    months, and I feel like our strongest statement is
```

Page 11 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
 1    we need to hire somebody on a permanent basis.
 2              My concern with getting a contractor is
 3    that they will -- they will get one or two meetings,
 4    and they'll just start to figure things out and then
 5    we'll get another person.  And we've gone through so
 6    many people in this position and every time there's
 7    this huge learning curve.
 8              I've been pushing for a permanent
 9    position, like the position is there, it exists.  To
10    get it filled is probably our most effective thing.
11    And I'm not looking towards a share and -- and so if
12    somebody sees them waving, please let me know.
```

(Ex. 1, CAAB Transcript at 8-9.)

```
 9              CHAIR ELLIS:  Economic development is now
10    reporting to community development, which is
11    reporting to -- the economic development is no
12    longer doing ICAN or climate.
13              So the idea is to have another director
14    level position on sustainability broadly defined,
15    and then having people below him to him or her to
16    work on these things.
17              But unfortunately that position was
18    posted, and I haven't heard, so --
```

(Ex. 1, CAAB Transcript at 10.)

****

Page 12 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Ex. 1   Ex. 3 - Page 15 of 32

```
14          CHAIR ELLIS:  We would definitely want, so

15  if somebody could board a motion, first for the

16  permanent and then we -- then we could move to the

17  second one for (indiscernible).  That would be

18  (indiscernible).
```

(Ex. 1, CAAB Transcript at 12.)

**C.  Councilor Ellis Agreed that the Motion Should be for a Sustainability Position to Support CAAB.**

The motion that Councilor Ellis sought was made, seconded, and amended by committee members, with a focus on a new, permanent sustainability position to support CAAB as she requested.

```
16          CAAB MEMBER:  I'm just going to try.  I

17  move that since the climate emergency is not

18  waiting, that the climate action board requests

19  council --

20          CHAIR ELLIS:  Mm-hmm.

21          CAAB MEMBER:  -- direct the city manager

22  to fill the vacancies that are open that leave us

23  without staff to allow this board to meet.

24          (Indiscernible conversation.)

25          CAAB MEMBER:  I'll second that.
```

Page 13 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
1          CHAIR ELLIS:  Okay.
2          CAAB MEMBER:  And offer a slight
3   amendment.
4          CHAIR ELLIS:  Yeah.
5          CAAB MEMBER:  If you're okay with this, to
6   remove the words "that are open."  I'm looking
7   actually on the city's website right now at the job
8   openings.  There are 27 job openings posted
9   currently, if anybody is interested.
10         Nothing about sustainability, just looking
11  at the titles.  Of course I don't have time to read
12  all these at this time, but nothing that would hint
13  at current recruitment or --
14         CHAIR ELLIS:  At the director level.
```

(Ex. 1, CAAB Transcript at 15-16.)  Later, Councilor Ellis restated the substance of the motion:

```
2          CHAIR ELLIS:  So what I have, and we're
3   going to want to put a date on it, to -- we are
4   requesting, the climate action board will request
5   the council directs the city manager to fill
6   Catherine's economic development and climate program
7   specialist, and then we need a date.
8          And maybe we should say posted within two
9   weeks.  And that, that gets it in motion.  And then
10  people can speak to that motion and we'll see what
11  goes.
```

Page 14 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

(Ex. 1, CAAB Transcript at 21.)

**D.      Councilor Ellis Asked the CAAB Members to Pack the City Council Meeting to Make a Powerful Statement.**

Councilor Ellis' effort to influence the City Manager included a request that  the CAAB members pack the City Council meeting.  Her intent was to make a powerful statement to the City Council, and to the City Manager indirectly, to support the motions that Councilor Ellis intended to present in just a few days.  She also intended to talk about this subject further with the CAAB members, off the record, to further prioritize efforts for this hiring strategy.  The colloquy during the CAAB Meeting went like this, and we do not know what was said by Councilor Ellis off the record:

