**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Jordan E. Pahl, OSB #194335**
JordanPahl@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHARLYN ELLIS, an individual, | Case No. 6:24-cv-00205-AA |
| Plaintiff, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | **Request for Oral Argument** |
| CITY OF CORVALLIS, acting by and through the Corvallis City Council, | |
| Defendant. | |

## TABLE OF CONTENTS

LR 7-1 CERTIFICATION ....................................................................................................1

INTRODUCTION .................................................................................................................1

MOTIONS ............................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.      Corvallis City Government ...................................................................................2

           A.      Section 23(f) ...........................................................................................3

           B.      Context of Section 23(f) .........................................................................4

    II.     Actions giving rise to the due process hearing. ....................................................5

           A.      Councilor Ellis' actions at the September 13, 2023 CAAB meeting..........5

           B.      Councilor Ellis' actions at the September 18, 2023 City Council meeting...................................................................................................6

           C.      Councilor Ellis agreed to resign, then reneged. .......................................7

    III.    Procedural history ...............................................................................................8

LEGAL STANDARD ...........................................................................................................9

ARGUMENT .....................................................................................................................10

    I.      Motion 1: Defendant is entitled to summary judgment on Councilor Ellis' First Claim for Relief because the Influence or Coercion Clause and its application pass muster under Article I, section 8 of the Oregon Constitution...................................................................................................10

           A.      The Influence or Coercion Clause is not facially invalid under Article I, section 8 of the Oregon Constitution, because its focus is on the prohibited effects of speech rather than the content of the speech....................................................................................................11

           B.      Because the Influence or Coercion Clause is not overbroad, it is valid under the second *Robertson* category. ..............................................14

           C.      Even if the Influence or Coercion Clause were somehow directed to the content of speech, and not its effect, it would be a permissible restriction under the incompatibility exception.....................16

           D.      Because the Influence or Coercion Clause falls into the second *Robertson* category, no as-applied analysis is required. .............................18

    II.     Motion 2: Defendant is entitled to summary judgment on Councilor Ellis' Second Claim for Relief because neither the text of the Influence or Coercion Clause nor its application here violates the First Amendment................18

           A.      The Influence or Coercion Clause survives a facial challenge. .................19

                1.   The Influence or Coercion Clause is a content-neutral restriction that survives intermediate scrutiny. ...................................................... 20

a. The Influence or Coercion Clause is content-neutral. ............................. 20

b. The Influence or Coercion Clause survives intermediate scrutiny. .......... 22

B.    The Influence or Coercion Clause survives an as-applied challenge because Councilor Ellis' conduct was not constitutionally protected.....................................................................................................24

III.    Motion 3:  Defendant is entitled to summary judgment on Councilor Ellis' First Amendment retaliation claim because she cannot meet her burden of demonstrating that she engaged in constitutionally protected conduct. ................25

CONCLUSION.................................................................................................................27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 9

*Blair v. Bethel Sch. Dist.*,
608 F.3d 540 (9th Cir. 2010) ...................................................................................... 25, 26

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ...................................................................................... 26, 27

*Buckley v. Valleo*,
424 U.S. 1 (1976).......................................................................................................... 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................... 9

*City of Eugene v. Miller*,
318 Or. 480 (1994)....................................................................................................... 18

*City of Portland v. Tidyman*,
318 Or. 480 (1994).............................................................................................. 12, 13, 14

*Clark v. Cmty. for Creative Non-Violence*,
468 U.S. 288 (1984)...................................................................................................... 26

*Colacurcio v. City of Kent*,
163 F.3d 545 (9th Cir. 1998) ......................................................................................... 23

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
657 F.3d 936 (9th Cir. 2011) ......................................................................................... 22

*Connick v. Myers*,
461 U.S. 138 (1983).......................................................................................... 10, 24, 26

*Cook v. Ashmore*,
579 F. Supp. 78 (N.D. Ga. 1984) ................................................................................... 10

*Fidanque v. State ex rel. Oregon Gov't Standards & Pracs. Comm'n*,
328 Or. 1 (1998)........................................................................................................... 14

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) ................................................................................. 18, 19, 24

*G.K. Ltd. Travel v. City of Lake Oswego*,
436 F.3d 1064 (9th Cir. 2006) ....................................................................................... 20

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)...................................................................................................... 26

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
589 F. Supp. 382 (E.D. Cal.)....................................................................................... 9, 10

*Hartman v. Moore*,
547 U.S. 250 (2006)...................................................................................................... 26

*Houston Cmty. Coll. Sys. v. Wilson*,
595 U.S. 468 (2022)...................................................................................................... 24

*In re Fadeley*,
  310 Or. 548 (1990).................................................................................... 17
*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ...................................................................... 9
*Legal Aid Servs. of Oregon v. Legal Servs. Corp.*,
  608 F.3d 1084 (9th Cir. 2010) .................................................................. 19
*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
  827 F.3d 1192 (9th Cir. 2016) .................................................................. 19
*Mancuso v. Taft*,
  341 F. Supp. 574 (D.R.I. 1972).......................................................... 22, 23
*MKay Inc. v. City of Huntington Park*,
  2018 WL 3830011 (C.D. Cal. June 15, 2018) ........................................ 22
*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011).................................................................... 24, 26, 27
*Nieves v. Bartlett*,
  587 US ---, 139 S Ct 1715 (2019) ............................................................ 25
*Nordyke v. Santa Clara Cty.*,
  110 F.3d 707 (9th Cir. 1997) .................................................................... 19
*Norton v. Ashcroft*,
  298 F.3d 547 (6th Cir. 2002) .................................................................... 20
*Outdoor Media Dimensions, Inc. v. Dep't of Transp.*,
  340 Or. 275 (2006).................................................................................... 19
*Perry Edu. Assn. v. Perry Local Educators' Assn.*,
  460 U.S. 37 (1983).................................................................................... 22
*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992).................................................................................. 19
*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015)............................................................................ 19, 21
*State v. Babson*,
  355 Or. 383 (2014).................................................................... 11, 14, 15
*State v. Henry*,
  302 Or. 510 (1987).................................................................................. 20
*State v. Howard*,
  325 Or. App. 696 .................................................................................... 10
*State v. Moyle*,
  299 Or. 691 (1985)............................................................................ 15, 16
*State v. Rich*,
  218 Or. App. 642 (2008).......................................................................... 13
*State v. Robertson*,
  293 Or. 402 (1982).......................................................................... passim
*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)............................................................................ 24, 27
*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994)...................................................................... 19, 20, 22
*Turner Broad. Sys., Inc. v. F.C.C.*,
  520 U.S. 180 (1997).................................................................................. 22

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)..................................................................................... 20, 21, 22
*Warden v. Pataki,*
    35 F. Supp. 2d 354 (S.D.N.Y.)................................................................... 21, 22, 23
*Washington Mut. Ins. v. United States,*
    636 F.3d 1207 (9th Cir. 2011) ............................................................................... 9
*Wilson v. v. Dep't of Corr.,*
    259 Or. App. 554 (2013)...................................................................................... 13

### Statutes

42 U.S.C. § 1983................................................................................................... 25
ORS 161.405(1) .................................................................................................... 15
ORS 171.725(7) .................................................................................................... 14
ORS 171.743.......................................................................................................... 14

### Rules

Fed. R. Civ. P. 56(a) ............................................................................................... 9

**LR 7-1 CERTIFICATION**

As required by Local Rule 7-1, the parties made a good faith effort through conferences to resolve this dispositive motion and have been unable to do so.

