**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Jordan E. Pahl, OSB #194335**
JordanPahl@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Fax: (503) 323-9105

Special Council to City of Corvallis

**RE: COUNCILOR CHARLYN ELLIS**

**CITY OF CORVALLIS' DUE
PROCESS HEARING
MEMORANDUM**

**Due Process Hearing: February 5, 2024**

CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION .................................................................................................1

VIOLATION OF CITY CHARTER– SECTION 23(f)......................................1

CITY CHARTER.................................................................................................2

    I.       Separation of Powers and Duties of Officers; Remedy for
Violation – Chapter 5.................................................................2

    II.      Rules for Construing the Charter. ...............................................5

EXHIBITS ...........................................................................................................6

STIPULATIONS ..................................................................................................8

STATEMENT OF FACTS ...................................................................................9

    I.       Councilor Ellis' Actions During the CAAB Meeting...................9

          A.     Councilor Ellis Introduced an "Emergency" Hiring
Demand and Initiated the Strategy and Motion ..............9

          B.     Councilor Ellis Asked CAAB to Make a Strong Statement
and a Motion for a Permanent Position to Support CAAB............11

          C.     Councilor Ellis Agreed that the Motion Should be for a
Sustainability Position to Support CAAB .....................13

          D.     Councilor Ellis Asked the CAAB Members to Pack the
City Council Meeting to Make a Powerful Statement ..................15

    II.      Councilor Ellis' Actions During the September 18, 2023, City
Council Meeting......................................................................16

ARGUMENT ....................................................................................................19

    I.       Section 23(f) Insulates the City Manager from the Council on
Matters Relating to Staffing and Hiring...................................19

    II.      Councilor Ellis Violated the Influence or Coercion Clause of
Section 23(f)..........................................................................222

          A.     Councilor Ellis Attempted "Influence or Coerce the
Manager in the Making of Any Appointment or Removal
of Any Officer or Employee" ........................................23

    III.     The Legislative Privilege Exception Does Not Apply...............25

          A.     The Exception Does Not Apply to the CAAB Meeting. ...............25

                1.     The CAAB Meeting Was Not an "Open Session" of
the Council. .......................................................25

2.    Councilor Ellis' Statements Were Not "in Discussion With" or "Suggestions to" the City Manager ..........................................................................26

B.    The Exception Does Not Apply to the Council Meeting Because Councilor Ellis' Actions Were Not "Discussions With" or "Suggestions to" the City Manager ................................26

IV.    Forfeiture is Mandatory and Self-Executing.............................................28

CONCLUSION.................................................................................................................28

## INTRODUCTION

The City Attorney's Office retained Markowitz Herbold PC to assist in presenting the record for charges that City Councilor Charlyn Ellis violated Section 23(f) of the Corvallis City Charter, and has forfeited the Ward 5 seat on City Council. The purpose of this Hearing Memorandum is to describe the issues presented under the City Charter, summarize the factual record, and outline the pertinent legal issues for the City Council's consideration. With this record in mind, Special Counsel is firmly convinced that Councilor Ellis violated the City Charter by attempting to influence or coerce the City Manager to hire a permanent climate specialist or sustainability employee to service the needs of her advisory committee. By attempting to do so, Councilor Ellis forfeited the remainder of her term on the City Council. It is the Council's duty to find a violation based on the given facts.

## VIOLATION OF CITY CHARTER – SECTION 23(f)

The City of Corvallis has charged Councilor Ellis with violating the Charter, specifically Section 23(f), in two particulars:

1.      During the September 13, 2023 Corvallis Climate Action Advisory Board ("CAAB") meeting (the "CAAB Meeting"), Councilor Ellis introduced and discussed her concern that the CAAB had insufficient staff support to conduct its meetings and work and advocated that the CAAB adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties to support the work of the CAAB within a specific amount of time; and,

2.      In the regular City of Corvallis City Council meeting held on September 18, 2023 (the "Council Meeting"), Councilor Ellis moved "to direct the City Manager to post the full-time job position of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled," which motion was later amended by substitution.

Page 1 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

The actions of Councilor Ellis violated Section 23(f) in that they were both direct and indirect attempts, by suggestion or otherwise, to influence or coerce the City Manager in the appointment of an employee or officer.  These charges are reflected in the Resolution noted for hearing on February 5, 2024.

## CITY CHARTER

The voters in Corvallis adopted the current version of the City Charter in 1948. It is based on model charters developed by the Bureau of Governmental Research and Service and League of Oregon Cities.  The pertinent provisions for this hearing are in Chapter 5 related to separation of powers and duties.

The Charter was *not* enthusiastically endorsed by every City Councilor when proposed in the post-World War II era.  There was a split 5-4 vote among the Council about sending this new Charter to the people for consideration because it evinced a fundamental shift in administrative and operational authority and would move the City to a Council-Manager form of government organization.

The legislative history reflects debate among the Councilors in 1948—before sending it out to the people—regarding an amendment that would have permitted the City Council to "override" the City Manager on "any action."  But that amendment was rejected, and the voters chose to adopt a new form of government organization that delegates broadly to a manager.

I.    **Separation of Powers and Duties of Officers; Remedy for Violation – Chapter 5.**

As adopted by the people, Chapter 5 of the Charter sets forth the "Powers and Duties of Officers," including the Mayor, City Manager, and City Council.  It also sets forth a remedy for violating just *one* Section of the Charter, that being Section 23(f).  It warrants emphasis that there is no remedy or sanction for any other Charter violation, highlighting the importance of Section 23(f) to the drafters and the voting public.

