| | |
|---|---|
| TO: | City Council for January 16, 2024, Council Meeting |
| FROM: | Mark W. Shepard, P.E., City Manager |
| DATE: | January 9, 2023 |
| SUBJECT: | Due Process Hearing for Councilor Ellis |



Action Requested:

This report is offered as information and evidence for the due process hearing for Councilor Ellis.

Strategic Operational Plan Priority:

Not applicable.

Discussion:

This report provides background, information, and context for the Council's due process hearing regarding the whether Councilor Ellis violated the Charter by her actions at the September 13, 2023, Climate Action Board meeting and/or September 18, 2023, Council Meeting.

I am providing this report as a matter of my professional and ethical responsibilities. The Council can understand and appreciate my responsibility to notify the Council if I believe a violation of the City's Charter has occurred. I did so after the City Attorney concluded a violation had occurred. I understood that there were likely going to be personal and potentially professional implications for me. I know there are some who do not understand the Council/Manager form of government, the specifics of the Corvallis City Charter, or my professional and ethical obligations. As such, I know that some people are likely to attack my motives, character, and integrity. However, I cannot let these possibilities prevent me from fulfilling my ethical and professional obligations as City Manager.

*Background*

I was away from the City September 12 – 23, 2023 on an approved vacation. Therefore, I was not present for the September 13th Climate Action Advisory Board (CAAB) meeting or the September 18th Council meeting. When I returned to work a week after the September 18 Council Meeting, I was made aware of the events that transpired by multiple staff and Councilors. Both staff and Councilors made me aware of Councilor Ellis' possible Charter violation. More than one Councilor indicated they had received inquiries or heard concerns from constituents about a possible Charter violation by Councilor Ellis. Staff and Council expressed concerns that Councilor Ellis brought this issue forward when I was away such that the full context around staffing for the Climate Action Advisory Board (CAAB) was not addressed.

I watched the video recording of both the September 18 Council Meeting and September 13 CAAB meeting.

I was surprised to learn that Councilor Ellis told CAAB that they were in an emergency because they could not meet for three months. The staff member who was providing support for CAAB had recently informed me that they were taking three months of protected leave (mid-September to mid-December). When I learned of this, I arranged a meeting with this staff member on August 29th to discuss what was needed for CAAB coverage while they were gone. This would allow me to develop plans for keeping things moving while this staff person was out on leave. I asked specifically what CAAB needed for support in the next three months. The staff member told me that CAAB did not need anything while they were gone. They

let me know CAAB was meeting in mid-September (before the staff person went on leave) and would not meet again until December when the staff person returned to work.

After our meeting on the 29th, the staff person supporting CAAB never indicated there was any change in the needs for CAAB support while they were gone. Neither was I ever approached by Councilor Ellis about her concern about a lack of staff support for CAAB or that CAAB was not going to be able to meet as it desired.

Councilor Ellis' discussion at CAAB, and subsequently at the Council Meeting, directing me to fill a specific vacant position that was to support CAAB ignored the fact that I previously informed the Council that the Economic Development Office (EDO) was being restructured. I was doing this in part to meet the Council's desire for me to address my workload and bandwidth. All but 0.8 Full Time Equivalent (FTE) staff positions in the EDO had left the City. The EDO structure was completely dismantled. Reporting structure, job duties and job titles were all in the process of changing. Two FTE had been transferred to the Community Development Department, one of them being filled in August. There should not have been any expectation that any of the job titles that existed under the old EDO structure were going to remain and be filled.

*Meetings*

Following is what I observed from watching the September 18, 2023, Council Meeting and September 13, 2023, CAAB meeting videos.

<u>September 18, 2023, Council Meeting:</u> At the September 18th meeting I noted that Councilor Ellis said she had two motions to bring before the Council. The first motion was very specific and directed the City Manager to post a full-time job position of climate program specialist and provide an update on the hiring process at every Council meeting until the position is filled.

Councilor Ellis explained details of the work she expected from this new staff person. The expectations and job functions described by Councilor Ellis went well beyond support to allow CAAB to meet.

I noted that the City Attorney pointed out that the motion appeared to be in conflict with the City Charter. During discussions, various Councilors expressed concerns that the motion was not in alignment with the Charter and appropriate Council/staff roles. Councilors expressed concern that the discussion was happening in my absence. One Councilor specifically said that they believed Councilor Ellis' motion goes against the Charter. This Councilor also stated that Council is not allowed to direct the City Manager to hire a staff person.

A Councilor introduced a substitute motion to Councilor Ellis' motion. This motion gave outcome-based direction - to allow the CAAB to continue to meet. Councilor Ellis said this substitution motion was her second motion.

<u>September 13, 2023, CAAB Meeting:</u> Councilor Ellis introduced and lead a discussion to direct the City Manager to hire a very specific position to support the CAAB and perform other specific work related to climate initiatives. She said there was a Climate Board emergency and the CAAB was not functional because it lacked staff to allow it to meet.

As the discussion continued at the CAAB meeting Councilor Ellis shared with the CAAB members and others present at the meeting how they could make a powerful statement to support the motion she introduced directing the City Manger to hire a specific position at the "director level." Councilor Ellis goes on to say that 'we' can further discuss how to make a powerful impact after the CAAB meeting adjourns.

Councilor Ellis initiated the discussion with CAAB by saying she had been thinking about this for weeks leading up to the CAAB meeting. In those weeks Councilor Ellis never reached out to me to express any concern about the ability of CAAB to meet. Instead of reaching out to me to express concern about CAAB not being able to meet, she used a public meeting of a Policy Advisory Board to attempt to influence me to hire a specific director level staff position to support CAAB and other specific work she wanted done.

