January 8, 2024

Mayor & City Council
501 SW Madison Avenue
Corvallis, OR  97333

Re:  Council consideration of Resolution alleging Ellis violation of Charter Section 23(f)

Mayor & City Councilors:

We have read the draft *Resolution Regarding a Violation of Charter Section 23(f) and Declaring a Vacancy in the Ward 5 Council Position*, and a number of us have carefully reviewed the video recordings of the Climate Action Advisory Board (CAAB) meeting of September 13, 2023, and the City Council meeting of September 18, 2023.

There is no evidence in those recordings to support the allegations that Councilor Ellis violated Section 23(f).  **We, 17 former City Councilors (including one former Mayor), urge you to vote against any motion in support of the Resolution.**

**Resolution is inconsistent with purpose and plain language of Section 23(f)**

The clear and logical purpose of Section 23(f) is to avoid any attempt by a Mayor or Councilor to influence or coerce a City Manager to hire or fire a <u>specific</u> individual, or to promise to support the selection of a City Manager candidate if that candidate, upon selection as Manager, agrees to hire or fire a <u>specific</u> individual. This was the interpretation of Section 23(f) that we understood from our collective attendance at more than 30 Council Orientation trainings (with presentations by various City Attorneys) in our combined 104 years on the City Council.

This Charter section was written to prevent elected officials from corruptly using their influence to benefit themselves or another individual.  We do not believe it was ever intended to prevent an elected official from advocating for the creation of a new position or the posting of an existing (budgeted) vacancy, or from asking for updates on the progress of recruitment for a position.

Most often during the budgeting process, in order to address specific community needs, new (or continued) staff positions are proposed by staff, Budget Commissioners (including Councilors), advisory boards. or community members, with the final decision by the City Council upon budget adoption.  During our tenures on Council (and, for some of us, also the Budget Commission and Planning Commission), we witnessed numerous instances of Councilors advocating for new positions as part of the budget process (e.g., Ombudsperson, School Resource Officer, Long-term Planner, Bike-Ped Coordinator), and requesting updates on recruitment for those and other priority vacancies.

**Recruitment is not Appointment**

The alleged violation is based on a mistaken interpretation of the portion of Section 23(f) that describes "the making of any appointment or removal of any officer or employee." An "appointment" refers to the hiring of a new employee for a specific position, or the

Howell & 16 others: Letter to Mayor & Council re: alleged Ellis violation of Charter Section 23(f)
January 8, 2024

transfer of an existing employee into that position. Neither the language in the motion considered by CAAB nor the motion presented by Ellis to Council refer to a specific candidate to be "appointed."

CAAB unanimously passed a motion to:
> "Request that the City Council direct the City Manager to fill Katherine Duvall's role of Economic Development and Climate Program Specialist with a posting within two weeks."

The motion by Councilor Ellis at the Council meeting was that the Council:
> "Direct the City Manager to post the full-time job position of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled."

Neither these motions, nor the discussions in support of them, are violations of Section 23(f) for the following reasons:
- They do not propose any specific candidate for the position or role.
- They refer to a Council-approved position/role that was vacated in April 2023, and approved by Council to continue in the 2023-24 budget beginning July 2023. Although the City Manager re-organized the Economic Development services, the role referred to by CAAB was still funded and vacant, to the best of their knowledge.
- Neither Councilor Ellis nor CAAB directed the City Manager to do anything. The motions are <u>requests</u> for <u>Council</u> to direct the City Manager to post and recruit for a funded position. Council chose instead to request that the Manager provide staff support for CAAB, an amendment to the motion that Councilor Ellis supported.

### Section 23(f) clearly allows all of Councilor Ellis' statements at Council meeting

The following section of Section 23(f) allowed Councilor Ellis to raise her issues at the September 18 Council meeting:
> "Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to City affairs or the interests of the City."

The Resolution clearly errs by including Councilor Ellis' actions at the Council meeting in its list of allegations. In fact, both the motion by CAAB and the related motion at the Council meeting were actions to bring the issue of inadequate staffing of CAAB to the City Council for a discussion in open session, which is expressly allowed by the Charter. The motions included a proposed remedy, but that remedy (posting a position) came in the form of a proposal for Council to consider, which Section 23(f) allows.