```
16              CHAIR ELLIS:   I think at this point if you
17      all like showed up at the meeting, that would be
18      pretty powerful.   Can one person making a statement
19      and everybody else standing and anybody else who is
20      also (electronic glitch) audience standing as well,
21      I think that would be powerful.   Maybe Larry should
22      mention it as well (electronic glitch).
```

```
 1   me write it or write it for me.
 2          CHAIR ELLIS:  And so at this point we have
 3   moved on to committee action, and we can discuss it
 4   after the (electronic glitch) just so we keep our
 5   lines clear because, yeah.
 6          And as the council member who is bringing
 7   these forward, I will of course be as firm as I --
 8   I'm trying to think of what the word actually is, so
 9   (indiscernible) if you come up with one, let me
10   know.
```

(Ex. 1, CAAB Transcript at 46-47.)

The full transcript of the CAAB Meeting at issue is available for the City Council to review.  It is noted as Exhibit 1.

## II.    Councilor Ellis' Actions During the September 18, 2023, City Council Meeting.

The Council Meeting was the following Monday, September 18, 2023.  Councilor Ellis' plans to pack the City Council proceeded as planned, as did Councilor Ellis' intent to present motions to put pressure on the City Manager to hire for CAAB.  But Councilor Ellis did not present the motion as the CAAB had approved.  At its clearest, the CAAB passed an amended motion that would read something like this, although the record they made during the meeting is not perfectly clear:

> "*The Climate Action Board requests council to direct the city manager to hire a permanent sustainability employee to service the needs to the Climate Action Advisory Board*."

This is a compilation of the CAAB discussion at pages 15-16 of the meeting transcript. In contrast, as presented to City Council, Councilor Ellis made the following motion:

Page 16 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
 3              COUNCILOR ELLIS:  I do have.  We also
 4    heard from the Climate Action Advisory Board about
 5    staffing issues and concerns.
 6              And so I have --  I have two motions, but
 7    the first one is that the Climate Action Advisory
 8    Board requests that the council direct the city
 9    manager to post the full-time job position of
10    climate program specialist within two weeks, and
11    provide an update on the hiring process every
12    meeting until filled.
```

(Ex. 3, Council Meeting Transcript, at 2.)

Councilor Ellis then re-stated twice to the Mayor, Councilors, and audience that by her motion she was "*asking that the council direct the city manager*" to act on hiring. (*See, e.g.*, *id.* at 2:22-24 [Ellis: "No, the Climate Action Advisory Board requests the council direct the city manager"])

The City Attorney recognized the fundamental flaw in this motion and sought to succinctly and politely explain that Councilor Ellis' actions were contrary to the City Charter:



```
25              MR. BREWER:  I do.  I certainly understand
```

Page 17 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
 1   council frustration.  The charter really expects
 2   that the city manager is going to do those
 3   administrative things.
 4          I think that what you may have identified
 5   as a performance issue rather than an action for the
 6   council to take.  And of course that allows the city
 7   manager also to explain, well, and I would -- I
 8   would say in the charter language it is possible for
 9   the city manager to do this work by transferring an
10   employee from a different place rather than post.
11          So by -- by adding a level of specificity
12   that you want the city manager to appoint a
13   particular officer or employee, I think that's
14   exactly what the charter says you can't do.
```

(Ex. 3, Council Meeting Transcript at 6-7.)  Councilor Ellis disagreed, saying that this matter had reached a "policy issue."  (*Id.*)

Again, the City Attorney offered appropriate advice about reframing the motion, indicating that the motion should focus on the Climate Action Advisory Board continuing its work as soon as possible, rather than influencing or coercing the City Manager to take any action on hiring.  (*Id.* at 8:7-12.)  And, this same legal advice was given yet again later in the meeting:

```
15          MR. BREWER:  I think that you are exactly

16   correct, and that that is the point that what you

17   are directing is not appointing an employee or an

18   official, it is directing the city manager to do

19   whatever it takes for this to happen.  And that's --

20   that is different in terms of the charter language.
```

(Ex. 3, Council Meeting Transcript at 18.)

## ARGUMENT

To evaluate Councilor Ellis' conduct, the City Council must consider and apply the provisions of Section 23(f) of the Charter. The text, context, and legislative history of Section 23(f) demonstrate a clear intent, in the formation of the city government, to insulate the City Manager from the influences of the Council both generally as well as specifically with respect to staffing and hiring decisions. Councilor Ellis improperly attempted to interfere with the City Manager's authority over staffing and hiring decisions in violation of Section 23(f) and, by virtue of those violations, forfeited her office.

**I.     Section 23(f) Insulates the City Manager from the Council on Matters Relating to Staffing and Hiring.**

Under Oregon law, the interpretation of a city charter is subject to the same analysis as the construction of a state statute. *McPherson v. Coos Bay-North Bend Water Board*, 318 Or App 582, 586 (2022) (citation omitted); *City of Corvallis v. State*, 304 Or App 171, 185 (2020). The decision-maker must first examine the provision's text and context. *State v. Gaines*, 346 Or 160, 171 (2009). At this text-and-context step of interpretation, the decision-maker may also consider relevant legislative history offered by the parties. *Id.* at 172; *see also State v. Blair*, 348 Or 72, 80 (2010) (following *Gaines*, "we may always consider pertinent legislative history," even in the apparent absence of

Page 19 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

ambiguity). Put differently, the Council has a duty to interpret the Charter accurately according to its plain terms and consistently with the intent of the voters who adopted it.

Chapter 5 of the Charter, in which Section 23(f) is located, defines the "Powers and Duties of Officers," including the Mayor (Section 22), the City Manager (Section 23), and the Municipal Judge (Section 24). While the powers and duties of the Mayor and Municipal Judge are concise—described in no more than two paragraphs, with no subsections—the role of the City Manager is much more particularly defined to include, for example, qualifications required to become City Manager (Section 23(a)), and what to do in the event of the City Manager's absence (Section 23(e)), in addition to specifically enumerated powers and duties (Section 23(c)).

Section 23(f) is entitled "Interference in administration and elections."[3]  The opening language (referred to as the "influence or coercion clause") of the provision uses intentionally strong terminology to express its intent:  "Neither the Mayor nor any member of the Council shall *in any manner, directly or indirectly, by suggestion or otherwise*, *attempt* to influence or coerce the Manager in the making of any appointment or removal of any officer or employee[.]" (emphasis added).  It goes on to provide further (in the "specific appointment clause") that the same individuals may also not "discuss, *directly or indirectly*, with the Manager the matter of specific appointments to any City office or employment." (emphasis added).  In both instances, the interference—whether by discussion, influence, coercion, or mere suggestion—need not be direct; even indirect attempts to influence the City Manager in matters of staffing and hiring run afoul of

_____

[3] An older version of Section 23(f) contained a provision restricting City employees, including the City Manager, from engaging in certain political activities.  This provision was removed by the voters following the Oregon Court of Appeals' decision in *Williams v. Astoia*, 43 Or App 745 (1979), which held that state statute preempted a city from regulating the political activities of public employees.  Although this provision no longer contains any references to interference in elections, the name of the section remains unchanged to refer to both "administration *and* elections." (emphasis added).  *See* Administrative Services Committee Meeting Minutes, August 27, 1984, Attachment 1 at 1.

Page 20 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Section 23(f).  This plain language of Section 23(f) evinces a compelling policy of insulating the City Manager from *any* interference by the Council in hiring decisions—whether that interference is direct or indirect.