**INTRODUCTION**

In 1948, the citizens of Corvallis voted to adopt a new city charter—based on a model charter widely adopted across the country.  The new charter changed the rules by delegating important matters to professional management, which was designed to achieve efficient and effective decision-making and budgetary control *sans* influence or coercion by politicians.  In general, the new form of city management widely popularized in the late 1940s adopted a new city structure in which a city council made policy decisions and an apolitical city manager-controlled implementation, administration, and operations.  At issue here is the interpretation of one short clause in Section 23(f) of the Corvallis City Charter, which has remained unchanged since 1948 and is emblematic of the council-manager structure.  That provision—referred to in this motion as the Influence or Coercion Clause—prohibits the Mayor or the City Council from attempting to interfere in matters of hiring delegated to the City Manager.

The City contends that Councilor Charlyn Ellis violated the Influence or Coercion Clause.  But this lawsuit is not about whether Councilor Ellis actually did so; hearings on that issue are left for later determination before the City Council.  Rather, this lawsuit centers on Councilor Ellis' constitutional challenges.  Because the Influence or Coercion Clause passes constitutional muster, plaintiff's claims should be dismissed on summary judgment.

**MOTIONS**

The City of Corvallis ("City" or "Corvallis") moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  The Court should grant summary judgment in the City's favor on all of plaintiff's claims for the following reasons:

1. Claim 1 - the Influence or Coercion Clause in Section 23(f) of the City Charter does not violate Article I, section 8 of the Oregon Constitution.

2. Claim 2 - neither the text of the Influence or Coercion Clause nor its application to Councilor Ellis violate the First Amendment of the Constitution of the United States.

3. Claim 3 - Councilor Ellis cannot meet her burden of demonstrating that she engaged in protected conduct sufficient to sustain a claim for First Amendment retaliation.

## BACKGROUND

### I.    Corvallis City Government

As adopted by the citizens of Corvallis in 1948, Chapter 5 of the Charter sets forth the "Powers and Duties of Officers"; including the Mayor, City Manager, and City Council.  Based on model charters developed by the Bureau of Governmental Research and Service and the Oregon League of Cities, the Charter evinced a fundamental shift—occurring all over the country—in administrative and operational authority, moving the City to a Council-Manager form of government.  (*See* 9/20/1948, Minutes of City Council Meeting, Decl. of Kerry Shepherd in Supp. of Def.'s Mot. for Summ. J. ("Shepherd Decl.") Ex. C at 3 (resolution submitting the proposed charter to the voters); *see also* the Excerpt of Benton County Elections Local Measures, Shepherd Decl. Ex. D at 1 (describing that the voters voted to "repeal all present charter provisions" and "establish[] the offices of City Manager and City Recorder").)  In other words, the new Charter made sharp distinctions between the role of the Mayor, the City Council, and the City Manager.  This shift is most notable in Section 23 (Manager), which for the first time contained extensive provisions regarding the Manager's apolitical, executive, and administrative qualifications (City of Corvallis Charter ("Charter") § 23(a)), indefinite term (Charter § 23(b)), powers and duties (Charter § 23(c)), seat at Council meetings (Charter § 23(d)), and unfettered duty to act without any attempts by the Mayor or Councilors to interfere or coerce the Manager when, *e.g.*, hiring City employees (Charter § 23(f)).[1]

The later provision, "the Influence or Coercion Clause," was not unanimously supported by the Council before being sent to the voters in 1948.  For example, on March 22, 1948, the Council considered amending the proposed Charter, before sending it to the voters, to permit the City Council to "override" the Manager on "any action."  (3/22/1948 Excerpt of minutes of City

-----

[1] A copy of the Corvallis City Charter is included as Exhibit A to the Shepherd Declaration.

Council meeting, Shepherd Decl. Ex. B.)  That amendment was rejected in favor of the current system, where the Manager controls administrative and operational matters—including hiring—and the City Council makes policy decisions.

### A.  Section 23(f)

At issue in this case is the "Influence or Coercion Clause", which remains unchanged from the version adopted by the voters in 1948.  Section 23(f) reads as follows:

> **Interference in administration and elections.**  Neither the Mayor nor any member of the Council shall <u>in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee</u> or in the purchase of supplies; or <u>attempt to exact any promise relative to any appointment from any candidate for Manager,</u> or <u>discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment</u>.  A violation of the foregoing provisions of this section shall forfeit the office of the offender.  Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

(Emphasis added.)[2]

---

[2] For ease of reference, the below separates Section 23(f) into the relevant grammatical components:

> **(f)      <u>Interference in administration and elections</u>.  Neither the Mayor nor any member of the Council shall**
>
> [i]  *in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee* or in the purchase of supplies; or
>
> [ii] attempt to exact any promise relative to any appointment from any candidate for Manager, or
>
> [iii] discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment.
>
> *A violation of the foregoing provisions of this section shall forfeit the office of the offender*.
>
> Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the

The three emphasized and independent clauses of Charter § 23(f) specify alternative means by which the Mayor or a member of Council might violate this provision. First, the "Influence or Coercion Clause" prohibits elected officials from, "in any manner, directly or indirectly, by suggestion or otherwise, attempt[ing] to influence or coerce the Manager in the making of any appointment or removal of any officer." Notably, this clause prohibits any *attempt* to influence or coerce the Manager, and does not require that the attempt be successful, nor does it require that the officer communicate directly with the Manager, nor does it require that the attempted influence or coercion relate to a specific person. Second, the "Promise Clause" prohibits elected officials from "attempt[ing] to exact any promise relative to any appointment from any candidate for Manager." Third, the "Specific Appointments Clause" prohibits elected officials from "discuss[ing], directly or indirectly, with the Manager the matter of specific appointments to any City office or employment." A violation of any of these three provisions results in forfeiture, although these prohibitions do not extend to "discuss[ions] or suggest[ions] to the Manager" made during an open session of the Council.

### B.  Context of Section 23(f)

For context, Section 23(f) is preceded by provisions that expressly delegate to the City Manager all administrative authority, duties, and control. Section 23 begins by designating the City Manager as the "administrative head of the government of the City." (Charter § 23(a).) The Council chooses the City Manager without regard to political considerations, and solely for executive and administrative qualifications. (*Id.*) The Charter specifies that the City Manager's role includes the sole and exclusive authority to "appoint all appointive offices and employees," (Charter § 23(c)(3).); to "have general supervision and control over them and their work, with power to transfer an employee from one department to another," "to the end of obtaining the utmost efficiency in each of them." (*Id.*) It is the City Manager's job to prepare and submit

_____

Manager, fully and freely, anything pertaining to the City affairs or the interests of the City. (Charter § 23(f).)

(Emphasis added.)

budgets to the Budget Commission (Charter § 23(c)(5)), and to supervise all public utilities (Charter § 23(c)(6)).  It is also the City Manager's job to see that all ordinances are enforced and the City's obligations are observed.  (Charter § 23(c)(2).)  And, the City Manager is "entitled to sit with the Council" and "take part in the discussion of all matters before it."  (Charter § 23(d).)

In contrast, the Charter gives no administrative or operational authority to the City Council—subject to very narrow exceptions.  The City Council appoints the City Attorney, Municipal Judge, and City Manager (Charter § Section 11); may create new Council appointive positions (Charter § 12); and sets the compensation for officers and employees (Charter § 13).  Otherwise, all other administrative and operational authority is delegated to the City Manager.  That said, the Council may, if it so desires, remove the City Manager (Charter § 23(b)), but may not interfere with the City Manager's administrative duties.