Page 2 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

As relevant to these proceedings, Section 23(f) applies to City Councilors and reads as follows.  For convenience, we have separated the independent clauses in the correct grammatical form:

**(f)** **Interference in administration and elections.**  Neither the Mayor nor any member of the Council shall

[i]  *in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee* or in the purchase of supplies; or

. . . .[1]

[iii] discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment.

*A violation of the foregoing provisions of this section shall forfeit the office of the offender*.

Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

Section 23(f) (emphasis added).

There are two independent clauses in Section 23(f).  First is the influence or coercion clause, italicized above, prohibiting a Councilor from attempting to "influence or coerce," "directly or indirectly," the City Manager in "the making of any appointment or removal of any officer or employee."  Notably, the influence or coercion need not be successful; it need not be direct communication to the City Manager; and it need not relate to a specific person.

Second is the specific appointment clause, which prohibits a Councilor from "discuss[ing], directly or indirectly, with the Manager the matter of specific appointments to any City office or employment."  Again, there is no limitation for this prohibited

---

[1] The omitted text is inapplicable:  "or attempt to exact any promise relative to any appointment from any candidate for Manager. . . ."

Page 3 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

discussion to be with the City Manager directly.  There is no "coerce" or "influence" qualification at issue.  This clause does, however, require that the discussion pertain to a "specific appointment" to any "City office or employment."

These two clauses are distinct and independent of the other, separated by the word "or."  Violation of either clause in Section 23(f) comes with a mandatory remedy: forfeiture.  In the context of statutory interpretation, "[t]he term 'shall' is a command expressing what is mandatory." *Bacote v. Johnson*, 333 Or 28, 33 (2001).  The word "shall" in a city charter also denotes a mandatory provision.  *See State by and through. State Hwy. Comm. v. Sauers*, 199 Or 417, 419 (1953).  When mandatory language is used, the city has no discretion but to take the prescribed action.  *See State ex rel. Stewart v. City of Salem*, 241 Or App 528, 535 (2011).

For context, it is relevant that the Charter's provisions in Section 23(f) are preceded by provisions that expressly delegate to the City Manager all administrative authority, duties, and control.  Section 23 begins by designating the City Manager as the "administrative head of the government of the City." (Section 23(a).)  The City Manager is chosen by the Council without regard to political considerations, and solely for executive and administrative qualifications.  *Id.*

The Charter also specifies that the City Manager's role includes the sole and exclusive authority to "appoint all appointive offices and employees," *id*.; to "have general supervision and control over them and their work, with power to transfer an employee from one department to another," "to the end of obtaining the utmost efficiency in each of them."  Section 23(c)(3).  And, it is the City Manager's job to prepare and submit budgets to the Budget Commission (Section 23(c)(4)), and to supervise all public utilities.  (Section 23(c)(6).)

In recent times like these, with severe weather events and global health crises like COVID-19, some people may wonder who within the City has the power to declare an emergency, and the answer is that it is the City Manager's job to do so.  (Corvallis Municipal Code § 7.09.020 (Authorization to declare an emergency).)  It is also the City

Page 4 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Manager's job to see that all ordinances are enforced and the obligations of the City are observed.  (Charter, Section 23(c)(2)).  And, the City Manager is "entitled to sit with the Council" and "take part in the discussion of all matters before it."  (Charter, Section 23(d).)

In contrast, the Charter gives no such administrative and operational authority to the City Council, subject to very narrow exceptions.  Indeed, the City Council appoints the City Attorney, Municipal Judge, and City Manager (Section 11); may create new Council appointive positions (Section 12); and sets the compensation for all City officers and employees (Section 13).  Otherwise, all other administrative and operational authority is delegated to the City Manager.  That said, the Council may, if it so desires, remove the City Manager (Section 23(b)), but may not interfere with the City Manager's administrative duties.  In short, the administrative and operational strategies for achieving the City's policy objectives have been delegated to the experience, professionalism, and discretion of the City Manager as the means of achieving the "the utmost efficiency."

## II.    Rules for Construing the Charter.

The Oregon Supreme Court has decided the interpretive rules for construing and applying legislation, including the provisions of the City Charter.  And it is the City Council's duty to interpret and apply the Charter as instructed by those rules.

The Charter is local legislation.  The Council's task is to ascertain the meaning of Section 23(f) as intended by the drafters and approved by the voters.  *State v. Gaines*, 346 Or 160, 171 (2009); *Portland Gen. Elec. Co. v. Bureau of Labor and Indus*., 317 Or 606, 610 (1993).  Charters are "an individual matter for each city, a form of local legislation to be interpreted by the same means as any other legislation, including attention to the intent and purpose of those who adopted it."  *DeFazio v. Washington Pub. Power Supply Sys.*, 296 Or 550, 580 (1984); *see also City of Corvallis v. State*, 304 Or App 171, 185 (2020) ("Charter amendments are the product of local legislation and are 'to be interpreted by

Page 5 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

the same means as other legislation.'  That is, we consider the text, context, and any useful legislative history offered by the parties." (quoting *DeFazio*, 296 Or at 580)).