*Consultation with the City Attorney and Council Leadership*

The City Attorney and I engaged in conversations about the September 18 Council Meeting. The City Attorney was not aware of the details of the September 13 CAAB meeting. After I had a chance to view the video of the September 13 CAAB meeting, I forwarded a link to the video to the City Attorney and asked him to review it to determine if there were concerns with regard to a Charter violation.

The City Attorney reviewed the September 13 CAAB meeting video and determined that Councilor Ellis had violated Section 23(f) of the Charter. At that point the City Attorney and I had a professional and ethical obligation to act. As neither the City Attorney nor City Manager has authority over the Council or individual Councilors we needed to bring this before the City Council.

The City Attorney and I discussed next steps and how to best approach this sensitive matter. This was not a matter that could be addressed with the Council in Executive session. We were concerned with surprising Councilor Ellis and the rest of Council in a public manner. We determined it was best to work with Council Leadership before bringing this to an open Council Meeting.

The City Attorney and I first met with the Council President to discuss this concern. It was agreed to convene the Council Leadership team. The Council Leadership team met on November 20, 2023. At that meeting the Leadership team watched the September 13, 2023, CAAB meeting video. After watching the video, the full Council Leadership team agreed that Councilor Ellis's actions violated the Charter.

Out of respect for Councilor Ellis, Leadership agreed that the next step would be to talk to Councilor Ellis about the issue. This would allow Councilor Ellis to privately decide if she would like a due process hearing or resign to minimize the public impact on her.

Ultimately, Councilor Ellis elected to proceed with a due process hearing.

*Duty to Inform the Council*

I take my professional and ethical responsibilities seriously. As this issue moved into the public realm, there have been many assumptions and accusations made. To be clear, this issue is not a conflict between individuals or personalities. The issue revolves around compliance with the City Charter and fulfilment of professional and ethical responsibilities.

Per the Charter, the City Manager has a duty to, '…keep the Council advised at all times of the affairs and needs of the City...' (Section 23(c)). Being informed that a Charter violation occurred it was my duty to inform the Council. Staff, Councilors, and community members expressed a concern about a potential Charter violation. It is my professional and ethical responsibility to understand the concerns and issues and investigate further. Having done so and being informed by the City Attorney that a violation of the Charter occurred, I had the professional and ethical responsibility to bring the violation forward to the City Council. My duty and obligation is the same as the City Council's - to honor and adhere to the Charter as established by the voters of Corvallis.

Additionally, I am contractually bound to adhere to the International City Manager's Association (ICMA) ethical tenets (Attachment A). ICMA Ethics Tenet 10 requires members to, 'Resist any encroachment on professional responsibilities, believing the member should be free to carry out official policies without interference, and handle each problem without discrimination on the basis of principle and justice.' A violation of Section 23(f) of the Charter constitutes an encroachment on the Corvallis City Manager's professional responsibilities, whoever is in that position.

Together, Councilors, the City Manager, and City Attorney are called to follow, enforce, and defend the Charter as enacted by the voters of Corvallis. This responsibility holds regardless of intent, personal agreement with the Charter, and potential personal impact.

I recognize that this issue is challenging for the Council and community. It is also challenging for me personally and professionally. However, it is an incredibly important issue to deal with rather than a distraction, as some may characterize it. The Charter has been established by the voters of Corvallis to affect an effective and efficient government structure to best serve the interests of all community members. Section 23 (f) is foundational to that governance structure established for Corvallis.

Budget Impact:

Councilor Ellis chose to be represented by legal counsel for the due process hearing. Because of this, the City has retained special counsel. The cost for this special counsel is undetermined at this time.

Attachment(s):

Attachment A: ICMA Code of Ethics

# ICMA CODE OF ETHICS

The mission of ICMA is to create excellence in local governance by developing and fostering professional local government management worldwide. To further this mission, certain principles, as enforced by the Rules of Procedure, shall govern the conduct of every member of ICMA, who shall:

1. We believe professional management is essential to effective, efficient, equitable, and democratic local government.

2. Affirm the dignity and worth of local government services and maintain a deep sense of social responsibility as a trusted public servant.

3. Be dedicated to the highest ideals of honor and integrity in all public and personal relationships in order that the member may merit the respect and confidence of the elected officials, of other officials and employees, and of the public.

4. Serve the best interests of all community members.

5. Submit policy proposals to elected officials; provide them with facts, and technical and professional advice about policy options; and collaborate with them in setting goals for the community and organization.

6. Recognize that elected representatives are accountable to their community for the decisions they make; members are responsible for implementing those decisions.

7. Refrain from all political activities which undermine public confidence in professional administrators. Refrain from participation in the election of the members of the employing legislative body.

8. Make it a duty continually to improve the member's professional ability and to develop the competence of associates in the use of management techniques.

9. Keep the community informed on local government affairs. Encourage and facilitate active engagement and constructive communication between community members and all local government officials.

10. Resist any encroachment on professional responsibilities, believing the member should be free to carry out official policies without interference, and handle each problem without discrimination on the basis of principle and justice.

11. Manage all personnel matters with fairness and impartiality.

12. Public office is a public trust. A member shall not leverage his or her position for personal gain or benefit.

*Adopted by the ICMA Executive Board in 1924, and most recently revised by the membership in April 2023.*



Exhibit 8
Page 5 of 5