### Council has a duty to address Manager performance issues

A majority of us spent many years on Council working with prior Managers. During that time, we were never aware of any Board or Commission meeting not being staffed, or needing to be postponed or cancelled due to a lack of staff support. This is in spite of the fact that we had significantly more Council advisory Boards and Commissions than currently exist. Given that there are so few remaining Council advisory Boards and

2

Howell & 16 others: Letter to Mayor & Council re: alleged Ellis violation of Charter Section 23(f)
January 8, 2024

Commissions, each is now more critical for bringing community feedback and expertise to Council.  Therefore, any lack of adequate staffing that limits their advisory function should be raised by Council with the Manager as a performance issue.

Part of Council's role is to annually prioritize and approve staff positions (and allocate funding) during the budgeting process, positions that address community needs and implement policy direction.  Council is then obliged to monitor the Manager's performance in filling these positions, as a measure of providing the approved level of City services and the quality of services provided.  The Manager is solely responsible for selecting and supervising qualified personnel, but should consult with Council when extended vacancies occur.  Without Council oversight, a Manager could avoid providing services he or she felt were low priority by unilaterally keeping positions vacant.

Therefore, a second related performance issue was the lack of regular updates, both to Council and to CAAB, on the timing of recruitment for the climate support position in the context of the re-organization of Economic Development services.  In our experience on Council, if recruitment of a position of special interest to the Council or an advisory board was delayed, Council and the advisory board would be regularly informed of the reasons for the delay and any new timeline.  Regular updates of a recruitment timeline could have avoided the need for the motions in question.

Recent Councilors have been taught that the appropriate way to get an issue on the table for discussion is to make a motion, and Councilor Ellis followed this prescribed routine in placing the motion before Council for discussion.  Likewise, the CAAB video clearly shows Ellis informing CAAB that the best way to initiate the topic of CAAB staff support for Council discussion was to formulate a simple motion that "Council will speak to."

**<u>Decision should avoid issues not related to the alleged Charter violations</u>**

Comments by the Mayor and Councilors at the September 18 meeting and in the press have raised several issues that are not violations of the Charter:

- Some Councilors have remarked that the content of the Ellis motion or her approach were "lane violations" that intruded inappropriately into areas reserved for the City Manager. These so-called "lane violations" have increased in recent years, as Council's "lane" has been substantially reduced to be focused strictly on policy, and (in our minds) improperly excluding the implementation of policy.  During the Council tenures of the majority of us, policy implementation was a frequent topic of discussion at both advisory board and Council level, in collaboration with staff.  But with each Council defining its "lane" differently, "lane violations" should be addressed by admonishment rather than forfeiture.  "Lane violations" do not equal Charter violations, and Ellis' actions should be evaluated strictly within the Charter language.
- Some Councilor comments have indicated that Ellis' actions were more serious because she is the Chair of CAAB and a voting member.  However, Council structured CAAB differently than other advisory boards, and Mayor Traber appointed Ellis as Chair.  This requires her to operate in a different manner from typical Council liaisons, including creating an agenda of issues of importance to CAAB (such as staff support), introducing those topics, and at times suggesting motions.  As the CAAB

Howell & 16 others: Letter to Mayor & Council re: alleged Ellis violation of Charter Section 23(f)
January 8, 2024

- video shows, Ellis suggested possible wording for the motion in question but, consistent with her role as Chair, did not make the motion or vote on the motion. Highlighting the importance of this issue to CAAB, members of the CAAB spoke to Council about the issue on September 18, prior to Ellis presenting CAAB's motion during Councilor Reports. Ellis was not freelancing on this issue, but operating in her role as Chair in representing CAAB's concerns to Council.
- There has been some discussion that Ellis' motion included a description of the position that was too specific and did not match the new re-organization of Economic Development roles and, therefore, the directive within the motion was inappropriate. However, the CAAB video recording clearly shows Councilor Ellis and other CAAB members making efforts to formulate a motion with an accurate description of what they understood the existing vacancy to be.

**The above issues are not relevant to your evaluation of the alleged Charter violations.**

**Council is responsible for interpretation of the Charter**

You have been and will be presented with multiple interpretations of this section of the Charter. The City Council is considered the primary authority in interpreting the City's Charter, and no Council before you has been in a position to interpret this novel application of Section 23(f).