The legislative history supports the interpretation of Section 23(f) as establishing an anti-interference policy since its original adoption by the voters in 1948.  This history, which has been summarized for this hearing by the City Attorney, includes a few notable minute entries from the City Council.  First, the minutes from February 2, 1948, include a letter from the Chamber of Commerce proposing that the City Council put a measure to the voters adopting a new or amended Charter with a City Manager form of government. The minutes from March 1, 1948, reflect the same intent, following the "general lines of the Council-Manager model charter prepared by the League of Oregon Cities."  Second, on March 22, 1948, the City Council minutes reflect a discussion of the provisions of a new charter, including a proposed amendment that would have allowed City Councilors to override by majority vote the authority of the City Manager:

Page 21 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Minutes of March 22, 1948, continued.

324

Discussion of new charter.

The balance of the meeting was spent in ==discussion of the provisions of the new charter. During the discussion Councilman Williams offered a motion, which was seconded by Councilman Woodcock, to provide that a majority vote of the Council may override any action of the City Manager. Councilman Cox moved to amend the motion, seconded by Councilman Williams, to add the words "except in purely administrative affairs", following some further discussion both motions were withdrawn.== In the matter of whether or not to include in the new charter a provision to continue the 1891 charter section which could be used to prevent the levying of any general road fund tax on city proper by the County, upon motion, this was referred to a special committee with power to act.

Adjournment

No further business appearing, on motion the Council adjourned to 7:30 o'clock P M on Monday, March 29, 1948.

Attest:

*Ralph P. Schindler*          *[signature]*

Municipal Judge                Mayor

In other words—the Council considered amending the charter to allow oversight of the City Manager's hiring decisions, but ultimately declined to do so. This legislative history is consistent with the express delegation of duties and separation of powers within the Charter as adopted in 1948 and as it exists today. The intent was to delegate exclusive authority to the City Manager over administrative and operational decisions, and specifically to staffing and hiring matters. As applied here, the City Council should stay true to both the terms and original intent of the Charter, and construe and apply its provisions faithful to that intent.

## II.    Councilor Ellis Violated the Influence or Coercion Clause of Section 23(f).

As a member of the Council, Councilor Ellis is subject to the restrictions of Section 23(f) of the Charter. (*See* Section 23(f) ("Neither the Mayor nor *any member of*

Page 22 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

*the Council* shall . . ." (emphasis added)).)  Councilor Ellis' actions at both the CAAB
and City Council Meetings constitute "attempt[s] to influence or coerce the Manager in
the making of any appointment or removal of any officer or employee," in violation of
the Influence or Coercion Clause of Section 23(f).

> **A.    Councilor Ellis Attempted "Influence or Coerce the Manager in the
> Making of Any Appointment or Removal of Any Officer or
> Employee."**

With respect to the influence or coercion prohibition, Section 23(f) broadly
prohibited Councilor Ellis from attempting to influence the City Manager's employment
decisions "in any manner, directly or indirectly[.]"  The attempted influence or coercion
need not have been directly made by Councilor Ellis to the City Manager; the prohibition
applies even if it was indirectly made "in any manner," and that is what happened here.
With respect to the full-time Climate Program specialist position Councilor Ellis wanted
created by the City Manager and filled, the evidence unequivocally supports a finding
that she attempted to influence or coerce the City Manager at the CAAB meeting and the
City Council meeting.

Specifically, the evidence shows that Councilor Ellis indirectly put pressure on
the City Manager to create and fill the full-time position.  First, she held a meeting of the
CAAB with the goal of having the CAAB pressure the City Council to direct the City
Manager to hire a full-time Climate Program specialist.  Second, she advocated that
CAAB members "pack" the Council meeting at the time of a vote on that issue.  Second,
Councilor Ellis enlisted others to help accomplish her strategy to coerce the City
Manager by asking members of CAAB to make motions, directing the content of those
motions, and suggesting that they create a powerful force at a City Council meeting by
packing it and making supportive statements, individually and as a group, on hiring
questions that fall unquestionably to the City Manager.  And then, at the Council
Meeting, Councilor Ellis brought forward her motion seeking to direct the City Manager
to make specific staffing and hiring actions to support CAAB.  Although Councilor Ellis'

Page 23 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

proffered motion did not pass because the City Attorney and other Councilors stepped in, Section 23(f) prohibits *attempts* at influencing or coercing the City Manager, irrespective of the success of that attempt; in other words, Section 23(f) does not require that an individual successfully influence or coerce the City Manager to constitute a violation.