In short, the administrative and operational strategies for achieving the City's policy objectives have been delegated to the experience, professionalism, and discretion of the City Manager as the means of achieving the "the utmost efficiency."  (Charter § 23(c)(3).)

## II.    Actions giving rise to the due process hearing.

### A.  Councilor Ellis' actions at the September 13, 2023 CAAB meeting.

On September 13, 2023, Councilor Ellis chaired a Climate Action Advisory Board ("CAAB") meeting.  This was a public meeting while carrying out her official duties.  Councilor Ellis began the meeting by initiating a targeted discussion of an "emergency" arising from perceived staffing shortages, followed by motions that she invited for identified City employee positions and purposes.  At that meeting, Councilor Ellis argued for an emergency hiring demand for a permanent City job to support the committee, and asked the committee to make a motion.  (9/13/2023 CAAB Transcript, Shepherd Decl. Ex. 1 at 2:1-3:7; 8:25-9:10; 10:13-16.)  At Councilor Ellis' prompting, another member of the CAAB moved to "direct the city manager to fill the vacancies that are open that leave us without staff to allow this board to meet."  (*Id.* at 15:16-23.)  Councilor Ellis clarified that the position should be "director level."  (*Id.* at 16:14.)  She restated the motion:

> [T]he [CAAB] will request the council directs the city manager to fill Catherine's economic development and climate program specialist, and then we need a date. And maybe we should say posted within two weeks.

(*Id.* at 21:4-9.)  Councilor Ellis then continued to request that CAAB members pack the City Council meeting to make a strong statement in favor of the motion that she would bring to the Council.  (*Id.* at 46:16-47:10.)

### B.  Councilor Ellis' actions at the September 18, 2023 City Council meeting.

The Council meeting took place on September 18, 2023.  Councilor Ellis' plans to pack the City Council proceeded as planned, as did Councilor Ellis' intent to present the motion to direct the City Manager to hire an employee to support her committee.  The motion she made to the Council on behalf of CAAB, outside the presence of the City Manager (who was not in attendance this day) was for the Council to "direct the city manager to post the full-time job position of climate program specialist within two weeks, and provide an update on the hiring process every meeting until filled."  (9/18/2023 Council Meeting Transcript, Shepherd Decl. Ex. 3 at 2:6-12.)  Councilor Ellis then re-stated twice to the Mayor, Councilors, and audience that by her motion she was "*asking that the council direct the city manager*" to act on hiring for her CAAB committee.  (*Id.* at 6:16-17 (emphasis added); *see also id.* at 2:22-24 (Ellis: "No, [CAAB] requests the council direct the city manager").)

The City Attorney recognized the fundamental flaw in this motion and sought to succinctly and politely explain that Councilor Ellis' actions were contrary to the City Charter:

> The charter really expects that the city manager is going to do those administrative things. . . . . . So by - - by adding a level of specificity that you want the city manager to appoint a particular officer or employee, I think that's exactly what the charter says you can't do.

(*Id.* at 7:1-14.)  Councilor Ellis disagreed, saying that this matter had reached a "policy issue." (*Id.* at 7:19-20.)

Again, the City Attorney offered appropriate advice about reframing the motion, indicating that the motion should focus on the CAAB continuing its work as soon as possible,

rather than directing the City Manager to take any particular action on hiring. (*Id.* at 8:7-12.) This same legal advice was given yet again later in the meeting. (*Id.* at 18:15-20.)

### C. Councilor Ellis agreed to resign, then reneged.

After these meetings, various City officials began receiving complaints about Councilor Ellis' conduct and whether her "conduct violated Corvallis Charter provisions prohibiting City Councilors from interfering with the City Manager's administration of the City." (12/5/2023 Declaration signed by Mayor, City Council President, City Council Vice President, City Manager, and City Attorney, Shepherd Decl. Ex. 6 at 1.) On November 27, 2023, the Mayor, Council President, and City Attorney met with Councilor Ellis "to deliver and discuss [a] draft Resolution which capture[d] in writing allegations formed from the conduct observed" at the two meetings described above. (*Id.*) Councilor Ellis was informed of her right to a hearing, but stated that a hearing was unnecessary, and that she intended to resign her elected office and make a statement at the December 4, 2023 City Council meeting. (*Id.*)

On December 1, 2023, Councilor Ellis informed the City Attorney and Deputy City Attorney that she had changed her mind, and requested a due process hearing. (*Id.* at 2.) The Corvallis City Recorder then sent to Councilor Ellis a letter describing that a due process hearing had been scheduled at Councilor Ellis' request for December 18, 2023, and attaching a draft resolution that would be presented at that hearing. (12/6/2023 Letter from City of Corvallis to Councilor Charlyn Ellis, Shepherd Decl. Ex. 5.) On December 22, the Corvallis City Recorder sent another letter to Councilor Ellis, describing that, per Councilor Ellis' request, the hearing had been moved to January 16, 2024. (12/22/2023 Letter from City of Corvallis to Councilor Charlyn Ellis, Shepherd Decl. Ex. 7 at 1.) In early January, Councilor Ellis requested another extension, and the hearing was set for February 5, 2024. (Shepherd Decl. ¶ 2.) The parties and their attorneys agreed to a briefing schedule, a stipulated factual record, and stipulated procedures for the due process hearing. (*Id.*)

Pursuant to that schedule, the City filed its pre-hearing brief with the City Recorder on January 22. (*Id.* ¶ 3.) In its brief, the City asserted that Councilor Ellis, through her actions at both the CAAB and City Council meetings, violated the Influence or Coercion Clause and, as a

result of those violations, forfeited her office.  (1/22/2024 City of Corvallis Due Process Hr'g
Mem., Shepherd Decl. Ex. E.)  The City did not contend that Councilor Ellis violated any other
provision in Section 23(f).[3]  (*Id.*)

### III.    Procedural history

The same day the City submitted its brief, Councilor Ellis filed suit in Benton County
Circuit Court, Case No. 24CV03484.  In her Complaint, Councilor Ellis alleged that the
"expulsion proceedings" (*i.e.*, the Due Process Hearing) are "based solely on the content of
Councilor Ellis's protected speech" and therefore "violate[] Article I, section 8 of the Oregon
Constitution and the First Amendment to the U.S. Constitution [and has] the effect of chilling
public speech in Corvallis, and is disenfranchising local voters."  (1/22/24 Pl.'s Compl. for
Declaratory and Injunctive Relief ("Compl.") ¶ 2.)  Councilor Ellis brought three claims: one
under Article I, section 8 of the Oregon Constitution and two under the First Amendment to the
United States Constitution.

With respect to the first claim, Councilor Ellis alleged that (1) "Section 23(f) is both
facially void and void as applied under Article I, section 8 of the Oregon Constitution because it
constitutes a content-based restraint on speech, or it is unconstitutionally overbroad" and (2) the
Hearing "is unconstitutional and impermissible under Article I, section 8 of the Oregon
Constitution and should be enjoined."  (Compl. ¶¶ 19-20.)  She also alleged that "[a]ny City
Council decision that purports to remove Councilor Ellis from office based on her protected
speech made in public meetings on September 13 and/or 18, 2023, is invalid" and that any
provision authorizing such a removal is also invalid.  (*Id.* ¶¶ 21-22.)