The City Council, as the decision-maker applying the Charter, must first examine the Charter's text and context.  *Gaines*, 346 Or at 171.  The Council may also consider relevant legislative history offered by the parties.  *Id*. at 172; *see also State v. Blair*, 348 Or 72, 80 (2010) (following *Gaines*, "we may always consider pertinent legislative history," even in the apparent absence of ambiguity).[2]

The plain meaning of the Charter controls.  It is the City Council's role to review Section 23(f), declare what it was intended to mean in substance when adopted, and apply it to the facts of this matter.  Conversely, it is *not* the City Council's function to insert new terms or provisions into the Charter, or to ignore or omit terms of the Charter as they were adopted by the voters.  ORS 174.010.  And it is not the Council's function to consider current public sentiment or comment as expressed by, for example, those who either do or do not support Councilor Ellis.  In other words, the question is not how the voters or groups today would choose to construe and apply this provision were they to reconsider it; the question is what the provision, which is in effect today, plainly means by its terms as adopted in 1948.

## EXHIBITS

The City of Corvallis submits the following evidence into the record:

| Ex. No. | Document Description | Date |
|---|---|---|
| 1. | Transcript of the Climate Action Advisory Board meeting ("CAAB Transcript"). | Sept. 13, 2023 |

---

[2] Stated another way, the decision-maker proceeds "from what the legislature has written, to what the legislature has considered, and finally, as a last resort, to what the court determines makes sense."  *Young v. State*, 161 Or App 32, 37 (1999).  The decision-maker is "not to insert what has been omitted, or to omit what has been inserted."  ORS 174.010.

Page 6 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

| Ex. No. | Document Description | Date |
|---------|---------------------|------|
| 2. | The video recording of the relevant discussion and deliberations of the Corvallis Climate Action Advisory Board on September 13, 2023, located at the City's website:  https://vimeo.com/864621682, beginning at approximately 38 minutes into the recording. | Sept. 13, 2023 |
| 3. | Transcript of the City Council meeting ("Council Meeting Transcript"). | Sept. 18, 2023 |
| 4. | Link to the video recording of the motion and the subsequent deliberations of the City of Corvallis City Council on September 18, 2023, which can be found on the City's website at https://vimeo.com/866087718?share=copy and beginning at approximately two hours and fourteen minutes into the recording. | Sept. 18, 2023 |
| 5. | Letter from City of Corvallis to Councilor Charlyn Ellis with a copy of draft Resolution Regarding a Violation of Section 23(f) and Declaring a Vacancy in Ward 5 Council Position. | Dec. 6, 2023 |
| 6. | Declaration signed by Mayor Charles Maughan, Council President Tracey Yee, Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James Brewer. | Dec. 5, 2023 |
| 7. | Letter from City of Corvallis to Councilor Charlyn Ellis (with attachments noted in Exhibit 6). | Dec. 22, 2023 |
| 8. | Memorandum from City Manager, Mark Shepard, to City Council. | Jan. 16, 2024 |
| 9. | Letter from Attorney Jesse Buss, attorney for Councilor Charlyn Ellis. | Dec. 22, 2023 |
| 10. | Email from David Coulombe to Jesse Buss. | Jan. 2, 2024 |
| 11. | Email from Councilor Ellis regarding two motions to present at the September 18, 2023 City Council meeting. | Sept. 17, 2023 |
| 12. | Collection of emails from CAAB members to the Mayor and City Council for September 18, 2023 City Council meeting. | Sept. 15 – Sept. 18, 2023 |

Page 7 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

| Ex. No. | Document Description | Date |
|---------|---------------------|------|
| 13. | City of Corvallis, Council Action Minutes, from September 18, 2023 City Council meeting. | Sept. 18, 2023 |
| 17. | Collection of memoranda spanning 1988 to 2020 from the City Attorney's Office regarding orientation training for City Council. | 1988 to 2020 |

Additionally, the attorney for Councilor Ellis has submitted the following supplemental exhibits, which are included with the City's submission as a professional courtesy:

| Ex. No. | Document Description | Date |
|---------|---------------------|------|
| 14. | Transcript of the City Council meeting on December 18, 2023, beginning at one hour and fifty-five minutes and forty-five seconds (1:55:45) into the recording.  The City agreed to have this selection transcribed at the request of Councilor Ellis' attorney. | Dec. 18, 2023 |
| 15. | The video recording of the discussion at the City Council on December 18, 2023, which can be found on the City's website at https://vimeo.com/896334597 | Dec. 18, 2023 |
| 16. | Letter to the City Council from former elected representatives. | Jan. 8, 2024 |

## STIPULATIONS

Councilor Ellis has stipulated, through her attorney, that the agreed process and factual record satisfy Councilor Ellis' procedural due process rights.  The factual record is set forth in the referenced exhibits.  The process of the hearing will be that the lawyers will present their arguments to the City Council based on the factual record, there will be no live testimony, and the City Council will make its decision based on this record.  However, Councilor Ellis has reserved objections as to procedural due process based on issues that are out of the parties' control or that we have not foreseen.

Page 8 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

## STATEMENT OF FACTS

Councilor Ellis has served Ward 5 on the City Council since 2016, and currently serves as the Chair of CAAB.  On September 13, 2023, Councilor Ellis chaired the CAAB Meeting by initiating a targeted discussion of an "emergency" arising from perceived staffing shortages, followed by motions that she invited for identified positions and purposes, all of which were designed to influence and coerce the City Manager in areas that are solely within the City Manager's administrative purview.  The focus of Councilor Ellis' leadership was to devise a strategy to force the City Manager into hiring a permanent sustainability employee to service CAAB.