As you each independently consider the proposed Resolution, we encourage you to consider the following in your personal deliberations:

- Although there may have been instances in the past of forfeiture (or resignation) for pressuring a Manager to hire or fire a specific individual, there has been no precedent identified for applying this to the current allegation of advocating for the posting of a position or moving forward in a recruitment process.
- This is the community's City Charter. If there is a question of interpretation, what interpretation best reflects how the community would interpret the language? (We think it is clear they would agree that coercion of a Manager in hiring or firing an individual is a serious ethical violation, but would they agree that advocating for posting and recruitment of a funded position is an action worthy of forfeiture?)
- Given that the penalty of forfeiture is so extreme, does your interpretation of Section 23(f) logically fit with forfeiture as a reasonable penalty?
- Will your interpretation, and its consequence of maintaining or losing an elected official, lead (now and as a precedent with future Councilors) to a result that is best for the community, for ensuring quality community services, and for maintaining citizen confidence in City government?
- Since adoption of the Resolution will become a precedent, will that precedent inhibit future Councilors from attempting to fulfill their role of monitoring the Manager's performance in providing services? Will adoption lead to future threats of forfeiture that will impair, rather than enhance, Council's effectiveness in representing the community?

4

Howell & 16 others: Letter to Mayor & Council re: alleged Ellis violation of Charter Section 23(f)
January 8, 2024

**We believe an accurate, reasonable, and functional reading of Section 23(f), consistent with the purpose of the Charter and with good and effective government, requires that you vote against the proposed Resolution.**

This is likely the most important decision you will make as a Councilor. Thank you for considering community input on your interpretation of our Charter.

Sincerely,

**Tony Howell**
**Ward 3, 1993-2002**
2030 SE DeBord Street
Corvallis, OR  97333
howellt@peak.org

**Richard Hervey**
**Ward 3, 2009-2014**
1975 S.E. Crystal Lake Dr., #171
Corvallis, OR  97333
r.e.hervey@gmail.com

**Dan Brown**
**Ward 4, 2007-2014**
3590 NW Jackson
Corvallis, OR  97330
brown.dan@comcast.net

**Jim Moorefield**
**Ward 3, 1989-92**
455 SE Richland Ave.
Corvallis, OR  97333
jimmoorefield@mac.com

**Stewart Wershow**
**Ward 5, 1989-1990**
**Ward 6, 2001-04, 11/2006-2008**
1541 NW 12th Street
Corvallis, OR  97330
weshos@peak.org

**William "Bill" Glassmire, Jr.**
**Ward 7, 2015-2019**
1310 NW Spring Street
Corvallis, OR  97330
glasslab@fastmail.fm

**Roen Hogg**
**Ward 2, 2011-2018**
344 SW 7th Street
Corvallis, OR  97333

**Mike Beilstein**
**Ward 5, 1999-2000, 2007-2016**
1214 NW 12th Street
Corvallis, OR  97330
mikebeilstein@yahoo.com

**Barbara Bull**
**Ward 4, 2015-2020**
3744 NW Van Buren Ave.
Corvallis, OR  97330
barbara.m.bull@gmail.com

**Jeanne Raymond**
**Ward 7, 6/2008 – 2013**
3430 NW Elmwood Dr.
Corvallis, OR  97330
raymondj@peak.org

**George Grosch**
**Ward 1, 2000-2001**
**Ward 3, 2003-2008**
38694 Luckiamute Road
Philomath, OR  97370
kingsvalleygeorge@yahoo.com

**Bruce Sorte**
**Ward 4, 8/1995-1998**
**Ward 7, 2013-2014**
526 NW 35th Street
Corvallis, OR  97330
sorteb@peak.org

**Trish Daniels**
**Ward 2, 2005-2010**
329 SW 8th Street
Corvallis, OR  97333
trisha1943x@gmail.com

**Kent Daniels**
**Ward 2, 2/1987-1990**
329 SW 8th Street
Corvallis, OR  97333
kentonofbenton@gmail.com

**Emily Stimac**
**Ward 6, 2005-2006**
3007 Acorn Court
Philomath, OR  97370
emilythyme@gmail.com

**Jerry Davis**
**Ward 1, 2005-2006**
3610 SW Country Club Dr
Corvallis, OR 97333
jerrydavis01@comcast.net

**Charlie Tomlinson**
**Ward 4, 1999-2002, 2005-06**
**Mayor, 2007-2010**
14625 N. Chalk Creek Drive
Oro Valley, AZ  85755
charlie.tomlinson@gmail.com