To the extent that Councilor Ellis argues that the influence or coercion prohibition only applies to the appointment or removal of an *already existing* officer or employee, the prohibition in Section 23(f) has no such limitation. Critically, the law on construing legislative acts such as the Charter expressly prohibits inserting language that does not exist in it. Indeed, when interpreting language in a city charter, the decision-maker may "not [] insert what has been omitted, or [] omit what has been inserted[.]" ORS 174.010.[4] Thus, the decision-maker cannot add limitations to narrow the legislatively prohibited action or conduct.

As applied here, it would be legally improper to try to add the word "undue" as a qualifier to "influence" or "coerce," just as it would be wrong to limit the influence or coercion clause to specific employees. Moreover, Section 23(f) already has a different provision prohibiting discussions with the City Manager about hiring or firing *specific* employees. Here, the influence or coerce clause requires no such specificity, and that qualification cannot be inserted.

It warrants noting that the prohibition in Section 23(f) extends to *removing* positions as well. For instance, Councilors are prohibited from attempting to direct,

---

[4] Ignorance of the law is not an excuse. Here, Section 23(f) does not require that the offending Councilor be aware that their conduct constitutes a violation of the Charter. It is a general maxim of law that specific knowledge that conduct constitutes an offense is not an element of that offense, unless specifically provided. *See, e.g.*, ORS 161.115(4) ("Knowledge that conduct constitutes an offense, or knowledge of the existence, meaning or application of the statute defining an offense, is not an element of an offense unless the statute clearly so provides."). Because Section 23(f) does not specify a mental state by the offender, it is *not* required that Councilor Ellis was aware that her conduct would constitute a violation of the Charter, and it would not be appropriate to insert such a requirement where one does not exist.

Page 24 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

influence, or coerce the City Manager to remove a Fire Marshal, Code Compliance

specialist, or Diversity, Equity, and Inclusion coordinator, among others.  Attempting to

direct, influence, or coerce the City Manager to appoint a position may seem less

intrusive than attempting to direct, influence, or coerce the City Manager to remove a

position.  However, the Charter makes no distinction in the prohibitions on appointing or

removing positions.

Based on the plain language of Section 23(f), Councilor Ellis' actions in the

CAAB and City Council meetings constituted prohibited attempts to influence or coerce

the City Manager to hire a full-time Climate Program specialist position.  Those attempts

violated the Charter.

## III.    The Legislative Privilege Exception Does Not Apply.

Section 23(f) provides a legislative privilege-type exception:  "Nothing in this

section shall be construed, however, as prohibiting the council, *while in open session,*

*from discussing with or suggesting to* the Manager, fully and freely, anything pertaining

to the City affairs or the interests of the City." (emphasis added.)  This provision does not

apply to Councilor Ellis' statements at either the CAAB Meeting or the September 18,

2023, Council Meeting.

### A.    The Exception Does Not Apply to the CAAB Meeting.

#### 1.    The CAAB Meeting Was Not an "Open Session" of the Council.

The CAAB is a separate entity from the Council—it is a Policy Advisory Board.

Policy Advisory Bodies are established by the Council, and include seven voting

members, including one City Councilor.  *See* Resolution 2021-08, Exhibit A (1)(g).

While Policy Advisory Bodies "may make recommendations to the City Council," they

"do[] not have the authority to direct the Council or staff to take action, nor does a Policy

Advisory Body have an operational role in the work of the City."  *Id.* at Ex. A (1)(h).

Meetings of Policy Advisory Boards are subject to requirements specific to Policy

Advisory Boards.  *Id.* at Ex. A (1)(k)-(l); (o)-(p).  As distinct bodies, set up by the

Page 25 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Council but operating independently, meetings of the Policy Advisory Boards are not "open sessions" of Council such that the legislative privilege exception of 23(f) would apply. Therefore, Councilor Ellis' comments at the CAAB Meeting are not subject to this exception.

### 2. Councilor Ellis' Statements Were Not "in discussion with" or "suggestions to" the City Manager.

Moreover, even if the CAAB meeting could be considered an "open session" of Council, Councilor Ellis' statements were not "in discussion with" or "suggestions to" the City Manager; rather, Councilor Ellis sought to "*direct*" the City Manager to take certain staffing and hiring actions:

```
2              CHAIR ELLIS:  So what I have, and we're
3    going to want to put a date on it, to -- we are
4    requesting, the climate action board will request
5    the council directs the city manager to fill
6    Catherine's economic development and climate program
7    specialist, and then we need a date.
```

(Ex. 1, CAAB Transcript at 21.) Additionally, neither the City Manager nor any delegate of the City Manager's office were present at the CAAB Meeting, such that Councilor Ellis could be said to have been in "discussion with" or making "suggestions" to them. Rather, as evidenced by the factual record quoted extensively above, Councilor Ellis sought to influence and coerce the City Manager by "directing" him to make staffing and hiring decisions—a task specifically reserved for the City Manager.

### B. The Exception Does Not Apply to the Council Meeting Because Councilor Ellis' Actions Were Not "discussions with" or "suggestions to" the City Manager.

Similarly, Councilor Ellis' statements at the Council Meeting are not entitled to the protection of the legislative privilege exemption of Section 23(f). Although the meeting at issue was, indisputably, an "open session" of the Council, Councilor Ellis,

Page 26 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

again, did not seek to engage in discussions with or make suggestions to the City
Manager:

> 3    COUNCILOR ELLIS:  I do have.  ==We also==
> 4  ==heard from the Climate Action Advisory Board about==
> 5  ==staffing issues and concerns.==
> 6    And so I have -- I have two motions, but
> 7  ==the first one is that the Climate Action Advisory==
> 8  ==Board requests that the council direct the city==
> 9  ==manager to post the full-time job position of==
> 10  ==climate program specialist within two weeks, and==
> 11  ==provide an update on the hiring process every==
> 12  ==meeting until filled.==

(Ex. 3, Council Meeting Transcript, at 2.)  While Councilor Ellis here made a "request"
by motion to the *Council*, her motion was that the Council "*direct*" the City Manager to
take a certain staffing and hiring action.  Here, Councilor Ellis cannot insulate herself by
stating that her intentions would be communicated through Council to the City Manager.
Remember, coercion or influence can be either direct or indirect, and in this case
Councilor Ellis was attempting to use the Council as her means of coercion or influence,
just as she was using the CAAB members to pack the Council meeting to coercive effect.

None of Councilor Ellis' efforts at moving forward with her hiring agenda were
necessary.  There were many means of communicating her intent without running afoul
of the Charter.  For example, Councilor Ellis could have requested that the Council:

- Inquire with the City Manager as to the status of efforts to support
  CAAB's policy directives;

- Ask the City Manager to provide weekly updates into hiring efforts;

Page 27 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

- Ask the City Manager to develop a plan to staff the CAAB so it could meet once a month;

- Tell the City Manager that CAAB could not meet due to staffing deficiencies, or;

- Ask the City Manager why CAAB does not have sufficient staff support.

Instead of requesting that the Council discuss the matter with or make suggestions to the City Manager, Councilor Ellis requested that the Council *direct* the City Manager to take certain actions. It is this attempt to *direct* the City Manager that runs afoul of Section 23(f).

**IV.    Forfeiture is Mandatory and Self-Executing.**

There is no "penalty phase" to this hearing. The Council's role is to determine if a violation of Section 23(f) of the Charter occurred, and it is the Charter (not the Council) that dispassionately dictates the forfeiture outcome.