---

[3] While the original draft resolution shared with Councilor Ellis in the December 6 letter
contemplated that Councilor Ellis' actions at both meetings violated multiple provisions of
§ 23(f), including the Influence or Coercion Clause, (12/6/2023 Letter from City of Corvallis to
Councilor Charlyn Ellis, Shepherd Decl. Ex. 5 at 4), the City ultimately did not proceed on any
grounds other than the Influence or Coercion Clause.  (1/22/2024 City of Corvallis Due Process
Hr'g Mem., Shepherd Decl. Ex. E.).

Councilor Ellis made the same allegations with respect to the First Amendment of the United States Constitution (*id*. ¶¶ 25-26) and additionally argued that the Due Process Hearing is "retaliatory" because the City would not have brought "expulsion proceedings" but-for her protected speech. (*Id.* ¶ 27). She also contended that this action was having a chilling effect on both her Oregon and federal constitutional rights. (*Id.* ¶ 28.)

In response to the challenge, the City agreed to remove the Due Process Hearing from the calendar (Shepherd Decl. ¶¶ 4-5) and on January 31, 2024, the City removed the case to federal court on the basis of federal question jurisdiction. (1/31/2024 Def.'s Not. of Removal of Case to Federal Court (Dkt. 1).)

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States,* 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The trial court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).

Although the moving party bears the initial burden of showing the absence of a genuine issue of material fact, on issues where the nonmoving party bears the burden of proof at trial, the moving party can carry its burden by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). That shifts the burden to the nonmoving party. *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one. . . . The nonmoving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex,* 477 U.S. at 323-24.

Where the issues raised are pure questions of law and no material issues of fact are in dispute, disposition of the case on cross motions for summary judgment is appropriate. *See, e.g. Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 589 F. Supp. 382, 385 (E.D. Cal.), *rev'd*

*on other grounds*, 739 F.2d 466 (9th Cir. 1984) ("[T]he Court finds that disposition of this case by cross-motions for summary judgment is entirely proper.  The issue raised herein is a pure question of law as to which there are no material issues of fact in dispute."); *see also Cook v. Ashmore*, 579 F. Supp. 78, 83 (N.D. Ga. 1984) ("[T]he question relating to the protected status of speech is one of law; thus, it is an appropriate issue to be resolved on a motion for summary judgment."  (citing *Connick v. Myers*, 461 U.S. 138 (1983)).

## ARGUMENT

Defendant moves for summary judgment on each of Councilor Ellis' claims.  Defendant does not believe that Councilor Ellis disputes any of the facts described above and, therefore, defendant's motions focus purely on the issues of law raised in Councilor Ellis' complaint.

I.    **Motion 1: Defendant is entitled to summary judgment on Councilor Ellis' First Claim for Relief because the Influence or Coercion Clause and its application pass muster under Article I, section 8 of the Oregon Constitution.**

The Influence or Coercion Clause withstands scrutiny under Article I, section 8 of the Oregon Constitution, both facially and as applied to Councilor Ellis' conduct.  "A facial challenge asserts that lawmakers violated the constitution when they enacted the statute."  *State v. Howard*, 325 Or. App. 696, 702 n.3, *review denied*, 371 Or. 333 (2023) (cleaned up).  "For a statute to be facially unconstitutional, it must be unconstitutional in all circumstances, *i.e.*, there can be no reasonably likely circumstances in which application of the statute would pass constitutional muster."  *Id.*  In contrast, "an as-applied challenge asserts that executive officials violated the constitution when they enforced the statute."  *Id.*  Because the Influence or Coercion Clause is not unconstitutional in all circumstances and its enforcement against Councilor Ellis did not violate the Oregon Constitution for the reasons described below, Councilor Ellis cannot prevail on her state constitutional claim as a matter of law.

The applicable analytical framework for evaluating the Influence or Coercion Clause was established in *State v. Robertson*, 293 Or. 402 (1982).  That decision articulated a three-category

analysis under Article I, section 8 of the Oregon Constitution.  The Oregon Supreme Court in *State v. Babson* articulated the *Robertson* analysis as follows:

> Under the first [*Robertson*] category, the court begins by determining whether a law is written in terms directed to the substance of any "opinion" or any "subject" of communication.  If it is, then the law is unconstitutional, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.  If the law survives that inquiry, then the court determines whether the law focuses on forbidden effects and the proscribed means of causing those effects include speech or writing, or whether it is directed only against causing the forbidden effects.  If the law focuses on forbidden effects, and the proscribed means of causing those effects include expression, then the law is analyzed under the second *Robertson* category.  Under that category, the court determines whether the law is overbroad, and, if so, whether it is capable of being narrowed.  If, on the other hand, the law focuses only on forbidden effects, then the law is in the third Robertson category, and an individual can challenge the law as applied to that individual's circumstances.

355 Or. 383, 391 (2014) (internal citations, quotation marks, and alterations omitted).

For purposes of this argument, the City analyzes the Influence or Coercion Clause by focusing on (1) whether the provision rightfully is based on the *effects* of the prohibition, rather than its content; and next on (2) whether the provision is overbroad; and finally (3) whether the prohibition falls within the incompatibility exception for a public servant.

## A.  The Influence or Coercion Clause is not facially invalid under Article I, section 8 of the Oregon Constitution, because its focus is on the prohibited effects of speech rather than the content of the speech.

Councilor Ellis' claim does not distinguish between the Influence or Coercion Clause and other methods by which Section 23(f) can be violated (*e.g.*, the Promises Clause or the Specific Appointments Clause).  In failing to make that distinction, she does not address the question mandated by the categorical framework laid out in *Robertson*: whether the Influence or Coercion Clause is directed at the substance of any opinion or any subject of communication.  Here, the substance or subject of the communication is not at issue; rather, it is the effect of the speech— attempted *influence or coercion*—that is at issue.

In *City of Portland v. Tidyman*, the Oregon Supreme Court considered a city ordinance restricting the location of "adult businesses," including "adult bookstores," which was defined as any establishment having materials "which are distinguished by their emphasis on matters depicting specified sexual activities[.]" 306 Or. 174, 181 (1988). The court held that this restriction fell into the first *Robertson* category, and distinguished it from the coercion statute considered in *Robertson* on the grounds that the city ordinance in *Tidyman* contained no reference to any "undesired effect," but rather "undertakes to prevent what the city believes to be the effects of the trade in sexually explicit verbal or pictorial material by describing the content of this communicative material." *Id.* at 184. The city of Portland "attempt[ed] to cover this crucial gap by legislative assertions," citing the "findings" that the city had apparently considered in enacting the ordinance, but the court found this insufficient, noting that "[i]t is the operative text of the legislation, not prefatory findings, that people must obey and that administrators and judges enforce." *Id.* at 184-85.

The difference between *Robertson*'s coercion statute and the adult bookstore ordinance at issue in *Tidyman* was the gravamen of the restriction: whether the offense was based on the speech itself, or the *effect* of the speech. The ordinance in *Tidyman* described what content adult bookstores sold, declared it offensive, and thus restricted it, hiding behind "vague and conclusory findings," which were present only in the ordinance's history and omitted from the regulatory standards, rather than baked into the text of the ordinance itself. *Id.* at 185.