**I.      Councilor Ellis' Actions During the CAAB Meeting.**

**A.      Councilor Ellis Introduced an "Emergency" Hiring Demand and Initiated the Strategy and Motion.**

The first action taken by Councilor Ellis at the CAAB Meeting was to pitch an emergency hiring demand for a permanent City job to support the committee, and to ask the committee to make a motion.  Councilor Ellis had been "thinking about" this problem for "a couple of weeks," but at no time did she reach out to the City Manager to discuss administrative support needs.  Instead, she used this CAAB Meeting as the opening scene in her effort to influence the City Manager to hire a climate specialist on a permanent basis.

```
1              CHAIR ELLIS:  Okay.  So we are kind of in
2   a -- a climate board emergency.  I -- I've been
3   thinking about this for a couple of weeks, and I
4   think that is the way to put it.  Jerry is going out
5   on family leave for three months, which is
6   absolutely his right to do, and it's a positive
7   thing, and that is great.
8              In that time, we are left with no staff.
9   The point person for the climate board is going to
10  be the city manager, and the city manager is not --
11  it is not his job to do agendas, run meetings,
12  certainly not to run board work.  Yeah.
13             CAAB MEMBER:  Isn't it his job to appoint
14  somebody to do it?
15             CHAIR ELLIS:  It may be, but he is not --
16             CAAB MEMBER:  -- temporary --
17             CHAIR ELLIS:  -- he is so -- I'm getting
18  there.  We need somebody to do that, and we need
19  somebody to do it on a permanent basis.  Maybe that
20  somebody is Jerry when he comes back, but we don't
21  know.
22             So here we are.  We are -- we have no --
23  and until we have that person, as you all just had
24  your orientation about what we can or we can't do,
25  we do not have a functional climate board.  It is an
```

Page 10 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
1    emergency.

2              So I -- I cannot make the motion because I

3    am the chair.  But I believe that we, with our first

4    action, could be -- for tonight is to recommend to

5    the city council that we need to hire Catherine's

6    position as our climate specialist who supported

7    community actions.
```

(Ex. 1, CAAB Transcript at 2-3.)

    **B.**    **Councilor Ellis asked CAAB to Make a Strong Statement and a Motion for a Permanent Position to Support CAAB.**

Councilor Ellis followed her introduction of an emergency, and the need for a climate specialist, by making it clear that she wanted a permanent position hired by the City Manager to focus on sustainability, and again requested a motion from a CAAB member.

```
23             So having been thinking about this for a

24    while, because I know that Jerry was going for three

25    months, and I feel like our strongest statement is
```

```
 1    we need to hire somebody on a permanent basis.
 2              My concern with getting a contractor is
 3    that they will -- they will get one or two meetings,
 4    and they'll just start to figure things out and then
 5    we'll get another person.  And we've gone through so
 6    many people in this position and every time there's
 7    this huge learning curve.
 8              I've been pushing for a permanent
 9    position, like the position is there, it exists.  To
10    get it filled is probably our most effective thing.
11    And I'm not looking towards a share and -- and so if
12    somebody sees them waving, please let me know.
```

(Ex. 1, CAAB Transcript at 8-9.)

```
 9              CHAIR ELLIS:  Economic development is now
10    reporting to community development, which is
11    reporting to -- the economic development is no
12    longer doing ICAN or climate.
13              So the idea is to have another director
14    level position on sustainability broadly defined,
15    and then having people below him to him or her to
16    work on these things.
17              But unfortunately that position was
18    posted, and I haven't heard, so --
```

(Ex. 1, CAAB Transcript at 10.)

    ****

Page 12 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
14              CHAIR ELLIS:  We would definitely want, so
15  if somebody could board a motion, first for the
16  permanent and then we -- then we could move to the
17  second one for (indiscernible).  That would be
18  (indiscernible).
```

(Ex. 1, CAAB Transcript at 12.)

**C.    Councilor Ellis Agreed that the Motion Should be for a Sustainability Position to Support CAAB.**

The motion that Councilor Ellis sought was made, seconded, and amended by committee members, with a focus on a new, permanent sustainability position to support CAAB as she requested.

```
16              CAAB MEMBER:  I'm just going to try.  I
17  move that since the climate emergency is not
18  waiting, that the climate action board requests
19  council --
20              CHAIR ELLIS:  Mm-hmm.
21              CAAB MEMBER:  -- direct the city manager
22  to fill the vacancies that are open that leave us
23  without staff to allow this board to meet.
24              (Indiscernible conversation.)
25              CAAB MEMBER:  I'll second that.
```

Page 13 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
 1          CHAIR ELLIS:  Okay.
 2          CAAB MEMBER:  And offer a slight
 3  amendment.
 4          CHAIR ELLIS:  Yeah.
 5          CAAB MEMBER:  If you're okay with this, to
 6  remove the words "that are open."   I'm looking
 7  actually on the city's website right now at the job
 8  openings.   There are 27 job openings posted
 9  currently, if anybody is interested.
10          Nothing about sustainability, just looking
11  at the titles.   Of course I don't have time to read
12  all these at this time, but nothing that would hint
13  at current recruitment or --
14          CHAIR ELLIS:  At the director level.
```

(Ex. 1, CAAB Transcript at 15-16.)  Later, Councilor Ellis restated the substance of the motion:

```
 2          CHAIR ELLIS:  So what I have, and we're
 3  going to want to put a date on it, to -- we are
 4  requesting, the climate action board will request
 5  the council directs the city manager to fill
 6  Catherine's economic development and climate program
 7  specialist, and then we need a date.
 8          And maybe we should say posted within two
 9  weeks.  And that, that gets it in motion.  And then
10  people can speak to that motion and we'll see what
11  goes.
```

Page 14 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

(Ex. 1, CAAB Transcript at 21.)

**D.    Councilor Ellis Asked the CAAB Members to Pack the City Council Meeting to Make a Powerful Statement.**

Councilor Ellis' effort to influence the City Manager included a request that the CAAB members pack the City Council meeting. Her intent was to make a powerful statement to the City Council, and to the City Manager indirectly, to support the motions that Councilor Ellis intended to present in just a few days. She also intended to talk about this subject further with the CAAB members, off the record, to further prioritize efforts for this hiring strategy. The colloquy during the CAAB Meeting went like this, and we do not know what was said by Councilor Ellis off the record:

```
16          CHAIR ELLIS:  I think at this point if you
17    all like showed up at the meeting, that would be
18    pretty powerful.  Can one person making a statement
19    and everybody else standing and anybody else who is
20    also (electronic glitch) audience standing as well,
21    I think that would be powerful.  Maybe Larry should
22    mention it as well (electronic glitch).
```

Page 15 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
1    me write it or write it for me.
2          CHAIR ELLIS:  And so at this point we have
3    moved on to committee action, and we can discuss it
4    after the (electronic glitch) just so we keep our
5    lines clear because, yeah.
6          And as the council member who is bringing
7    these forward, I will of course be as firm as I --
8    I'm trying to think of what the word actually is, so
9    (indiscernible) if you come up with one, let me
10   know.
```

(Ex. 1, CAAB Transcript at 46-47.)

The full transcript of the CAAB Meeting at issue is available for the City Council to review. It is noted as Exhibit 1.

## II. Councilor Ellis' Actions During the September 18, 2023, City Council Meeting.

The Council Meeting was the following Monday, September 18, 2023. Councilor Ellis' plans to pack the City Council proceeded as planned, as did Councilor Ellis' intent to present motions to put pressure on the City Manager to hire for CAAB. But Councilor Ellis did not present the motion as the CAAB had approved. At its clearest, the CAAB passed an amended motion that would read something like this, although the record they made during the meeting is not perfectly clear:

> "*The Climate Action Board requests council to direct the city manager to hire a permanent sustainability employee to service the needs to the Climate Action Advisory Board*."

This is a compilation of the CAAB discussion at pages 15-16 of the meeting transcript. In contrast, as presented to City Council, Councilor Ellis made the following motion:

Page 16 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

```
 3            COUNCILOR ELLIS:  I do have.  We also
 4    heard from the Climate Action Advisory Board about
 5    staffing issues and concerns.
 6            And so I have -- I have two motions, but
 7    the first one is that the Climate Action Advisory
 8    Board requests that the council direct the city
 9    manager to post the full-time job position of
10    climate program specialist within two weeks, and
11    provide an update on the hiring process every
12    meeting until filled.
```

(Ex. 3, Council Meeting Transcript, at 2.)

Councilor Ellis then re-stated twice to the Mayor, Councilors, and audience that by her motion she was "*asking that the council direct the city manager*" to act on hiring. (*See, e.g.*, *id.* at 2:22-24 [Ellis: "No, the Climate Action Advisory Board requests the council direct the city manager"])

The City Attorney recognized the fundamental flaw in this motion and sought to succinctly and politely explain that Councilor Ellis' actions were contrary to the City Charter:



```
25            MR. BREWER:  I do.  I certainly understand
```

Page 17 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Ex. E - Shepherd Decl.
Page 20 of 32

```
1    council frustration.  The charter really expects
2    that the city manager is going to do those
3    administrative things.
4            I think that what you may have identified
5    as a performance issue rather than an action for the
6    council to take.  And of course that allows the city
7    manager also to explain, well, and I would -- I
8    would say in the charter language it is possible for
9    the city manager to do this work by transferring an
10   employee from a different place rather than post.
11           So by -- by adding a level of specificity
12   that you want the city manager to appoint a
13   particular officer or employee, I think that's
14   exactly what the charter says you can't do.
```

(Ex. 3, Council Meeting Transcript at 6-7.)  Councilor Ellis disagreed, saying that this

matter had reached a "policy issue."  (*Id.*)

Again, the City Attorney offered appropriate advice about reframing the motion,

indicating that the motion should focus on the Climate Action Advisory Board continuing

its work as soon as possible, rather than influencing or coercing the City Manager to take

any action on hiring.  (*Id.* at 8:7-12.)  And, this same legal advice was given yet again

later in the meeting:

Page 18 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Ex. E - Shepherd Decl.
Page 21 of 32

```
15          MR. BREWER:  I think that you are exactly
16    correct, and that that is the point that what you
17    are directing is not appointing an employee or an
18    official, it is directing the city manager to do
19    whatever it takes for this to happen.  And that's --
20    that is different in terms of the charter language.
```

(Ex. 3, Council Meeting Transcript at 18.)

### ARGUMENT

To evaluate Councilor Ellis' conduct, the City Council must consider and apply the provisions of Section 23(f) of the Charter.  The text, context, and legislative history of Section 23(f) demonstrate a clear intent, in the formation of the city government, to insulate the City Manager from the influences of the Council both generally as well as specifically with respect to staffing and hiring decisions.  Councilor Ellis improperly attempted to interfere with the City Manager's authority over staffing and hiring decisions in violation of Section 23(f) and, by virtue of those violations, forfeited her office.