Forfeiture is the remedy that the citizens of Corvallis, in enacting the Charter, deemed appropriate for violations of Section 23(f). And it is the only remedy provision in the Charter. It also bears noting that nothing in the Charter prevents a Councilor who has forfeited their office from running again for their same seat at the next general municipal election, pursuant to Section 8 of the Charter.

Additionally, while it is apparent that some members of the public may view forfeiture as extreme or disproportionate, that is legally irrelevant and no excuse for ignoring the violation. The Councilors have a solemn duty to uphold, defend, and enforce the Charter. There is no other choice in the event of a violation of Section 23(f).

**CONCLUSION**

The evidence shows that Councilor Ellis violated the Influence and Coercion Clause of Section 23(f) by attempting to influence and coerce the City Manager by directing him to make specific staffing and hiring decisions, through her actions at either or both the CAAB and Council Meetings. Because Section 23(f) makes forfeiture a

Page 28 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

mandatory and self-executing consequence of a violation, Councilor Ellis has forfeited her office as Ward 5 representative by virtue of these violations.

DATED: January 22, 2024.      MARKOWITZ HERBOLD PC

*s/ Kerry J. Shepherd*

Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Jordan E. Pahl, OSB #194335
JordanPahl@MarkowitzHerbold.com
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

*Attorneys for City of Corvallis*

2089862.3

Page 29 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF BENTON

CHARLYN ELLIS, an individual,

        Plaintiff,

vs.

CITY OF CORVALLIS, acting by and
through the Corvallis City Council,

        Defendant.

Case No. 24CV03484

ACCEPTANCE OF SERVICE BY
ATTORNEY

I, David E. Coulombe, as an attorney for the City of Corvallis, hereby accept service on behalf of the City of those certain certified copies of the Summons, Complaint, Motion for Preliminary Injunction, and supporting Declaration of Charlyn Ellis filed in the above-entitled matter.

DATED January 24, 2024.

BREWER & COULOMBE
Corvallis City Attorneys

By _____
    David E. Coulombe, OSB #022797
    Of  Attorneys for Respondent
    david.coulombe@bclawfirm.org

Page 1 -   ACCEPTANCE OF SERVICE BY ATTORNEY
       Ellis vs. City of Corvallis

Brewer & Coulombe
456 SW Monroe #101
Corvallis  OR 97333
(541) 752-5154

CERTIFICATE OF SERVICE

      I, DAVID E. COULOMBE, certify that I electronically served the foregoing **Acceptance of Service by Attorney** on JESSE A. BUSS on January 24, 2024, and that service was accomplished at the opposing party's counsel's e-mail address as recorded on the date of service in the e-filing system.

DATED: January 24, 2024.

 

David E. Coulombe, OSB # 022797
Of  Attorneys for Defendant

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF BENTON
120 NW 4th St  Corvallis Oregon  97330
541-243-7850            http://www.courts.oregon.gov/courts/benton/pages/default.aspx

January 24, 2024

File Copy

Re: Charlyn Ellis vs City of Corvallis
Case #: 24CV03484    Injunctive Relief

**NOTICE OF SCHEDULED COURT APPEARANCE**

Scheduled Proceeding:       Hearing - Motion
Room:                       Courtroom 2
                            Courtroom may change
                            Check Reader Board Upon Arrival

| Date | Time |
|------|------|
| 02/01/2024 | 3:30 PM |

Additional information:

IMPORTANT NOTICE: PLEASE READ
Failure to appear at the time and place noted above may result in an order or judgment being entered against you in the case.

**Interpreter:**  If you need an interpreter, you must tell the court at least **4 business days before** your appearance date. Go to *www.courts.oregon.gov/ScheduleAnInterpreter* to get an interpreter.

**Intérprete:** Si Ud. necesita un intérprete, debe notificar al tribunal por lo menos 4 días laborales antes de la fecha de su comparecencia. Para conseguir un intérprete, siga el siguiente enlace: *www.courts.oregon.gov/ScheduleAnInterpreter*

Hearing Notice                                                          03/2012

Ex. 1