Here, the Influence or Coercion Clause in the Corvallis City Charter is akin—in more ways than one—to the coercion statute found constitutional in *Robertson*; not the adult bookstore ordinance in *Tidyman*. First, the coercion statute in *Robertson* was just that: a coercion statute, much like the Influence or Coercion Clause at issue here. The Court in *Robertson* held that that coercion statute was "directed in terms against the pursuit of a forbidden *effect* and not * * * against forbidden speech as such, it is not a law whose enactment was for this reason alone wholly withdrawn from legislative authority by article I, section 8." 293 Or. at 415. Although, as discussed below, the *Robertson* statute was found unconstitutionally *overbroad* for defects not

present in the Influence or Coercion Clause, it was deemed to be directed at the forbidden *effect* of coercion, rather than the substance of any communication that effectuated that coercion. *Id.*

The fact that the Influence or Coercion Clause does not require that the undesired effect actually comes to fruition, but rather prohibits an attempt to achieve that undesired effect, does not make the Clause unconstitutional; the court in *Robertson* held that "laws must focus on proscribing *the pursuit or accomplishment* of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end." *Id.* at 416-17 (emphasis added); *see also State v. Rich*, 218 Or. App. 642, 646 (2008) ("Oregon free speech jurisprudence divides laws that might implicate expression into three categories: [1] laws that explicitly and in terms prohibit speech itself, regardless of whether the speech causes or is an attempt to cause harm; [2] laws that prohibit *the accomplishment of, or attempt to accomplish, harm* and specify that one way that the harm might be caused is by speech; and [3] laws that, without reference to or specification of speech, prohibit the accomplishment of, or attempt to accomplish, harm that, in some circumstances, could be caused by speech." (emphasis added)). The fact that the Influence or Coercion Clause expressly references the undesired effect—which the ordinance in *Tidyman* failed to do—is sufficient.

The coercion statute in *Robertson* prohibited "compel[ling] or induc[ing] another person to engage in * * * or to abstain * * * conduct, by means of instilling in him a fear." 293 Or. at 413. That is precisely the prohibited *effect* that passes constitutional muster on its face. And this is exactly what the Influence or Coercion Clause does: it prohibits a Council member from "attempt[ing] to influence or coerce the Manager in the making of any appointment or removal of any officer or employee," by way of "suggestion or otherwise." (Charter § 23(f).) It does not forbid Council members from making suggestions to the Manager, but rather prohibits attempts to *influence* or *coerce* the Manager—which may be *accomplished* directly or indirectly. *See Wilson v. v. Dep't of Corr.*, 259 Or. App. 554, 559 (2013) ("The rule specifies a variety of harms and prohibits expression only when it would pose a threat of one or another of those harms; . . . expression that does *not* pose such a threat of harm is not prohibited." (emphasis in original)). Like the coercion statute the court considered in *Robertson*, this provision is not directed at the

substance of speech, but rather focuses on prohibited effects of influence or coercion and, therefore, passes constitutional muster under the first *Robertson* category.[4]

**B. Because the Influence or Coercion Clause is not overbroad, it is valid under the second *Robertson* category.**

Even a law that is not facially invalid may be unconstitutional if it is overbroad. *Babson*, 355 Or. at 391. "[A] law is overbroad to the extent that it announces a prohibition that reaches

---

[4] In her motion for a preliminary injunction, Councilor Ellis cites *Fidanque v. State ex rel. Oregon Gov't Standards & Pracs. Comm'n*, 328 Or. 1, 7 (1998), for the proposition that restrictions on political speech are not considered "content-neutral" and are, therefore, unconstitutional. The Oregon Supreme Court's decision in *Fidanque* is neither on-point nor analytically useful.

First, *Fidanque* is not on-point because the challenged statute was not focused on preventing an undesired effect. The statute required lobbyists to register as such and pay a registration fee. *Id.* at 5 (citing ORS 171.743). The statutory scheme defined "lobbying" as "influencing, or attempting to influence, legislative action through oral or written communication with legislative officials, solicitation of others to influence or attempt to influence legislative action or attempting to obtain the good will of legislative officials." *Id.* at 4 (citing ORS 171.725(7)). The statute did not *prohibit* lobbying, but regulated it; in other words, the statute did not seek to prevent any undesired effect of lobbying, but rather expressly condoned lobbying, subject to the payment of a fee. *Id* at 7. The state argued that the fee was necessary to maintain the lobbyist registration program, which the court rejected on grounds similar to those relied on in *Tidyman*: "[T]he statute on its face does not tie the fee to the costs associated with registering lobbyists." *Id.* at 9.

Second, *Fidanque* is not a model of analytical clarity whose principles can be applied here. A law review article authored by staff from the Oregon Law Commission describes that "[i]t is difficult to discern which *Robertson* category the court used to analyze the statute in *Fidanque*." Wendy J. Johnson, Samuel E. Sears, Daniel J. Rice, Oregon Government Ethics Law Reform, 44 Willamette L. Rev. 399, 437 (2007). The article explains that, while the analysis in *Findanque*—which focuses largely on overbreadth—suggests an analysis under the second *Robertson* category, the opinion elsewhere suggests that the restriction is content-based restriction on expression, which would place it in the first category. *Id.* at 437-38. The article suggests that, as relevant here, one of only two holdings that can be derived from *Fidanque* is that "a statute that regulates lobbying must be narrowly drawn to achieve only the regulatory ends without burdening speech any more than necessary to achieve those ends." *Id.* at 438. To the extent that that principle can be extended beyond the context of lobbying as a profession, professional regulations, and registration fees, the Influence or Coercion Clause survives the "narrowly tailored" inquiry, for the reasons explained elsewhere in this brief.

conduct which may not be prohibited." *Robertson*, 293 Or. at 410 (citation omitted).  The
Influence or Coercion Clause is not overbroad.

      As explained above, because the Influence or Coercion Clause is directed at the *effect* of
speech, not the speech itself, it is properly considered under the second *Robertson* category.
*Babson*, 355 Or. at 391 ("If the law focuses on forbidden effects, and the proscribed means of
causing those effects include expression, then the law is analyzed under the second *Robertson*
category.").  Laws are analyzed under this category for overbreadth, where a "court determines
whether the law is overbroad, and, if so, whether it is capable of being narrowed." *Id.*

      As noted, a law is overbroad "to the extent that it announces a prohibition that reaches
conduct which may not be prohibited." *Robertson*, 293 Or. at 410 (citation omitted); *see also*
*State v. Moyle*, 299 Or. 691, 702 (1985) (asking, in an overbreadth analysis, whether the law
"can be interpreted to prevent its application to protected speech").  Laws are typically analyzed
for overbreadth under the second *Robertson* category on a case-by-case basis, *see Moyle*, 299 Or.
at 702; however, there are instances where "the needed narrowing cannot be accomplished by
judicial interpretation," *Robertson*, 293 Or. at 436.

      Here, the Influence or Coercion Clause does not reach protected speech, because to
violate that Clause—which prohibits any "attempt to influence or coerce the Manager"—a
Councilor must specifically intend to influence or coerce the Manager in specific matters.  To
demonstrate "attempt" typically requires that the person "intentionally engage[d] in conduct
which constitutes a substantial step toward commission" of the act in question.  ORS 161.405(1);
*see also* Or. Unif. Crim. Jury Instructions No.1040 (Or. State Bar Comm. On Unif. Crim. Jury
Instructions 2022) ("The mental state element for an attempt must always be 'intentionally,'"
because "attempt is defined as 'intentionally engaging in conduct'").  Simply put, if a Council
member does not intend to "influence or coerce" the Manager, then they have not violated the
Influence or Coercion Clause.