**I.    Section 23(f) Insulates the City Manager from the Council on Matters Relating to Staffing and Hiring.**

Under Oregon law, the interpretation of a city charter is subject to the same analysis as the construction of a state statute.  *McPherson v. Coos Bay-North Bend Water Board*, 318 Or App 582, 586 (2022) (citation omitted); *City of Corvallis v. State*, 304 Or App 171, 185 (2020).  The decision-maker must first examine the provision's text and context.  *State v. Gaines*, 346 Or 160, 171 (2009).  At this text-and-context step of interpretation, the decision-maker may also consider relevant legislative history offered by the parties.  *Id.* at 172; *see also State v. Blair*, 348 Or 72, 80 (2010) (following *Gaines*, "we may always consider pertinent legislative history," even in the apparent absence of

Page 19 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

ambiguity).  Put differently, the Council has a duty to interpret the Charter accurately according to its plain terms and consistently with the intent of the voters who adopted it.

Chapter 5 of the Charter, in which Section 23(f) is located, defines the "Powers and Duties of Officers," including the Mayor (Section 22), the City Manager (Section 23), and the Municipal Judge (Section 24).  While the powers and duties of the Mayor and Municipal Judge are concise—described in no more than two paragraphs, with no subsections—the role of the City Manager is much more particularly defined to include, for example, qualifications required to become City Manager (Section 23(a)), and what to do in the event of the City Manager's absence (Section 23(e)), in addition to specifically enumerated powers and duties (Section 23(c)).

Section 23(f) is entitled "Interference in administration and elections."[3]  The opening language (referred to as the "influence or coercion clause") of the provision uses intentionally strong terminology to express its intent:  "Neither the Mayor nor any member of the Council shall *in any manner, directly or indirectly, by suggestion or otherwise*, *attempt* to influence or coerce the Manager in the making of any appointment or removal of any officer or employee[.]" (emphasis added).  It goes on to provide further (in the "specific appointment clause") that the same individuals may also not "discuss, *directly or indirectly*, with the Manager the matter of specific appointments to any City office or employment." (emphasis added).  In both instances, the interference—whether by discussion, influence, coercion, or mere suggestion—need not be direct; even indirect attempts to influence the City Manager in matters of staffing and hiring run afoul of

_____

[3] An older version of Section 23(f) contained a provision restricting City employees, including the City Manager, from engaging in certain political activities.  This provision was removed by the voters following the Oregon Court of Appeals' decision in *Williams v. Astoia*, 43 Or App 745 (1979), which held that state statute preempted a city from regulating the political activities of public employees.  Although this provision no longer contains any references to interference in elections, the name of the section remains unchanged to refer to both "administration *and* elections." (emphasis added).  *See* Administrative Services Committee Meeting Minutes, August 27, 1984, Attachment 1 at 1.

Page 20 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Section 23(f).  This plain language of Section 23(f) evinces a compelling policy of insulating the City Manager from *any* interference by the Council in hiring decisions—whether that interference is direct or indirect.

The legislative history supports the interpretation of Section 23(f) as establishing an anti-interference policy since its original adoption by the voters in 1948.  This history, which has been summarized for this hearing by the City Attorney, includes a few notable minute entries from the City Council.  First, the minutes from February 2, 1948, include a letter from the Chamber of Commerce proposing that the City Council put a measure to the voters adopting a new or amended Charter with a City Manager form of government. The minutes from March 1, 1948, reflect the same intent, following the "general lines of the Council-Manager model charter prepared by the League of Oregon Cities."  Second, on March 22, 1948, the City Council minutes reflect a discussion of the provisions of a new charter, including a proposed amendment that would have allowed City Councilors to override by majority vote the authority of the City Manager:

Minutes of March 22, 1948, continued.                          324

Discussion of new charter.

The balance of the meeting was spent in discussion of the provisions of the new charter. During the discussion Councilman Williams offered a motion, which was seconded by Councilman Woodcock, to provide that a majority vote of the Council may override any action of the City Manager. Councilman Cox moved to amend the motion, seconded by Councilman Williams, to add the words "except in purely administrative affairs", following some further discussion both motions were withdrawn. In the matter of whether or not to include in the new charter a provision to continue the 1891 charter section which could be used to prevent the levying of any general road fund tax on city proper by the County, upon motion, this was referred to a special committee with power to act.

Adjournment

No further business appearing, on motion the Council adjourned to 7:30 o'clock P M on Monday, March 29, 1948.

Attest:

*Ralph P. Schindler*                    *[signature]*
Municipal Judge                                    Mayor

In other words—the Council considered amending the charter to allow oversight of the City Manager's hiring decisions, but ultimately declined to do so. This legislative history is consistent with the express delegation of duties and separation of powers within the Charter as adopted in 1948 and as it exists today. The intent was to delegate exclusive authority to the City Manager over administrative and operational decisions, and specifically to staffing and hiring matters. As applied here, the City Council should stay true to both the terms and original intent of the Charter, and construe and apply its provisions faithful to that intent.

## II.  Councilor Ellis Violated the Influence or Coercion Clause of Section 23(f).

As a member of the Council, Councilor Ellis is subject to the restrictions of Section 23(f) of the Charter.  (*See* Section 23(f) ("Neither the Mayor nor *any member of*

Page 22 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

*the Council* shall . . ." (emphasis added)).)  Councilor Ellis' actions at both the CAAB and City Council Meetings constitute "attempt[s] to influence or coerce the Manager in the making of any appointment or removal of any officer or employee," in violation of the Influence or Coercion Clause of Section 23(f).