      By way of example, if a Councilor approached the Manager in public and asked, in
making small talk, how the hiring process was proceeding for a particular position, no violation
of the Influence or Coercion Clause could lie.  *See, e.g.*, *Moyle*, 299 Or. at 702 (listing examples

of conduct that the statute at issue might be read to prohibit).  In *Moyle*, the court considered a harassment statute, which provided that a person committed the crime of harassment if, "with intent to harass, annoy or alarm another person," the person "[s]ubjects another to alarm by conveying a telephonic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm." *Id.* at 693.  The court noted that the statute *might* be read to reach protected conduct, such as "political dissenters threatening 'Death to the oppressors'" or "demonstrators posting or carrying placards showing caricatures of political officials or corporation presidents hung in effigy." *Id.* at 702.  Despite that possibility, however, the court determined that the elements of the offense precluded the statute's application to protected conduct, even though specific intent was not included as an element. *Id.* at 703.

Applied here, the Influence or Coercion Clause cannot be violated unless a Councilor specifically intends to influence or coerce the Manager improperly and therefore cannot, by its terms, reach protected conduct.  And even if there was some possibility for unconstitutional application, like the harassment statute in *Moyle*, "these situations can be determined by prosecutors and by courts when they arise," 299 Or. at 705, and would not result in the invalidation of the entire clause.

In summary, because the Influence or Coercion Clause is not overbroad under the second *Robertson* category, defendant is entitled to summary judgment on Councilor Ellis' facial challenge based on the Oregon Constitution.

### C.  Even if the Influence or Coercion Clause were somehow directed to the content of speech, and not its effect, it would be a permissible restriction under the incompatibility exception.

Alternatively, even if the Influence or Coercion Clause were interpreted to fall into the first *Robertson* category—which often renders a law facially invalid—it nevertheless falls under the incompatibility exception, and is therefore constitutional.

As the court in *Robertson* acknowledged, the reach of Article I, section 8 is subject to some exceptions.  293 Or. at 412.  For example, the "incompatibility" exception provides that

restrictions on the speech of public servants in their official duties are lawful if the restricted speech is "incompatible with the public servant's official function." *In re Fadeley*, 310 Or. 548, 563 (1990). In *Fadeley*, the court held that a restriction on a judicial candidate's personal solicitation of campaign funds did not violate Article I, section 8 because such solicitations were incompatible with the appearance of judicial impartiality. *Id.* at 563-64. Likewise, in *In re Conduct of Lasswell*, the court upheld an attorney discipline rule that prohibited prosecutors from making extrajudicial public communications that related to specific, enumerated matters regarding their pending criminal matters. 296 Or. 121, 126-27 (1983).

Here, the Influence or Coercion Clause functions much the same as the restrictions in *Fadeley* and *Lasswell*. As explained above, the City Charter, as adopted by the voters in 1948, sought to establish a system of city governance whereby the Manager oversees administrative decisions, such as appointments and removals, and the City Council handles policy matters. This separation of powers between a city manager and a city council runs throughout the Charter, and was an animating factor behind the nationwide adoption of similar charters.

Matters of City administration and operations, including hiring, was specifically reserved in the Charter for the Manager, and those functions are incompatible with the role of Councilor. As the Court in *Lasswell* described:

> The point of the disciplinary rule, therefore, is not restraint of free expression by lawyers because they are lawyers. * * * Rather, the rule addresses the incompatibility between a prosecutor's official function, including his responsibility to preserve the conditions for a fair trial, and speech that, though privileged against other than professional sanctions, vitiates the proper performance of that function under the circumstances of the specific case.

296 Or. at 125. The question, as the court laid out in *Lasswell*, is whether the speech impairs—or, in other words, is incompatible with—the elected official's official function. In *Lasswell*, the official function at issue was a prosecutor's "responsibility to preserve the conditions for a fair trial." *Id.* Here, the impaired responsibility is of a City Councilor not to violate the separation of powers principles clearly laid out in the Charter by usurping the Manager's authority over hiring

decisions.  Thus, if the Influence or Coercion Clause falls into the first *Robertson* category—
which it does not—it is nevertheless valid under the incompatibility exception.

      **D.**      **Because the Influence or Coercion Clause falls into the second *Robertson***
                        **category, no as-applied analysis is required.**

      Finally, under *Robertson*, if the challenged "law does not refer to expression at all, then
the appropriate inquiry is whether the law could be constitutionally applied to the defendant's
specific act or acts of expression."  *City of Eugene v. Miller*, 318 Or. 480, 490 (1994).  In other
words, the "'as applied inquiry' arises out of the third *Robertson* category," and "[w]hen a law is
challenged 'as applied' under the third *Robertson* category, the question is whether the law was
applied so that it did, in fact, reach privileged communication."  *Id.*

      Here, the City does not dispute that the Influence or Coercion Clause refers to the effects
of expression and, as described above, is properly analyzed under the second *Robertson*
category.  That category requires an overbreadth analysis, not an as-applied analysis.  Therefore,
Councilor Ellis' state constitutional as-applied challenge should be dismissed.

    **II.**      <u>Motion 2</u>**: Defendant is entitled to summary judgment on Councilor Ellis'**
                **Second Claim for Relief because neither the text of the Influence or Coercion**
                **Clause nor its application here violates the First Amendment.**

      Councilor Ellis' facial and as-applied challenge based on the First Amendment to the
U.S. Constitution fails for much the same reasons discussed above.

      "An ordinance may be facially unconstitutional in one of two ways: either it is
unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of
protected conduct that it is unconstitutionally overbroad."  *Foti v. City of Menlo Park*, 146 F.3d
629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998) (internal quotation
marks and alterations omitted).  In comparison, "[a]n as-applied challenge contends that the law
is unconstitutional as applied to the litigant's particular speech activity, even though the law may
be capable of valid application to others."  *Id.*  Whereas a successful facial challenge invalidates
the law itself, a successful as-applied challenge only invalidates the law's particular application.

*Id.*  The underlying constitutional standard is the same for both a facial and as-applied challenge. *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010).

Because the Influence or Coercion Clause is neither unconstitutional in every conceivable action nor prohibits such a broad range of conduct as to be unconstitutionally overbroad, it is not facially invalid.  Likewise, its enforcement does not violate Councilor Ellis' First Amendment rights; accordingly, her as-applied challenge fails too.

### A. The Influence or Coercion Clause survives a facial challenge.

The First Amendment provides that "Congress shall make no law * * * abridging the freedom of speech."  It applies to state and local governments. *Nordyke v. Santa Clara Cty.*, 110 F.3d 707, 710 (9th Cir. 1997).

Federal courts employ a test similar to the *Robertson* test for determining the validity of speech regulations, first determining whether a regulation is content-based or content-neutral. *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1197-98 (9th Cir. 2016).  A statute that regulates speech or conduct "based on hostility—or favoritism—toward the underlying message expressed" is content-based.  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992).  Courts apply strict scrutiny to content-based restrictions.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 166 (2015) ("[S]trict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based[.]").  In contrast, content-neutral restrictions are subject to intermediate scrutiny.  *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) ("*Turner I*") ("[T]he intermediate level of scrutiny [is] applicable to content-neutral restrictions that impose an incidental burden on speech.").

The characterization of restrictions as content-based or content-neutral mirrors the *Robertson* categories, with content-neutral restrictions falling into the second *Robertson* category, which focuses on forbidden results.  *Outdoor Media Dimensions, Inc. v. Dep't of Transp.*, 340 Or. 275, 288 (2006) ("Because content-neutral time, place, and manner restrictions focus on the accomplishment of 'forbidden results,' but do so by restricting expression, such restrictions appear to come within the second of the three *Robertson* categories.").  The analysis for content neutral restrictions under the federal Constitution is similar to the analysis for

*Robertson*'s second category restrictions; both, essentially, ask whether the restriction is adequately justified and narrowly tailored—in other words, not overbroad. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006) (describing that the "government may impose reasonable restrictions on the time, place, or manner of engaging in protected speech provided that they are adequately justified without reference to the content of the regulated speech" where the restriction is "narrowly tailored to serve a significant governmental interest and . . . leave[s] open ample alternative channels for communication of the information") (internal citations and quotation marks omitted)).[5]

### 1. The Influence or Coercion Clause is a content-neutral restriction that survives intermediate scrutiny.

Because the Influence or Coercion Clause is content-neutral on its face and imposes only an incidental burden on speech, the proper inquiry is whether it withstands intermediate scrutiny. *Turner I*, 512 U.S. at 662.