> ### A. Councilor Ellis Attempted "Influence or Coerce the Manager in the Making of Any Appointment or Removal of Any Officer or Employee."

With respect to the influence or coercion prohibition, Section 23(f) broadly prohibited Councilor Ellis from attempting to influence the City Manager's employment decisions "in any manner, directly or indirectly[.]"  The attempted influence or coercion need not have been directly made by Councilor Ellis to the City Manager; the prohibition applies even if it was indirectly made "in any manner," and that is what happened here. With respect to the full-time Climate Program specialist position Councilor Ellis wanted created by the City Manager and filled, the evidence unequivocally supports a finding that she attempted to influence or coerce the City Manager at the CAAB meeting and the City Council meeting.

Specifically, the evidence shows that Councilor Ellis indirectly put pressure on the City Manager to create and fill the full-time position.  First, she held a meeting of the CAAB with the goal of having the CAAB pressure the City Council to direct the City Manager to hire a full-time Climate Program specialist.  Second, she advocated that CAAB members "pack" the Council meeting at the time of a vote on that issue.  Second, Councilor Ellis enlisted others to help accomplish her strategy to coerce the City Manager by asking members of CAAB to make motions, directing the content of those motions, and suggesting that they create a powerful force at a City Council meeting by packing it and making supportive statements, individually and as a group, on hiring questions that fall unquestionably to the City Manager.  And then, at the Council Meeting, Councilor Ellis brought forward her motion seeking to direct the City Manager to make specific staffing and hiring actions to support CAAB.  Although Councilor Ellis'

Page 23 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

proffered motion did not pass because the City Attorney and other Councilors stepped in, Section 23(f) prohibits *attempts* at influencing or coercing the City Manager, irrespective of the success of that attempt; in other words, Section 23(f) does not require that an individual successfully influence or coerce the City Manager to constitute a violation.

To the extent that Councilor Ellis argues that the influence or coercion prohibition only applies to the appointment or removal of an *already existing* officer or employee, the prohibition in Section 23(f) has no such limitation.  Critically, the law on construing legislative acts such as the Charter expressly prohibits inserting language that does not exist in it.  Indeed, when interpreting language in a city charter, the decision-maker may "not [] insert what has been omitted, or [] omit what has been inserted[.]"  ORS 174.010.[4] Thus, the decision-maker cannot add limitations to narrow the legislatively prohibited action or conduct.

As applied here, it would be legally improper to try to add the word "undue" as a qualifier to "influence" or "coerce," just as it would be wrong to limit the influence or coercion clause to specific employees.  Moreover, Section 23(f) already has a different provision prohibiting discussions with the City Manager about hiring or firing *specific* employees.  Here, the influence or coerce clause requires no such specificity, and that qualification cannot be inserted.

It warrants noting that the prohibition in Section 23(f) extends to *removing* positions as well.  For instance, Councilors are prohibited from attempting to direct,

-------

[4] Ignorance of the law is not an excuse.  Here, Section 23(f) does not require that the offending Councilor be aware that their conduct constitutes a violation of the Charter.  It is a general maxim of law that specific knowledge that conduct constitutes an offense is not an element of that offense, unless specifically provided.  *See, e.g.*, ORS 161.115(4) ("Knowledge that conduct constitutes an offense, or knowledge of the existence, meaning or application of the statute defining an offense, is not an element of an offense unless the statute clearly so provides.").  Because Section 23(f) does not specify a mental state by the offender, it is *not* required that Councilor Ellis was aware that her conduct would constitute a violation of the Charter, and it would not be appropriate to insert such a requirement where one does not exist.

Page 24 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

influence, or coerce the City Manager to remove a Fire Marshal, Code Compliance specialist, or Diversity, Equity, and Inclusion coordinator, among others.  Attempting to direct, influence, or coerce the City Manager to appoint a position may seem less intrusive than attempting to direct, influence, or coerce the City Manager to remove a position.  However, the Charter makes no distinction in the prohibitions on appointing or removing positions.

Based on the plain language of Section 23(f), Councilor Ellis' actions in the CAAB and City Council meetings constituted prohibited attempts to influence or coerce the City Manager to hire a full-time Climate Program specialist position.  Those attempts violated the Charter.

### III.    The Legislative Privilege Exception Does Not Apply.

Section 23(f) provides a legislative privilege-type exception:  "Nothing in this section shall be construed, however, as prohibiting the council, *while in open session, from discussing with or suggesting to* the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City." (emphasis added.)  This provision does not apply to Councilor Ellis' statements at either the CAAB Meeting or the September 18, 2023, Council Meeting.

#### A.    The Exception Does Not Apply to the CAAB Meeting.

##### 1.    The CAAB Meeting Was Not an "Open Session" of the Council.

The CAAB is a separate entity from the Council—it is a Policy Advisory Board. Policy Advisory Bodies are established by the Council, and include seven voting members, including one City Councilor.  *See* Resolution 2021-08, Exhibit A (1)(g). While Policy Advisory Bodies "may make recommendations to the City Council," they "do[] not have the authority to direct the Council or staff to take action, nor does a Policy Advisory Body have an operational role in the work of the City."  *Id.* at Ex. A (1)(h). Meetings of Policy Advisory Boards are subject to requirements specific to Policy Advisory Boards.  *Id.* at Ex. A (1)(k)-(l); (o)-(p).  As distinct bodies, set up by the

Page 25 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

Council but operating independently, meetings of the Policy Advisory Boards are not "open sessions" of Council such that the legislative privilege exception of 23(f) would apply. Therefore, Councilor Ellis' comments at the CAAB Meeting are not subject to this exception.