#### a.    The Influence or Coercion Clause is content-neutral.

Again, the Influence or Coercion Clause prohibits a Councilor from "directly or indirectly, by suggestion or otherwise, attempt[ing] to influence or coerce the Manager in the making of any appointment or removal of any officer or employee."  As described above with respect to the Oregon constitutional analysis, the focus of the Influence or Coercion Clause is exclusively the prohibited effect: influencing or coercing the Manager.  Federal courts, like Oregon courts, recognize that regulations can implicate protected expression in a content-neutral manner.  *See, e.g.*, *Norton v. Ashcroft*, 298 F.3d 547, 553 (6th Cir. 2002).  "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  *Ward v. Rock Against Racism*,

---

[5] It is worth noting here that the Oregon Constitution is generally considered to be more protective of free speech than the federal Constitution.  *See, e.g.*, *State v. Henry*, 302 Or. 510, 515 (1987) (recognizing that Article I, section 8 is broader than the First Amendment and striking an obscenity law under the state constitution that "passes muster" under the First Amendment).

**Page 20 –    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

491 U.S. 781, 791 (1989).  The first step in the "content-neutrality analysis" is "whether the law is content neutral on its face," and the second step "turn[s] to the law's justification and purpose."  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165-66 (2015).

A good example is the decision in *Warden v. Pataki*, where the Southern District of New York considered a similar provision: a New York law which "prohibit[ed] community board members from making recommendations with respect to the hiring of supervisory personnel." 35 F. Supp. 2d 354, 364 (S.D.N.Y.), *aff'd sub nom Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999). The relevant provision read as follows:

> "A member of a community school district board may be removed upon a finding that the member willfully, intentionally or knowingly interfered with or was involved in the hiring, appointment or assignment of employees other than as specifically authorized in this article."

*Id.* (quoting NY. Educ. Law § 2590).  The court noted that this law did "not specifically prohibit making recommendations with respect to the hiring of personnel . . . [but rather] prohibit[ed] 'interfering with' or being 'involved in' the hiring, appointment or assignment of certain personnel."  *Id.*  Although the court described that "[t]he First Amendment does not confer rights on community board members to participate in the hiring of school personnel," the statute "could be construed in such a way as to burden the speech of community board members," and so a "First Amendment analysis was warranted."  *Id.*  The court then found that the statute was content-neutral, because it was neutral regarding the speaker's point of view; it "prohibit[ed] interference with the hiring process of certain school personnel irrespective of whether a community board member is seeking to support a candidate or oppose him, and without reference to the reasons for the community board member's position."  *Id.* (citation omitted).

The Influence or Coercion Clause is virtually identical: simply put, it prohibits City Councilors from attempting to interfere with hiring matters—which are properly left to the judgment of the Manager.  Like the statute at issue in *Warden*, it does not reference the speaker's point of view; rather, it prohibits interference in the hiring process irrespective of the particular position a councilor might take or the reasons for their position.  *See* 35 F. Supp. 2d at 364 ("[The statute] prohibits interference with the hiring process of certain school personnel

irrespective of whether a community board member is seeking to support a candidate or oppose him, and without reference to the reasons for the community board member's position.").

Therefore, because the Influence or Coercion Clause does not reference the speaker's point of view, it is content-neutral and is properly subject to intermediate scrutiny.

### b.    The Influence or Coercion Clause survives intermediate scrutiny.

A content-neutral restriction is valid if it (1) "advances important governmental interests unrelated to the suppression of free speech" and (2) "does not burden substantially more speech than necessary to further those interests." *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 189 (1997) ("*Turner II*") (citation omitted). Additionally, the regulation must leave open alternative channels of communication. *Perry Edu. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983) (content-neutral regulations may be enforced if they are "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication").

To show that a regulation is narrowly tailored under intermediate scrutiny, the government need not demonstrate that it is "the least speech-restrictive means of advancing the Government's interests." *Turner I*, 512 U.S. at 662. Rather, the restriction must not "burden substantially more speech than is necessary." *Ward*, 491 U.S. at 798-99. "Put another way, the regulation must focus on the source of the evils the city seeks to eliminate and eliminate them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 947 (9th Cir. 2011) (quoting *Ward*, 491 U.S. at 799 n.7) (internal quotation marks and alterations omitted).

The Influence or Coercion Clause does not burden more speech than is necessary to achieve the clear separation of powers envisioned by the City Charter between the Manager and the City Council and to avoid corruption or the appearance of corruption. *See MKay Inc. v. City of Huntington Park*, 2018 WL 3830011, at *6 (C.D. Cal. June 15, 2018) ("[T]he prevention of corruption is certainly a compelling government interest[.]" (citing *Buckley v. Valleo*, 424 U.S. 1, 27 (1976))); *see also Mancuso v. Taft*, 341 F. Supp. 574, 581-82 (D.R.I. 1972), *aff'd*, 476 F.2d

**Page 22 –    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

187 (1st Cir. 1973) ("The public interest in having an honest civil service and in removing public servants from pressure to engage in corrupt practices is likewise strong.").

The restriction—again, like the restriction at issue in *Warden*—does not apply to the public at large, but only to the Mayor and members of the City Council. Also like the statute in *Warden*, it "regulate[s] speech only incidentally if at all," 35 F.Supp.2d at 365, instead focusing on the *effect* of influencing or coercing the Manager—or attempting to do so. Although it is not required to use the least restrictive means under an intermediate scrutiny analysis, it is clear that the Influence or Coercion Clause does, in fact, represent the least restrictive means of maintaining the separation of powers between the City Manager and the Council and in preventing corruption. This meets the standard for surviving intermediate scrutiny.

The Influence or Coercion Clause also leaves ample avenues for communication for City Councilors who wish to communicate with the Manger regarding staffing or hiring matters. The prohibitions of the Influence or Coercion Clause are, as described above, narrow: it prohibits attempting to *influence* or *coerce* the Manager in matters of hiring. It does not, for example, prohibit a Councilor from asking the City Manager to provide the Council with weekly updates into hiring efforts, or asking the City Manager to develop a plan to provide a Policy Advisory Board with sufficient staff to meet at regular intervals. Likewise, the Clause does not prevent a Councilor from inquiring with the City Manager as to the status of efforts to support the policy directives of a Policy Advisory Board or asking why a particular Policy Advisory Board does not have sufficient staff support. Those are a few clear and simple examples. Simply put, Councilors have many ways to communicate regarding staffing or hiring matters with the Manager, so long as they do not attempt to influence or coerce the Manager in those matters. *Colacurcio v. City of Kent*, 163 F.3d 545, 555 (9th Cir. 1998) ("The Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting.")