### 2. Councilor Ellis' Statements Were Not "in discussion with" or "suggestions to" the City Manager.

Moreover, even if the CAAB meeting could be considered an "open session" of Council, Councilor Ellis' statements were not "in discussion with" or "suggestions to" the City Manager; rather, Councilor Ellis sought to "*direct*" the City Manager to take certain staffing and hiring actions:

```
2           CHAIR ELLIS:  So what I have, and we're
3    going to want to put a date on it, to -- we are
4    requesting, the climate action board will request
5    the council directs the city manager to fill
6    Catherine's economic development and climate program
7    specialist, and then we need a date.
```

(Ex. 1, CAAB Transcript at 21.) Additionally, neither the City Manager nor any delegate of the City Manager's office were present at the CAAB Meeting, such that Councilor Ellis could be said to have been in "discussion with" or making "suggestions" to them. Rather, as evidenced by the factual record quoted extensively above, Councilor Ellis sought to influence and coerce the City Manager by "directing" him to make staffing and hiring decisions—a task specifically reserved for the City Manager.

### B. The Exception Does Not Apply to the Council Meeting Because Councilor Ellis' Actions Were Not "discussions with" or "suggestions to" the City Manager.

Similarly, Councilor Ellis' statements at the Council Meeting are not entitled to the protection of the legislative privilege exemption of Section 23(f). Although the meeting at issue was, indisputably, an "open session" of the Council, Councilor Ellis,

Page 26 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

again, did not seek to engage in discussions with or make suggestions to the City
Manager:

```
 3         COUNCILOR ELLIS:  I do have.  We also
 4  heard from the Climate Action Advisory Board about
 5  staffing issues and concerns.
 6         And so I have -- I have two motions, but
 7  the first one is that the Climate Action Advisory
 8  Board requests that the council direct the city
 9  manager to post the full-time job position of
10  climate program specialist within two weeks, and
11  provide an update on the hiring process every
12  meeting until filled.
```

(Ex. 3, Council Meeting Transcript, at 2.)  While Councilor Ellis here made a "request"
by motion to the *Council*, her motion was that the Council "*direct*" the City Manager to
take a certain staffing and hiring action.  Here, Councilor Ellis cannot insulate herself by
stating that her intentions would be communicated through Council to the City Manager.
Remember, coercion or influence can be either direct or indirect, and in this case
Councilor Ellis was attempting to use the Council as her means of coercion or influence,
just as she was using the CAAB members to pack the Council meeting to coercive effect.

    None of Councilor Ellis' efforts at moving forward with her hiring agenda were
necessary.  There were many means of communicating her intent without running afoul
of the Charter.  For example, Councilor Ellis could have requested that the Council:

- Inquire with the City Manager as to the status of efforts to support
  CAAB's policy directives;

- Ask the City Manager to provide weekly updates into hiring efforts;

Page 27 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

- Ask the City Manager to develop a plan to staff the CAAB so it could meet once a month;

- Tell the City Manager that CAAB could not meet due to staffing deficiencies, or;

- Ask the City Manager why CAAB does not have sufficient staff support.

Instead of requesting that the Council discuss the matter with or make suggestions to the City Manager, Councilor Ellis requested that the Council *direct* the City Manager to take certain actions. It is this attempt to *direct* the City Manager that runs afoul of Section 23(f).

**IV.    Forfeiture is Mandatory and Self-Executing.**

There is no "penalty phase" to this hearing. The Council's role is to determine if a violation of Section 23(f) of the Charter occurred, and it is the Charter (not the Council) that dispassionately dictates the forfeiture outcome.

Forfeiture is the remedy that the citizens of Corvallis, in enacting the Charter, deemed appropriate for violations of Section 23(f). And it is the only remedy provision in the Charter. It also bears noting that nothing in the Charter prevents a Councilor who has forfeited their office from running again for their same seat at the next general municipal election, pursuant to Section 8 of the Charter.

Additionally, while it is apparent that some members of the public may view forfeiture as extreme or disproportionate, that is legally irrelevant and no excuse for ignoring the violation. The Councilors have a solemn duty to uphold, defend, and enforce the Charter. There is no other choice in the event of a violation of Section 23(f).

**CONCLUSION**

The evidence shows that Councilor Ellis violated the Influence and Coercion Clause of Section 23(f) by attempting to influence and coerce the City Manager by directing him to make specific staffing and hiring decisions, through her actions at either or both the CAAB and Council Meetings. Because Section 23(f) makes forfeiture a

Page 28 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM

mandatory and self-executing consequence of a violation, Councilor Ellis has forfeited her office as Ward 5 representative by virtue of these violations.

DATED:  January 22, 2024.       MARKOWITZ HERBOLD PC

*s/ Kerry J. Shepherd*
_____
Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Jordan E. Pahl, OSB #194335
JordanPahl@MarkowitzHerbold.com
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

*Attorneys for City of Corvallis*

2089862.3

Page 29 – CITY OF CORVALLIS' DUE PROCESS HEARING MEMORANDUM