**B.  The Influence or Coercion Clause survives an as-applied challenge because Councilor Ellis' conduct was not constitutionally protected.**

Councilor Ellis' First Amendment as-applied challenge fails because her conduct was not constitutionally protected.  On an as-applied challenge, the litigant must demonstrate that "the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others," which invalidates that particular application of the law.  *Foti*, 146 F.3d at 635.  Whether speech is protected is a question of law.  *Connick*, 461 U.S. at 148 n.7 ("The inquiry into the protected status of speech is one of law, not fact.").  For the reasons described above, Councilor Ellis' conduct in wrongfully attempting to influence or coerce the Manager was not protected conduct and, therefore, engagement in that conduct cannot serve as the basis for a First Amendment claim.

The City does not dispute that elected lawmakers have First Amendment protections.  *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022).  The Supreme Court, however, has held that "a legislator has no right to use official powers for expressive purposes."  *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011).  In *Carrigan*, the conduct at issue was a legislator's vote, and the court noted that it had "rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message."  *Id.*; *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) (in upholding ban on a person appearing on the ballot as the candidate of more than one party, the Court was "unpersuaded" by political party's argument that it had the "right to use the ballot itself to send a particularized message").

The authority to hold Council meetings, governed by Section 15 of the Charter, allows the Council to "adopt rules for the government of its members and proceedings," and the Council adheres to the Sturgis Standard Code of Parliamentary Procedure to govern its meetings.  (*See* Corvallis, Or. Municipal Code § 1.19.020.010 (1983).).  Motions at Council meetings are the kind of "governmental mechanics" the Court referred to in *Carrigan*—and do not constitute expressive conduct protected by the First Amendment.  564 U.S. at 127.  Likewise, Councilor Ellis was appointed to the CAAB in her capacity as a City Council member, served on the CAAB in that capacity, and participated in the CAAB Meeting pursuant to the official rules

adopted for that board.  (*See* City of Corvallis, Or. Resolution 2021-08 § 1(g) (2021),
https://archives.corvallisoregon.gov/public/ElectronicFile.aspx?dbid=0&docid=2073925,
("Policy Advisory Bodies will have seven voting members, one of whom will be a City
Councilor."); *see also id.* at § 1(p) ("Policy Advisory Bodies will use the Sturgis Standard Code
of Parliamentary Procedure edition to conduct meeting proceedings.").)  Because making a
motion at the Council is within the official powers of Council members and is a governmental
mechanism, it is not expressive conduct and therefore is not entitled to First Amendment
protection.

In summary, because Councilor Ellis' conduct is not protected by the First Amendment,
she cannot sustain an as-applied challenge.  Defendant is entitled to summary judgment on her
First Amendment as-applied challenge.

## III.    <u>Motion 3</u>:  Defendant is entitled to summary judgment on Councilor Ellis' First Amendment retaliation claim because she cannot meet her burden of demonstrating that she engaged in constitutionally protected conduct.

Councilor Ellis' retaliation claim fails because she cannot meet her burden of proving
that she engaged in constitutionally protected conduct.  The First Amendment, as a general
matter, "prohibits government officials from subjecting individuals to retaliatory actions after the
fact for having engaged in protected speech."  *Wilson*, 595 U.S. at 474  (internal quotation marks
omitted).  "If an official takes adverse action against someone based on that forbidden motive,
and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the
injured person may generally seek relief by bringing a First Amendment claim."  *Nieves v.
Bartlett*, 587 US ---, 139 S Ct 1715, 1722 (2019) (internal quotation marks omitted).  Elected
officials are permitted to raise First Amendment retaliation claims.  *See Blair v. Bethel Sch. Dist.*,
608 F.3d 540, 542-43 (9th Cir. 2010).

To recover under 42 U.S.C. § 1983 on a First Amendment retaliation claim, a plaintiff
must prove the following three elements:

(1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was subjected
to adverse action by the defendant that would chill a person of ordinary firmness from

continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair*, 608 F.3d at 543.[6]  The First Amendment "has no application when what is restricted is not protected speech."  *Carrigan*, 564 U.S. at 121 .  The party claiming a violation bears the burden of proving that the activity in question is protected.  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).  "The inquiry into the protected status of speech is one of law, not fact."  *Connick,* 461 U.S. at 148 n.7 (1983).

Where a plaintiff has made a *prima facie* case for retaliation, "the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of."  *Hartman v. Moore*, 547 U.S. 250, 260 (2006).  Under this "but for" test, "if the outcome (the adverse action) would not have occurred without the government official's retaliatory animus, then that animus was a but-for cause of the adverse action."  *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022).  "Conversely, if the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech, then the officials' animus was not a but-for cause of the adverse action, and there was no violation of the plaintiff's constitutional rights."  *Id.*

Here, Councilor Ellis' retaliation claim fails at the first step of the analysis: her conduct was not constitutionally protected.  *See Blair*, 608 F.3d at 543 (laying out the test for First Amendment retaliation claims, and describing that a plaintiff must first prove that they "engaged in constitutionally protected activity").  Fulfillment of this requirement is a question of law. *Connick*, 461 U.S. at 148 n.7 ("The inquiry into the protected status of speech is one of law, not fact.").  For the reasons described above, Councilor Ellis' conduct in wrongfully attempting to

---

[6] There is a separate test for private citizens versus public employees who allege First Amendment retaliation.  *Garcetti v. Ceballos*, 547 U.S. 410, 418-22 (2006).  The test for public employees is not applicable to elected officials.  *See Boquist v. Courtney*, 32 F.4th 764, 778-79 (9th Cir. 2022) ("We next address whether the framework that applies to evaluating speech restrictions that the government imposes on its employees also applies to restrictions on the speech of elected officials.  We conclude it does not.").

influence or coerce the Manager was not protected conduct and, therefore, engagement in that conduct cannot serve as the basis for a retaliation claim.

Although, as described above, elected lawmakers are entitled to First Amendment protections and are protected from retaliation based on protected conduct, *Wilson*, 595 U.S. at 478, Councilor Ellis cannot meet her burden of establishing that her conduct—attempting to influence or coerce the Manager—is protected under the First Amendment. Councilor Ellis devotes no argument to whether her comments are constitutionally protected; rather, she merely alleges summarily that "[t]he first prong [of a First Amendment retaliation claim] is readily met when an elected official expresses their views and opinions," for which she cites *Boquist*. (Pl.'s Mot. for Prelim. Inj. (Dkt. 1-1) at 16.) She admits later that, in this context, "the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed," (*Id.* at 18), but engages in no further analysis regarding the protected status of her statements.

As explained above, lawmakers have "no right to use official powers for expressive purposes," and, in fact, the Supreme Court has specifically said that it "reject[s] the notion that the First Amendment confers a right to use governmental mechanics to convey a message." *Carrigan*, 564 US at 127; *see also Timmons*, 520 U.S. 351. Councilor Ellis' conduct which gave rise to the Due Process Hearing was precisely that: use of her official powers and governmental mechanics. A formal motion is within the official powers of a City Councilor and constitutes a governmental mechanism. Because Councilor Ellis' conduct was not protected, she cannot meet the elements required to sustain a claim for First Amendment retaliation, and defendant is entitled to summary judgment on that claim.

## CONCLUSION

For the foregoing reasons, the City of Corvallis is entitled to summary judgment on all

three of Councilor Ellis' claims for relief.  The City requests that the Court grant this motion and dismiss Councilor Ellis' claims with prejudice.

DATED:  March 7, 2024.                    MARKOWITZ HERBOLD PC


*s/ Kerry J. Shepherd*
_____
Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Jordan E. Pahl, OSB #194335
JordanPahl@MarkowitzHerbold.com
*Attorneys for Defendant City of Corvallis*

2103268