Jesse A. Buss, OSB No. 122919
Willamette Law Group, PC
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

Thomas M. Christ, OSB No. 834064
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland OR 97205
Tel: 503-227-1111
Fax: 503-248-0130
Email: tchrist@sussmanshank.com

*Attorneys for Plaintiff Charlyn Ellis*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHARLYN ELLIS**,** an individual,<br><br>                    Plaintiff,<br>      v.<br><br>CITY OF CORVALLIS, acting by and through the Corvallis City Council,<br><br>                    Defendant. | Case No. 6:24-cv-00205-AA<br><br>**Plaintiff's Motion for Summary Judgment and Response to Defendant's Cross-Motion**<br><br>(Oral Argument Requested) |

## Table of Contents

**Page Nos.**

Table of Authorities ........................................................................................................... iv

MOTION............................................................................................................................. vii

MEMORANDUM ..................................................................................................................1

    I.      Facts ...........................................................................................................................1

    II.     Argument ...................................................................................................................6

        A.  The prohibitions of section 23(f) do not apply to statements made at Climate
            Action Advisory Board and City Council meetings ..........................................7

           1.   The Climate Action Advisory Board and City Council meetings were
               "open sessions" ...........................................................................................7

           2.   Councilor Ellis's statements were made in furtherance of "discussing with
               or suggesting to the Manager, fully and freely, anything pertaining to the
               City affairs or the interests of the City" .....................................................8

        B.  Article I, section 8, of the Oregon Constitution……………………………...10

           1.   Legal standard under Article I, section 8 ....................................................10

           2.   Section 23(f) is facially invalid under Article I, section 8 ........................13

               a.   (*Robertson* category one): Section 23(f) is facially unconstitutional
                   because it contains a content-based restraint on speech, and that
                   restraint does not fit within a well-established historical exception ....13

                 i.   Nor does the "incompatibility" exception apply to section 23(f) ..15

               b.   (*Robertson* category two): Section 23(f) is facially unconstitutional
                   because it is overbroad .......................................................................17

           3.   The City's local expulsion proceeding is unlawful as applied under
              Article I, section 8 .....................................................................................19

C. First Amendment ..................................................................................20

    1. Legal standard under the First Amendment................................................21

        a. Facial challenges under the First Amendment......................................22

        b. As-applied challenges under the First Amendment.............................24

        c. Retaliation claims under the First Amendment ..................................25

    2. Section 23(f) is facially invalid under the First Amendment....................27

    3. Section 23(f) and the local expulsion proceeding violate the First Amendment as applied...............................................................................29

    4. The expulsion proceeding is unlawful retaliation for protected speech ....30

    5. Councilor Ellis is entitled to damages under 42 U.S.C. § 1983................34

III.    Conclusion ........................................................................................35

## Table of Authorities

**Cases**                                                                                                      **Page Nos.**

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016) ..........................26, 30

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) .......................................................24, 29

*Bank of Oregon v. Independent News, Inc.,* 298 Or. 434 (1985)..................................................20

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010)...................................................21, 25, 26

*Bond v. Floyd*, 385 U.S. 116 (1966) ............................................................................31, 34

*Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) ..........................................................25, 26, 34

*Brooklyn Legal Serv. Corp. v. Legal Serv. Corp.*, 462 F.3d 219 (2d Cir. 2006) ..........................25

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011)................................................................22

*Cal. Chamber of Com. v. Council for Educ. & Research on Toxics*,
        29 F.4th 468 (9th Cir. 2022) ....................................................................................27

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61 (2022) ...............................22

*City of Portland v. Tidyman*, 306 Or. 174 (1988).........................................................................12

*Crawford-El v. Britton,* 523 U.S. 574 (1998) .............................................................................25

*Fidanque v. Oregon Govt. Standards and Practices Com'n*, 328 Or. 1 (1998) .....................14, 15

*German v. Eudaly*, No. 3:17-cv-2028-MO, 2018 WL 3212020 (D. Or. Jun 29, 2018)...........11, 20

*Hartman v. Moore*, 547 U.S. 250 (2006).............................................................................25, 26

*Houston Community College System v. Wilson*, 595 U.S. 468 (2022) ............21, 25, 26, 31, 32, 34

*In re Fadeley*, 310 Or. 548 (1990) ....................................................................................16, 17

*In re Lasswell*, 296 Or. 121 (1983) ...........................................................................................16

*In re Nat'l Sec. Letter*, 33 F.4th 1058 (9th Cir. 2022) .........................................................22, 27

*Legal Aid Servs. of Or. v. Legal Serv. Corp.*, 608 F.3d 1084 (9th Cir. 2010) ........................24, 25

*Linthicum v. Wagner*, 94 F.4th 887 (9th Cir. 2024)..........................................................32, 33, 34

*Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789 (1984).......24, 25

*Mills v. Alabama*, 384 U.S. 214 (1966) ...........................................................................21

*Moser v. Frohnmayer*, 315 Or. 372 (1993)........................................................................14

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .....................................27

*Multnomah County v. Mehrwein*, 366 Or. 295 (2020).......................................................14, 17, 18

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018)......................................22

*Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011) ..................................30, 31, 32, 33, 34

*Nieves v. Bartlett*, 139 S.Ct. 1715 (2019) .......................................................21, 25, 26, 27

*Nordyke v. Santa Clara County*, 110 F.3d 707 (9th Cir. 1997) ...............................................21

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ...............................................................25

*Oregon State Police Ass'n v. State of Oregon*, 308 Or. 531, 536 (1990) .....................................14

*Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or. 275 (2006) ........................12, 15

*Perry v. Sindermann*, 408 U.S. 593 (1972)...................................................................25, 26

*Perry Edu. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983) .................................23, 28

*Picray v. Secretary of State*, 140 Or. App. 592 (1996).........................................................15

*Porter v. Martinez*, 68 F.4th 429 (9th Cir. 2023)..........................................................23, 28

*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ...........................................................22

*Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997) ......................................................22

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002) ....................................................22

*State v. Henry*, 302 Or. 510 (1987).........................................................................12, 14

*State v. Moyer*, 348 Or. 220 (2010) ...........................................................................17

*State v. Moyle*, 299 Or. 691 (1985).............................................................................10

*State v. Plowman*, 314 Or. 157 (1992).......................................................................11, 19

*State v. Robertson*, 293 Or. 402 (1982) ............................................................... *passim*

*State v. Stoneman*, 323 Or. 536 (1996) ...............................................................17

*Tucson v. City of Seattle*, 91 F.4th 1318 (9th Cir. 2024) ...............................23, 24, 28, 29

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994)....................................23

*Twitter, Inc. v. Garland*, 61 F.4th 686 (9th Cir. 2023) ........................................22, 27

*United States v. O'Brien*, 391 U.S. 367 (1968) ...............................................23

*United States v. Hansen*, 599 U.S. 762 (2023) ...............................................27

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) ................................22, 23

*United States v. Swisher*, 811 F.3d 299 (9th Cir. 2016)....................................23

*United States v. Williams,* 553 U.S. 285 (2008) ...............................................6, 28

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ..........................................34

*White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990)..............................31

## **Other**

1 T. Sedgwick, Measure of Damages 71 (7th ed. 1880)....................................34

42 U.S.C. § 1983..........................................................................................34

Corvallis City Charter § 23(c).........................................................................16

Corvallis City Charter § 23(f) ............................................................. *passim*

Oregon Constitution, Article I, section 8 ........................................... *passim*

U.S. Constitution, amend I (First Amendment)................................. *passim*

U.S. Constitution, amend XIV (Fourteenth Amendment) ........................... vii, 6, 21, 35

## MOTION

Plaintiff Charlyn Ellis ("Councilor Ellis") moves the Court for summary judgment against Defendant City of Corvallis ("the City") on her claims for relief under Article I, section 8, of the Oregon Constitution and the First and Fourteenth Amendments to the U.S. Constitution, which challenge the City's attempt to remove her from office based on the substance of comments she made in public meetings about whether the City should fill a vacant position dealing with climate change. The parties conferred in good faith via telephone on March 6, 2024, and again on April 10, 2024, but were unable to resolve the dispute that is the subject of this Motion.

# MEMORANDUM

## I.  Facts

Councilor Ellis is an elected member of the City Council, representing Ward 5. Ellis Decl. at ¶ 3. First elected in 2016, Councilor Ellis is currently serving in her fourth consecutive two-year term, which runs through the end of 2024. *Id.*

She serves with eight other councilors, each of whom has voting rights, and with a non-voting Mayor. The council is the City's governing body, the final decision-maker for the City's legislative and adjudicative matters.

As part of her official duties, Councilor Ellis is a member of (and chairs) the Corvallis Climate Action Advisory Board. *Id.* at ¶ 4. The board is tasked, among other things, with helping Corvallis meet the greenhouse gas emissions target set forth in the Corvallis Climate Action Plan, and with advising the City Council on all matters related to implementation of the plan. *Id.*

On September 13, 2023, at a public meeting of the Climate Action Advisory Board, Councilor Ellis raised a concern that the board didn't have enough support from city staff to fulfill its mission. For example, she said the City had created a position of Climate Program Specialist, but the position was vacant. *Id.* at ¶ 5. The board was persuaded and agreed to ask the City Council to consider directing the city manager to post the position of Climate Program Specialist for hiring. *Id.* The city manager was not present at that meeting. *Id.*

In keeping with that decision by the Climate Action Advisory Board, Councilor Ellis moved the City Council, at a public meeting on September 18, 2023, "to direct the City Manager to post the full-time job position of Climate Program Specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled." *Id.* at ¶ 6. The motion failed. *Id.* The city manager was not present at that meeting. *Id.*

PLAINTIFF'S RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT        1

On November 27, 2023, the mayor, the council president, and the city attorney summoned Councilor Ellis to a private meeting, during which they told her that her statements at the September 13th and September 18th meetings about the Climate Program Specialist position violated section 23(f) of the city charter and that proceedings had been initiated to remove her from office for those violations. Ellis Decl. at ¶ 8.

Section 23(f) contains a broad prohibition against any attempt by the mayor or a council member to directly or indirectly influence the city manager in hiring, firing, and purchasing decisions, on penalty of loss of office. Section 23(f) even prohibits direct or indirect discussion of these topics with the city manager.

> <u>Section 23(f): Interference in administration and elections.</u>
>
> Neither the Mayor nor any member of the Council shall in any manner, directly or indirectly, by suggestion or otherwise[:]
>
> [(i)]    [A]ttempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies; or
>
> [(ii)]    [A]ttempt to exact any promise relative to any appointment from any candidate for Manager, or discuss, directly or indirectly, with the Manager the matter of specific appointments to any City office or employment.
>
> A violation of the foregoing provisions of this section shall forfeit the office of the offender. Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

ECF 11-1 (city charter) at 9, § 23(f).[1]

The allegations and related charges filed by the City against Councilor Ellis are set forth in a document entitled "A Resolution Regarding a Violation of Charter Section 23(f) and Declaring a Vacancy in the Ward 5 Council Position" (hereinafter "the Expulsion Resolution"), and are supported by the Joint Declaration of Mayor Charles Maughan, Council President Tracey Yee, Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James Brewer (hereinafter "the Joint Declaration"). Ellis Decl. at ¶ 9; *id.*, Exs. 1 & 2.

With regard to the September 13th meeting, the Expulsion Resolution alleges that:

> "Councilor Ellis *introduced and discussed* a concern that the Corvallis Climate Action Advisory Board had insufficient staff support to conduct its meetings and work *and advocated* to the Climate Action Advisory Board that it adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties to support the work of the Corvallis Climate Action Advisory Board within a specific amount of time[.]"

---

[1] In its motion for summary judgment, the City presents section 23(f) in an alternative structural form based on what the City states are "the relevant grammatical components." ECF 10 at 9, n. 2. For several reasons, Councilor Ellis disagrees with the City's representation of section 23(f)'s grammatical structure.

First, the City's representation of section 23(f) includes three subsections, labeled (i), (ii), and (iii). ECF 10 at 9, n. 2. But section 23(f)'s use of only one semicolon in its list of prohibited actions suggests that it contains only two subsections, not three. Councilor Ellis's representation of section 23(f) uses the semicolon correctly.

Second, the City's representation of section 23(f) begins the first list item (subsection (i)) with the words "in any manner, directly or indirectly," etc. ECF 10 at 9, n. 2. However, section 23(f)'s use of parallel language (i.e. "*attempt to* influence," "*attempt to* exact"), and the placement of that parallel language in relation to the single semicolon, suggests that the list of prohibited actions begins with the words "attempt to." Accordingly, the language "in any manner, directly or indirectly, by suggestion or otherwise" is prefatory, and should be represented to apply to both subsection (i) and subsection (ii). Councilor Ellis's representation of section 23(f) accounts for this.

For these reasons, the Court should rely on Councilor Ellis's representation of section 23(f) as accurately reflecting its grammatical components.

Ellis Decl., Ex. 1 at 2 (emphasis added). With regard to the September 18th meeting, the resolution alleges that "Councilor Ellis moved 'to direct the City Manager to post the full-time job position of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled[.]'" *Id.*[2]

The Expulsion Resolution charges[3] Councilor Ellis with violating section 23(f) of the City Charter, and calls for her removal from elected office, as follows:

> "[T]he actions of Councilor Ellis at the [September 13th meeting] were a direct and indirect attempt to influence the City Manager in the appointment of an employee and an attempt to discuss indirectly with the City Manager the matter of specific appointment to City employment; and
>
> "[T]he actions of Councilor Ellis at the [September 18th meeting] were a direct attempt to influence the City Manager in the appointment of an employee and an attempt to discuss directly with the City Manager the matter of specific appointment to City employment[.]"

Ellis Decl., Ex. 1 at 3.

The Expulsion Resolution contains no other charges against Councilor Ellis. As the charges themselves make clear, they are based solely on the content of Councilor Ellis's speech. Her speech, not any conduct by her, constitutes "the action" referred to in the resolution.

---

[2] The motion was, of course, made orally. In addition, Councilor Ellis told the council: "So I am asking that the council direct the city manager to post the job [of Climate Program Specialist] so that we can hire, because the work, we are in a climate emergency, we have had the hottest summer on record, and we're just not going to get anywhere unless we have staff, at least not as a city." ECF 11-8 (meeting transcript) at 6; *see also* ECF 11-9 (video recording of meeting - https://vimeo.com/866087718), beginning at 2:19:42.

[3] The City describes the resolution as containing the "charges" against Councilor Ellis. ECF 11-5 (City's local hearing memorandum) at 4-5 (stating that "the City of Corvallis has charged Councilor Ellis with violating the Charter," and that "[t]hese charges are reflected in the [Expulsion] Resolution.").

The Expulsion Resolution concludes by stating that, "based on the recitals set out in this resolution, Councilor Charlyn Ellis violated Section 23(f) of the Corvallis City Charter and has forfeited her office as a Councilor effective immediately." Ellis Decl., Ex. 1 at 3. It then declares her position vacant, and directs the city manager to start the process of finding a replacement for Councilor Ellis's Ward 5 position, which is to be filled by appointment. *Id.*[4]

Councilor Ellis was caught off guard by the subject of the November 27th meeting and by the proposed Expulsion Resolution she received then. Ellis Decl. at ¶ 10. She had no inkling beforehand that she was the subject of a removal proceeding, let alone one based on the content of her speech. *Id*. And because the city attorney—a trusted consultant, someone she had worked with for years and relied upon for legal advice—was at the meeting, she felt compelled to accept his opinion that she had violated the city charter in a way requiring expulsion. *Id.* at ¶ 11. So, ambushed and misled, she told those at the meeting that she would go quietly. *Id*.

Fortunately, she soon got over her initial shock and misunderstanding about the city attorney's "advice." She obtained independent legal counsel and then demanded a hearing on the Expulsion Resolution before the full City Council, to which the City agreed. *Id.* at ¶ 12. That hearing was eventually scheduled for February 5, 2024.

On January 22nd, Councilor Ellis filed this case challenging—on constitutional grounds—section 23(f) and the local removal proceeding itself, and seeking a preliminary injunction, which this Court granted. *See* ECF 9 (minute order). As it stands, the parties agree that the local removal hearing cannot take place while this litigation is pending, and cannot take place at all if Councilor Ellis prevails on one or both of her claims.

---

[4] The City has never withdrawn or amended the Expulsion Resolution, which remains the applicable charging instrument. Buss Decl. at ¶ 3.

## II.  Argument

As explained below, section 23(f) of the Corvallis City Charter and its enforcement against Councilor Ellis violate Article I, section 8, of the Oregon Constitution, and the First Amendment to the U.S. Constitution, made applicable to the states through the Fourteenth Amendment. But first Councilor Ellis will discuss a threshold issue, the resolution of which will determine the scope of review. That issue is whether the prohibitions of section 23(f) *apply* at public meetings of the Climate Action Advisory Board and City Council. *See United States v. Williams,* 553 U.S. 285, 293 (2008) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."). As explained in the following section, they do not.

Resolution of this issue will determine the scope of the Court's review because it may limit the constitutional challenges available to Councilor Ellis. If the Court agrees that the prohibitions of section 23(f) do not apply at public Climate Action Advisory Board and City Council meetings, then there is no need for the Court to proceed to decide Councilor Ellis's as-applied challenges to section 23(f) itself. This is so because, to justify its expulsion proceeding against Councilor Ellis, the City relies entirely on statements she made in those public meetings. But if section 23(f) does not apply in that context, then the expulsion proceeding cannot be based on section 23(f) and there is no reason to reach the as-applied claims challenging it. In that circumstance the Court would instead focus on Councilor Ellis's retaliation and facial challenge claims.

A.     **The prohibitions of section 23(f) do not apply to statements made at Climate Action Advisory Board and City Council meetings.**

Section 23(f)'s final sentence reads as follows:

> "Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City."

*Id.*

This exception applies if Councilor Ellis's statements at the Climate Action Advisory Board and City Council meetings were made "in open session" and in furtherance of "discussing with or suggesting to the Manager [] anything pertaining to the City affairs or the interests of the City." *Id.* They were.

1.     **The Climate Action Advisory Board and City Council meetings were "open sessions."**

The charter does not define "open session," but there can be no dispute about its meaning: an "open session" is a meeting that is open for the public to attend and observe, as opposed to one from which the public is excluded. Open sessions, in other words, are not private or secret; everything that happens in an open session is recorded and subject to scrutiny by members of the public.

The City admits that both the Climate Action Advisory Board meeting and the City Council meeting were "open sessions." Ellis Decl., Ex. 1 (Expulsion Resolution) at 2 ("[O]n September 13, 2023, the Corvallis Climate Action Advisory Board met in open session"); ECF 11-5 (City's local hearing memorandum) at 29 (stating that the City Council meeting "was, indisputably, an 'open session'").

      **2.**      **Councilor Ellis's statements were made in furtherance of "discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City."**

The City argues that Councilor Ellis's statements (at both meetings) were prohibited under section 23(f) because they were not made "in discussion with" and were not "suggestions to" the city manager. *See* ECF 11-5 (City's local hearing memorandum) at 29-30. The City is wrong. All of Councilor Ellis's statements cited by the City were made in furtherance of "discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City." ECF 11-1 (charter) at 9, § 23(f).

First, an aside. The City makes much of the fact that the city manager was not present at either meeting. *See, e.g.,* ECF 11-5 at 29 ("[N]either the City Manager nor any delegate [] were present"). But there is nothing in section 23(f) suggesting that the city manager must be present at a public meeting for a councilor to safely speak.

Just as chess players can communicate from opposite sides of the globe, keeping a game going back-and-forth for months without ever seeing each other, discussions with and suggestions to city managers need not be communicated and received in real time. Such discussions and suggestions can be communicated remotely, can involve delays, and often can be ongoing, with discussions taking place over extended periods of time. Indeed, a significant proportion of modern communications (*e.g.*, email, text messages, and video and audio recordings of various kinds) do not take place live or in-person.

The city manager fully reviewed the recordings of both meetings. *See* ECF 11-13 (letter from city manager to council) at 1 ("I watched the video recording of both the September 18 Council Meeting and September 13 [Climate Action Advisory Board] meeting."). So there is no question that the manager actually received and reviewed any "discussion" and/or "suggestions"

directed at him during those meetings. To the extent section 23(f) requires statements or communications to be directed *at* the city manager, or that he actually receives them, the city manager's later review of the meeting recordings is sufficient.[5]

The City points to no statement made by Councilor Ellis at either meeting that was not made in furtherance of obtaining a "full and free" City Council discussion, including suggestions to the city manager, about "anything pertaining to the City affairs or the interests of the City." ECF 11-1 (charter) at 9, § 23(f). Accordingly, the express exception to section 23(f)'s prohibitions applies to all of Councilor Ellis's statements.

In summary, because section 23(f) does not apply to statements made in Climate Action Advisory Board or City Council meetings, the City's local expulsion proceeding against Councilor Ellis cannot be based on section 23(f). If the Court agrees with that analysis, then it need not address Councilor Ellis's as-applied challenges to section 23(f), and should instead focus on her retaliation and facial challenge claims.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

---

[5] The City's insistence that section 23(f)'s exception applies only when the city manager is personally present at a public meeting makes the exception to the rule inconsistent with the rule itself. As previously noted, section 23(f) purports to prohibit actions of "any manner, directly or indirectly, by suggestion or otherwise," and even prohibits "direct or indirect[]" "discussion" with the city manager. *Id.* Under the City's position, therefore, section 23(f) can be *violated* "indirectly, by suggestion or otherwise," but the *exception* only applies if the city manager is personally present, in real time, at a public meeting.

**B.**     **Article I, section 8, of the Oregon Constitution.**

As explained below, section 23(f) violates Article I, section 8, of the Oregon Constitution, both facially and as applied,[6] and the City's local expulsion proceeding is a form of unlawful retaliation.

**1.**     **Legal standard under Article I, section 8.**

Article I, section 8 provides that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever." In *State v. Robertson*, 293 Or. 402 (1982), the Oregon Supreme Court held that, with a few historical exceptions, Article I, section 8 prohibits content-based restraints on speech. This provision, the Court said in an oft-quoted passage:

> "forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach. * * *"

*Robertson,* 293 Or. at 412.

*Robertson* went on to explain that speech may be regulated by laws that prohibit "the pursuit or accomplishment of forbidden results[,]" even by means of speech. *Id.* at 416-17. Thus, the government can make it unlawful to cause public inconvenience, annoyance, or alarm, and can proscribe speech which has that effect. *See State v. Moyle*, 299 Or. 691 (1985) (rejecting challenge to crime of harassment by telephonic or written threat). But it cannot suppress speech

---

[6] As previously noted, if the Court agrees that the prohibitions of section 23(f) cannot apply to statements made at "open sessions" of the Climate Action Advisory Board and the City Council, there will be no need to reach Councilor Ellis's as-applied challenges.

on certain topics on the ground that such speech might, in some circumstances, discommode, annoy, or alarm.

The distinction, then, is between laws that focus on the content of speech and laws that focus on its effects. *See State v. Plowman*, 314 Or. 157, 163-64 (1992), *cert. den.*, 508 U.S. 974 (1993) (summarizing holding of *Robertson*). Laws that focus on content—so-called "first-category" or "category-one" laws—violate Article I, section 8, unless the prohibition comes within a well-established historical exception. Laws that focus on undesirable effects, but prohibit expression to achieve them, are called "second-category" or "category-two" laws, and are analyzed for "overbreadth." *Id.* at 164. A third category includes laws that focus on effects without referring to expression at all; they are analyzed to determine whether they violate Article I, section 8, as applied. *See id.*

Finally, as under the First Amendment, a plaintiff can bring a claim under Article I, section 8 when they have suffered retaliation based on their protected speech, regardless of whether the retaliation is under cover of law. While the undersigned counsel for Councilor Ellis are aware of no Oregon appellate courts that have addressed the question, in *German v. Eudaly*, No. 3:17-cv-2028-MO, 2018 WL 3212020 (D. Or. Jun 29, 2018), Judge Mosman acknowledged that retaliation claims under Article I, section 8 can be viable:

> "Neither party has cited, nor have I been able to find, any discussion of a freedom of speech retaliation claim under the Oregon Constitution. Against this void, I find that the Article 1, section 8 retaliation jurisprudence would align with federal First Amendment jurisprudence."

*Id.* at *5.[7] Considering that Article I, section 8 provides "broader protections against content-based restrictions than the First Amendment does," *id.*, the Oregon Supreme Court would likely agree with Judge Mosman that retaliation claims are available under Article I, section 8.

In the forty years since *Robertson* was decided, the Oregon Supreme Court has consistently followed its methodology—usually referred to as the *Robertson* "framework" —for analyzing free speech claims under Article I, section 8. *See Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or. 275, 295 (2006) (so noting).

In keeping with *Robertson*, the Oregon Supreme Court has struck down content-based restrictions on expression when it has found no support for them in free-speech jurisprudence circa 1859. In *State v. Henry*, 302 Or. 510 (1987), for example, the court invalidated a statute that prohibited the possession of obscene material, because it was directed at a particular type of expression. The court rejected the state's contention that obscenity fell within a well-established exception to the free-speech guarantee, equivalent to the exceptions for libel, perjury, and forgery. *Id.* at 525. In *City of Portland v. Tidyman*, 306 Or. 174, 182 (1988), the court struck down a city ordinance that prohibited "adult bookstores" in certain locations. The court said the ordinance was unconstitutional because it was "flatly directed against one disfavored type of pictorial or verbal communication[,]" *id.* at 184, in other words, because it was a content-based restraint on speech, and because that restraint did not fall within a "well-established and demonstrably preserved historical exception[.]" *Id.* at 179.[8]

_____

[7] The elements of a First Amendment retaliation claim are addressed later in this brief.

[8] Unlike First Amendment jurisprudence, under which content-based restrictions on expression can sometimes survive based on a "strict scrutiny" analysis (discussed later in this brief), under Article I, section 8, of the Oregon Constitution there is no such possibility. Under *Robertson* and its progeny, if a law is a content-based restraint on expression that does not fit within a well-established historical exception, then it is unconstitutional. Period.

Councilor Ellis's challenges under Article I, section 8 are addressed in turn below.

### 2. Section 23(f) is facially invalid under Article I, section 8.

This case, like all Article I, section 8 challenges to a law, presents a two-step inquiry under the *Robertson* framework. First, the Court should inquire whether section 23(f) contains a content-based restraint on speech. If so—and it is so, as will be seen—the Court should then inquire whether the restraint fits wholly within some well-established historical exception. It doesn't, as will be seen, too.

        **a.**      **(*Robertson* category one): Section 23(f) is facially unconstitutional because it contains a content-based restraint on speech, and that restraint does not fit within a well-established historical exception.**

The first *Robertson* inquiry is easy. Section 23(f) prohibits City Councilors from attempting "in any manner," including "by suggestion," "to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies," or from "discuss[ing], directly or indirectly, with the Manager the matter of specific appointments to any City office or employment." *Id.* These are clearly restrictions on speech, whether written or oral. To discuss is to speak—by definition. And *influencing* and *coercing* can only be accomplished *by* speech in the form of promises or threats. If there is a way for a councilor to influence or coerce the city manager except by words, written or spoken, the section doesn't say what it might be, and neither does the City.

What is more, these are clearly content-based restraints on speech. Councilors are forbidden from talking to the city manager about certain topics only—namely, whether to hire or remove an employee or officer or to purchase supplies. They can talk to him about any other topic under the sun (and to anyone else about those topics too). Speech on any other subject—

from potholes in the streets to parade permits to sewer rates or the budget—is completely unrestricted. Section 23(f) is thus content-based; it discriminates based on the topic of the message. It is "written in terms directed to the substance of any opinion or subject of communication," *Multnomah County v. Mehrwein*, 366 Or. 295, 301 (2020), which makes it a category-one law under *Robertson*.

The second inquiry under *Robertson*—whether section 23(f) falls wholly within some well-established historical exception—is just as easy as the first. "[T]he 'party opposing a claim of constitutional privilege' has the burden of demonstrating that a restriction on speech falls within an historical exception," and it is "a heavy burden." *Moser v. Frohnmayer*, 315 Or. 372, 376 (1993) (quoting *Henry*, 302 Or. at 521). The City cannot carry that burden here. It can't cite a single pre-1857 law—of any kind, anywhere—that prohibited a city councilor from speaking with a city employee about particular topics, let alone city hiring and purchasing. That shouldn't surprise anyone. After all, we are talking about political speech, about how to run a local government, and "[p]olitical speech is an essential form of expression protected by Article I, section 8." *Oregon State Police Ass'n v. State of Oregon*, 308 Or. 531, 536 (1990) (declaring unconstitutional a statute that prohibited state police from engaging in political expression). Section 23(f) is thus facially invalid under Article I, section 8, of the Oregon Constitution.

*Fidanque v. Oregon Govt. Standards and Practices Com'n*, 328 Or. 1 (1998), is on point. At issue there was a law that imposed a registration fee on lobbyists. The law defined "lobbyist" as a person who lobbies, and defined "lobby" as attempting to influence pending legislation through "oral or written communications" with legislators or their staff. *Id.* at 4. The court noted that the fee was *viewpoint*-neutral in the sense that it applied equally to lobbying for a particular bill as to lobbying against it, *id.* at 8, n. 4, and thus applied as much to lobbying by, say, Planned

Parenthood as to lobbying by Right to Life. But, the court said, the law was not "*content-neutral,*" because "[i]ts focus is political speech." *Id.* (emphasis added). The court thus held that the law was unconstitutional, taking it for granted that laws against communicating with legislators or their employees were not well-established when Article I, section 8 was enacted. *See also Outdoor Media Dimensions*, 340 Or. at 294 (explaining *Fidanque*); *see also Picray v. Secretary of State*, 140 Or. App. 592, 596 (1996)*, aff'd by equally divided court*, 325 Or. 279 (1997) (law banning political insignia in polling place was unconstitutional "content-driven limitation of expression"). Laws against communicating with city councilors or their employees were likewise rare, if there even were any.

Since filing its charges in the Expulsion Resolution, the City has apparently decided that section 23(f)'s prohibition against "discussing" certain topics with the city manager is unconstitutional. Although the resolution charges Councilor Ellis for violating that provision (*see* Ellis Decl., Ex. 1 at 3), the City doesn't even mention those charges in its motion for summary judgment.[9]

In sum, section 23(f) contains a content-based restraint on speech that does not fit within a well-established historical exception. Therefore, under *Robertson*, section 23(f) is a "category-one" law that is facially invalid under Article I, section 8, of the Oregon Constitution.

### i.    Nor does the "incompatibility" exception apply to section 23(f).

The City argues that the so-called "incompatibility" exception applies to section 23(f), removing it from category-one scrutiny. ECF 10 (City's motion) at 22-24.

---

[9]    And yet the charges against Councilor Ellis for "discuss[ing], directly or indirectly" certain topics with the city manager remain in the unamended charging instrument. Buss Decl. at ¶ 3. Councilor Ellis therefore remains subject to those unconstitutional charges.

That exception has been applied in only two cases: *In re Fadeley*, 310 Or. 548 (1990), and *In re Lasswell*, 296 Or. 121 (1983). Those cases hold that Article I, section 8, does not prohibit the restraint of speech by a public official that is so incompatible with the official's duties that it "vitiates the proper performance" of those duties. *In re Lasswell*, 296 Or. at 125. And the duties in those cases were foundational in their importance, including ensuring "the right of a criminally accused to a fair trial" (*Lasswell*) and protecting the public's right to "a judiciary that is both honest in fact and honest in appearance" (*Fadeley*). 310 Or. at 563.

The incompatibility exception might apply to a prosecutor's public comments about criminal charges against presumptively-innocent defendants awaiting fair trials before untainted juries. It doesn't apply to a city councilor commenting about a job the council created but hasn't filled. It doesn't vitiate the councilor's proper performance of her duties to discuss the vacancy. To the contrary, *not* discussing it, ignoring it instead, is incompatible with her duties as a member of the City Council in which is vested all powers of the city. ECF 11-1 (charter) at 3, § 7.

The City suggests that councilors commenting on an unfilled city job is incompatible with their duties as councilors under a charter that gives the city manager the authority to fill the position. That makes no sense. The councilors' main duty is to appoint the manager and supervise him in the performance of his duties, which include running the city. *See generally id.* at 7-8, § 23(c) (duties generally); *see also id.* at 8, § 23(c)(7) ("The Manager shall perform such other duties as may be required by this Charter *or as the Council may require*.") (emphasis added). If the councilors can't comment on how the manager is running the city, how he is fulfilling his duties, they can't fulfill their own. Comments of that sort are not incompatible with a councilor's duties, they are inescapable, maybe even obligatory.

Oregon courts have never applied the incompatibility exception to anything other than a rule of professional conduct designed to protect the public from necessarily harmful speech. *See In re Fadeley,* 310 Or. at 563. They would not ever apply it to protect a city manager from the opinions of members of a city council.

### b.  (*Robertson* category two): Section 23(f) is facially unconstitutional because it is overbroad.

The City argues that section 23(f) is a category-two law under *Robertson* rather than a category-one law. *See, e.g.,* ECF 10 (City's motion) at 17-21. While it can sometimes be difficult to classify laws under *Robertson, see State v. Moyer*, 348 Or. 220, 229 (2010), this is clearly a category-one law, at least in part, because it clearly restrains speech based on content, as explained above. But even if some portion of section 23(f) falls within the second *Robertson* category, it would still violate Article I, section 8.

Like category-one laws, category-two laws expressly prohibit speech. *Multnomah County*, 366 Or. at 301. But to fall into that category, the law must expressly regulate speech "only insofar as that speech is linked to a particular harm—that is, where 'the *actual focus* of the enactment is on an *effect* or *harm* that may be proscribed, rather than on the substance of the communication itself.'" *Id.* (*citing State v. Stoneman*, 323 Or. 536, 543 (1996)) (emphasis in original). Under the *Robertson* framework, category-two laws are analyzed for overbreadth and are held facially invalid if they are overbroad. *Multnomah County,* 366 Or. at 302.

Section 23(f) is designed, obviously, to prevent cronyism and patronage. It prevents city councilors from using their control over the city manager, their appointee, to use his hiring authority to give jobs to the councilors' friends, relatives, campaign contributors, political supports, and the like, or to use his purchasing authority to buy goods and services from them or

to award them city contracts. The city attorney acknowledged this when he explained section 23(f) to the council at the meeting where Councilor Ellis presented her motion: "The charter really expects that the city manager is going to do those administrative things. * * * So by - - by adding a level of specificity that you want the city manager *to appoint a particular officer or employee*, I think that's exactly what the charter says you can't do." ECF 10 (City's motion) at 12.[10]

Under the *Robertson* framework, a category-two law must regulate speech "only" insofar as the speech, if not regulated, would cause the particular harm the law is intended to avoid. *See Multnomah County*, 366 Or. at 301. If the law reaches beyond that—to speech unlikely to cause that harm—it is overbroad and, hence, invalid.

In that regard, section 23(f)'s prohibition on speech is clearly overbroad, because it restrains speech on hiring and procuring that is unlikely to encourage patronage or cronyism.[11] Take, for ready example, Councilor Ellis's speech to the Climate Action Advisory Board. She did not ask the board to ask the City Council to fill the vacant Climate Program Specialist

---

[10]  In its motion for summary judgment, the City tries to present section 23(f) as a separation-of-powers provision, designed to keep the City Council from interfering with the duties the charter assigns to the city manager. But that is obviously not the section's purpose, because the charter gives the manager responsibility over a great many municipal operations other than the two mentioned in that section: hiring and purchasing. As even the City concedes, the manager is responsible for, among other things, general supervision of all employees and their work, preparing and submitting budgets, supervising all public utilities, ensuring that all ordinances are enforced, and performing such other duties and the charter or council might assign. *See* ECF 10 (City's motion) at 10-11; ECF 11-1 (charter) at 7-8. If section 23(f) were actually a separation-of-powers provision, it would forbid councilors to discuss *any* of the manager's duties with the manager, not just those two.

[11]  On this point, the City argues in its motion for summary judgment that section 23(f) "does not forbid Council members from making suggestions to the Manager, but rather prohibits attempts to *influence* or *coerce* the Manager[.]" ECF 10 at 19 (emphasis in original). But section 23(f) does—expressly—forbid "suggestions." And what else is a "suggestion" but an attempt to influence? Besides, "influence or coercion" can be innocuous; it does not necessarily, nor even usually, rise to the level of encouraging patronage or cronyism.

position with a friend or relative or campaign contributor or political supporter, *or with anyone in particular*. And yet the prohibition purportedly applies to her speech. Indeed, the prohibition would, by its terms, apply even if Councilor Ellis had asked the board to ask the council not to hire anyone to the position but instead continue to leave it vacant. An anti-patronage, anti-cronyism message would still run afoul of section 23(f). The prohibition is thus unmoored from its purpose. It's overbroad.

If the goal of section 23(f) is to prevent cronyism and patronage, then to pass constitutional muster under Article I, section 8, it must be written in a way that proscribes speech which has that very effect—by, for example, prohibiting councilors from recommending family members, business associates, political donors, or campaign volunteers for city employment or contracts. But section 23(f) cannot contain provisions, as it currently does, that proscribe speech on certain topics on the assumption that such speech *might* have that effect.

In sum, even analyzed as a *Robertson* category-two law, section 23(f) fails constitutional scrutiny under Article I, section 8.

### 3.    The City's local expulsion proceeding is unlawful as applied under Article I, section 8.

As noted above, a third *Robertson* category includes laws that focus on effects without referring to expression at all. Such laws are analyzed to determine whether they violate Article I, section 8, as applied. *See Plowman*, 314 Or. at 164. But here, section 23(f) clearly *does* refer—repeatedly—to expression. Section 23(f) is therefore not a category-three law under *Robertson*.[12]

---

[12]  If section 23(f) were a category three law, however, it would be invalid as applied to the facts of this case because it has been applied by the City as a content-based restraint on speech, and there is no applicable historical exception.

PLAINTIFF'S RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT         19

However, Councilor Ellis still has an as-applied challenge here; it targets the local expulsion proceeding itself. As previously discussed, because statements made at Climate Action Advisory Board and City Council meetings are exempt from the prohibitions of section 23(f), the City's expulsion proceeding cannot, as a matter of law, be authorized under section 23(f). This makes the expulsion proceeding itself, which is justified by no law, directly susceptible to challenge under Article I, section 8. This challenge alleges unlawful retaliation. *See German*, 2018 WL 3212020 at *5 (finding that Oregon's "Article 1, section 8 retaliation jurisprudence would align with federal First Amendment jurisprudence".).

As Judge Mosman did in *German*, this Court should find that a successful First Amendment retaliation claim is also sufficient to support a retaliation claim under Article I, section 8, of the Oregon Constitution. The elements of a First Amendment retaliation claim will be addressed in the following section.

In sum, section 23(f) of the City Charter imposes an ahistorical, content-based restraint on speech under the *Robertson* framework, and the City's local expulsion proceeding constitutes unlawful retaliation under Article I, section 8. As such, both section 23(f) and the expulsion proceeding itself violate Article I, section 8.

### C. First Amendment

While in general, Article I, section 8, of the Oregon Constitution protects speech and expression of *all* kinds, *see, e.g., Bank of Oregon v. Independent News, Inc.,* 298 Or. 434, 439-40 (1985), *clarified*, 298 Or. 819 (1985), the same is not true of the First Amendment. There, all expression is not equal or equally protected, and, as described below, even content-based restraints on expression can sometimes survive, but only if they advance a "compelling" state interest, a standard that is so demanding it is sometimes called strict in theory but fatal in fact.

Even though Article I, section 8 is generally more favorable to plaintiffs than is the First Amendment, here Councilor Ellis should succeed on all her claims. As under Article I, section 8, section 23(f) of the Corvallis City Charter violates (facially and as applied[13]) the First Amendment's prohibition against abridging the freedom of speech. Further, the expulsion proceeding constitutes unlawful retaliation for protected speech.

### 1.    Legal standard under the First Amendment

The First Amendment states that "Congress shall make no law * * * abridging the freedom of speech." U.S. Const., amend. I. This prohibition applies to state and local governments by way of incorporation through the Fourteenth Amendment. *See Nordyke v. Santa Clara County*, 110 F.3d 707, 710 (9th Cir. 1997). The First Amendment also prohibits governments from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech. *Houston Community College System v. Wilson*, 595 U.S. 468, 474 (2022) (*citing Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019)).

First Amendment protections extend to elected officials. *See, e.g., Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 542-43 (9th Cir. 2010). In a recent case involving a local elected official, the Supreme Court reaffirmed that "'[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement' that it was adopted in part to 'protect the free discussion of governmental affairs.' *Houston Community College System,* 595 U.S. at 478 (*citing Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Accordingly, "[t]he First Amendment surely promises an elected representative [] the right to speak freely on questions of government policy," *id.*, and an elected official's role "makes it all the more imperative that they be allowed

---

[13]  Again, if the Court agrees that the prohibitions of section 23(f) cannot apply to statements made at "open sessions" of the Climate Action Advisory Board and the City Council, then there is no need to reach Councilor Ellis's as-applied challenges to section 23(f).

to freely express themselves." *Id.* (citing *Republican Party of Minn. v. White*, 536 U.S. 765, 781 (2002)).

### a.    Facial challenges under the First Amendment.

When enforcing the First Amendment's prohibition against restraints on speech, courts "distinguish between content-based and content-neutral regulations of speech." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018). A regulation of speech is content-based under the First Amendment if it targets speech based on its communicative content—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed. *See Twitter, Inc. v. Garland*, 61 F.4th 686 (9th Cir. 2023), *cert. den.*, *sub nom X Corp. v. Garland,* 144 S.Ct. 556 (2024) (citing *City of Austin v. Reagan Nat'l Advert. of Austin*, *LLC*, 596 U.S. 61 (2022)). "Regulations draw such a distinction if they 'target speech based on its communicative content,' prohibit 'public discussion of an entire topic,' or 'single[] out specific subject matter for differential treatment.'" *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1072 (9th Cir. 2022) (amended opinion) (alteration in original) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 169 (2015)).

Content-based restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."[14] *Reed*, 576 U.S. at 163; *see also Twitter, Inc.*, 61 F.4th at 697 (citing *Reed*). Subjecting content-based restrictions to this analysis is called "strict scrutiny," *In re Nat'l Sec. Letter*, 33 F.4th at

---

[14]    To be narrowly drawn, a "curtailment of free speech must be actually necessary to the solution." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). A restriction is not narrowly tailored "if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997).

1070, although it could also be called "fatal scrutiny." "It is rare that a regulation restricting speech because of its content will ever be permissible." *Playboy Ent. Grp., Inc.*, 529 U.S. at 818.[15]

Content-*neutral* restrictions on speech, by contrast, are subject to "intermediate scrutiny." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994). A content-neutral law is valid under the First Amendment "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Porter v. Martinez*, 68 F.4th 429, 439 (9th Cir. 2023), *cert. den.*, ___ U.S. ___, 2024 WL 759806 (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968), and *United States v. Swisher*, 811 F.3d 299, 312 (9th Cir. 2016)). The law must also "leave open ample alternative channels of communication." *Perry Edu. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983) (discussing time, place, and manner restrictions).

In *Tucson v. City of Seattle*, 91 F.4th 1318 (9th Cir. 2024), the Ninth Circuit describes the applicable standard for facial challenges under the First Amendment:

> "As the Supreme Court recently observed, 'litigants mounting a facial challenge to a statute normally 'must establish that no set of circumstances exists under which the [statute] would be valid.' ' *United States v. Hansen*, 599 U.S. 762, 769 (2023) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). However, '[b]reaking from [this] rule, the [First Amendment] overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications.' *Id.* The Supreme Court has justified this departure from the normal rule of facial invalidation 'on the ground that it provides breathing room

---

[15]  As a reminder, there is no similar "strict scrutiny" analysis under Article I, section 8, of the Oregon Constitution. As previously explained, if under *Robertson* a law is a content-based restraint on expression that does not fit within a well-established historical exception, then it is unconstitutional under Article I, section 8, without regard to whether the government has any compelling interest in the challenged law.

PLAINTIFF'S RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT        23

for free expression.' *Id.* 'Overbroad laws 'may deter or 'chill' constitutionally protected speech,' and if would-be speakers remain silent, society will lose their contributions to the 'marketplace of ideas.' ' *Id.* at 769–70 (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). 'To guard against those harms, the overbreadth doctrine allows a litigant . . . to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak.' *Id.* at 770. 'If the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech,' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid.' *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)).

"Explaining how the doctrine applies, the Court stated that '[t]o justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep.' *Id.* 'In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case.' *Id.* The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.' *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). In determining whether an unconstitutional application is realistic, courts may consider whether that application has occurred in the past. *See Williams*, 553 U.S. at 302 ('[W]e are aware of no prosecution for giving child pornography to the police. We can hardly say, therefore, that there is a 'realistic danger' that § 2252A(a)(3)(B) will deter such activity.'). Courts may also consider whether an unconstitutional application is 'implausible.' *Id.* at 301–02."

*Id.* at 1327-1328. "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).

### b.    As-applied challenges under the First Amendment.

As-applied challenges under the First Amendment require courts to evaluate whether a law is unconstitutional as it has been applied to a litigant's particular speech activity. *Legal Aid*

*Servs. of Or. v. Legal Serv. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010) (citing *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984)). However, the underlying constitutional standard is no different than in a facial challenge. *Legal Aid Servs. of Or.*, 608 F.3d at 1096 (citing *Brooklyn Legal Serv. Corp. v. Legal Serv. Corp.*, 462 F.3d 219, 236 (2d Cir. 2006)).

### c.    Retaliation claims under the First Amendment.

As noted, the First Amendment prohibits governments from subjecting individuals to "retaliatory actions" for having engaged in protected speech. *Houston Community College System,* 595 U.S. at 474. If a government takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim. *Nieves*, 139 S.Ct. at 1722.

Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford-El* v. *Britton,* 523 U.S. 574, 588, n.10, & 592 (1998)*; see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (noting that the government may not punish a person or deprive her of a benefit on the basis of her "constitutionally protected speech"); *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Retaliation for protected speech is unlawful even where disciplinary proceedings are otherwise authorized by law. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (holding that "lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment.").

Elected officials may raise First Amendment retaliation claims against the governments they serve. *See Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) (citing *Blair*, 608 F.3d at 542-

PLAINTIFF'S RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT        25

43). To succeed, the plaintiff must prove that (1) she engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

The first prong is readily met when the plaintiff expresses views and opinions. *Boquist*, 32 F.4th at 775.

The second prong is met if the plaintiff was subjected to a "materially adverse action." *Houston Community College System*, 595 U.S. at 479. "Some adverse actions may be easy to identify—an arrest, a prosecution, or a dismissal from governmental employment." *Id.* at 477 (*citing Nieves*); *see Hartman*, 547 U.S. at 256 (prosecution); *Sindermann*, 408 U.S. at 596–597 (employment). For elected officials, removal from office is the functional equivalent of dismissal from employment. *Blair* made it "very clear" that "retaliatory acts of elected officials against their own" can violate the First Amendment, and that the result in that case would have favored plaintiff had plaintiff's peers on the school board "somehow managed to vote him off the Board or deprive him of authority he enjoyed by virtue of his popular election." 608 F.3d at 545 n.4. As the Ninth Circuit recently and eloquently stated in *Boquist*: "[i]n short, an adverse action against an elected official is material when it prevents the elected official from doing his job, deprives him of authority he enjoyed by virtue of his popular election, or otherwise prevents him from enjoying the full range of rights and prerogatives that came with having been publicly elected." *Boquist,* 32 F.4th at 777 (internal citations and quotation marks omitted).

And the third prong is satisfied if the "protected conduct played a part, substantial or otherwise," in the defendant's wrongdoing. *Nieves*, 139 S.Ct. at 1722 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977)).

## 2. Section 23(f) is facially invalid under the First Amendment.

Section 23(f) contains several provisions that are facially invalid under the First Amendment.

The first is the prohibition against "in any manner, directly or indirectly, by suggestion or otherwise, attempt[ing] to influence or coerce the [City] Manager" in certain matters. *Id.* That provision is content-based because it applies to speech based on the topic discussed or the idea or message expressed. *See Twitter, Inc.*, 61 F.4th at 697. Stated differently, that provision "target[s] speech based on its communicative content," prohibits "public discussion of an entire topic," and "singles out specific subject matter for differential treatment." *In re Nat'l Sec. Letter*, 33 F.4th at 1071. Strict scrutiny therefore applies, and the burden is on the City to satisfy that test. *See Cal. Chamber of Com. v. Council for Educ. & Research on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022). It cannot do so.

Even if the City could demonstrate a "compelling interest" in this provision in some circumstances, it remains unconstitutionally overbroad under the First Amendment (i.e. it is not narrowly tailored). *See United States v. Hansen*, 599 U.S. 762, 770 (2023) ("If the challenger demonstrates that the statute prohibits a substantial amount of protected speech, relative to its plainly legitimate sweep, then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid.") (internal quotation marks omitted). As explained above in relation to Councilor Ellis's Article I, section 8 claim, while combatting cronyism and patronage in politics is a laudable goal, section 23(f)'s

prohibition against attempting to "influence" the city manager "in any manner, directly or indirectly, by suggestion or otherwise" is exceedingly broad.[16] And as this very case demonstrates, there is a "realistic danger" that section 23(f) will be disproportionately applied in unlawful ways. *Tucson*, 91 F.4th at 1328 (citing *Williams*, 553 U.S. at 302). Certainly most written and oral communications from council members to the city manager (even those communications seeking to "influence" him) are not motivated by improper cronyism, patronage, or other forms of corruption. This provision of section 23(f) is therefore unconstitutionally overbroad under the First Amendment.

The second provision of section 23(f) that is facially unconstitutional under the First Amendment is the clause prohibiting City Council members from "discuss[ing], directly or indirectly," certain topics with the city manager. In contrast with the prohibition discussed in the two prior paragraphs (i.e. the "in any manner" prohibition), this one *only* targets speech. It is therefore even more clearly an illegal content-based restriction triggering strict scrutiny.

Section 23(f)'s prohibition on "discussion" is invalid under the First Amendment in all possible circumstances. The City cannot prove that it has a "compelling interest" in it,[17] and, since it captures *all* "discussion" (indirect or direct) with the city manager on certain topics, it is obviously overbroad in the sense that there is a "realistic danger" that it will be

---

[16] For this reason, even if intermediate scrutiny applied here (and it doesn't), the City cannot show that section 23(f)'s "incidental restriction on [] First Amendment freedoms is no greater than is *essential* to the furtherance of" preventing cronyism and patronage. *Porter*, 68 F.4th at 439 (emphasis added). Similarly, because it restricts speech so broadly, limiting even "discussion" with the city manager to official public meetings, section 23(f) does not "leave open ample alternative channels of communication." *Perry Edu. Assn.*, 460 U.S. at 45.

[17] Unlike the separate "in any manner" prohibition, the "discussion" prohibition does not even purport to justify itself as standing in opposition to "influence or coerc[ion]." Charter, § 23(f).

disproportionately applied in unlawful ways. *Tucson*, 91 F.4th at 1328.[18] In other words, the

prohibition is not narrowly tailored.

In summary, section 23(f) is facially invalid under the First Amendment.

### 3.    Section 23(f) and the local expulsion proceeding violate the First Amendment as applied.[19]

Even if section 23(f) is not facially invalid, it is invalid as applied to the facts of this case.

The charging instrument in the local expulsion proceeding, the City's Expulsion

Resolution, sets for the following allegations:

> "WHEREAS, during the September 13, 2023 Corvallis Climate Action Advisory Board meeting, Councilor Ellis *introduced and discussed* a concern that the Corvallis Climate Action Advisory Board had insufficient staff support to conduct its meetings and work *and advocated* to the Climate Action Advisory Board that it adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specified job title and specific duties to support the work of the Corvallis Climate Action Advisory Board within a specific amount of time[…]

> "WHEREAS, in the regular City of Corvallis City Council meeting held September 18, 2023, Councilor Ellis *moved* 'to direct the City Manager to post the full-time job position of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled,' which motion was later amended by substitution."

Ellis Decl., Ex. 1 at 2 (emphasis added).

---

[18]  Conspicuously, while the City has *charged* Councilor Ellis with violating section 23(f)'s "discussion" prohibition, it has not pressed that charge in its motion for summary judgment. *See generally* ECF 10 (City's motion). The special counsel hired by the City has apparently realized that the "discussion" prohibition is invalid.

[19]  If the Court finds section 23(f) facially invalid under the First Amendment, it need not reach this as-applied challenge. *See Free Speech Coalition*, 535 U.S. at 258.

These allegations clearly target Councilor Ellis's speech—her introducing and discussing, her advocating, her moving. And as will be discussed in the next section, that speech was protected under the First Amendment. Accordingly, section 23(f) and the expulsion proceeding violate the First Amendment as applied.

### 4.    The expulsion proceeding is unlawful retaliation for protected speech.

Separate from Councilor Ellis's facial challenge, but related to her as-applied challenge, the City's expulsion proceeding constitutes unlawful retaliation under the First Amendment.

As noted, the elements of a First Amendment retaliation claim are: (1) constitutionally protected activity by the plaintiff; (2) that defendant's actions would "chill a person of ordinary firmness" from engaging in the protected activity; and (3) plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct. *See Ariz. Students' Ass'n,* 824 F.3d at 867. Councilor Ellis addressed the law and facts relating to all three of these elements in her motion for a preliminary injunction, ECF 1-1 at 22-27, and yet the City only appears to dispute the first element, namely: whether Councilor Ellis's speech was *protected* speech. *See* ECF 10 (City's motion) at 25-27. Because elements two and three are apparently not in dispute, Councilor Ellis will not re-state those arguments here. Instead, Councilor Ellis will focus on the parties' actual dispute (i.e. whether her speech was protected under the First Amendment).

There is no question that Councilor Ellis is being prosecuted, so to speak, because of her speech; the City's charging instrument—the Expulsion Resolution—identifies her speech to the Climate Action Advisory Board and City Council as the basis of its prosecution. *See generally* Ellis Decl., Ex. 1 (Expulsion Resolution). Instead, the City argues her speech was unprotected under *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011), which held that an elected

official has no First Amendment right to use "official powers" for expressive purposes. *Id.* at

127; *see* ECF 10 (City's motion) at 24-27.

     *Carrigan* does not apply here for several reasons. First, it bears emphasizing that the

Supreme Court has repeatedly stressed the importance of freedom of expression by elected

representatives. One example is *Bond v. Floyd*, 385 U.S. 116 (1966), where that Court said:

> "The manifest function of the First Amendment in a representative
> government requires that legislators be given the widest latitude to
> express their views on issues of policy [...] Just as erroneous
> statements must be protected to give freedom of expression the
> breathing space it needs to survive, so statements criticizing public
> policy and the implementation of it must be similarly protected.
> [...] The interest of the public in hearing all sides of a public issue
> is hardly advanced by extending more protection to citizen-critics
> than to legislators. Legislators have an obligation to take positions
> on controversial political questions so that their constituents can be
> fully informed by them, and be better able to assess their
> qualifications for office; also so they may be represented in
> governmental debates by the person they have elected to represent
> them. We therefore hold that that disqualification of Bond from
> membership in the Georgia House because of his statements
> violated Bond's right of free expression under the First
> Amendment."

*Id.* at 135-37.[20] As the Supreme Court recently noted in *Houston Community College System*,

"[t]he legislature's action in *Bond* implicated not only the speech of an elected official, it also

implicated the franchise of his constituents." 595 U.S. at 481. *Carrigan* must therefore be applied

cautiously, ensuring that elected officials retain "the widest latitude to express their views []

criticizing public policy and the implementation of it," *Bond*, 385 U.S. at 135-36, and that

---

[20]  The Ninth Circuit has commented that "[c]itizens have an enormous first amendment
interest in directing speech about public issues to those who govern their city." *White v. City of
Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). Under *Bond*, elected lawmakers have just as
robust First Amendment interests and protections in directing speech about public issues to
government, including city managers.

constituents' voices are not inadvertently silenced. *See Houston Community College System*, 595 U.S. at 481-482.

Second, the City is asking this Court to extend *Carrigan* well beyond existing precedent. In *Carrigan*, for example, the Court found that the First Amendment did not protect an elected representative's right to vote on a matter with regard to which the representative had a personal conflict of interest. 564 U.S. at 120, 127. "Voting in legislative meetings [] is the commitment of the legislator's apportioned share of the legislature's power to the passage or defeat of a particular proposal." *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024) (quoting *Carrigan*, 564 U.S. at 125-26) (internal quotation marks omitted).

But the City can point to no case, let alone in the Supreme Court or the Ninth Circuit, holding that mere discussion and oral advocacy by an elected official, or a proposed motion, implicates *Carrigan*. The undersigned counsel for Councilor Ellis are aware of none. Nor does *Carrigan* actually apply to the Ellis situation.

Recently, in *Linthicum*, the Ninth Circuit explained the *Carrigan* standard in this circuit:

> "Under *Carrigan*, any official action in the legislature that tends to 'the passage or defeat of a particular proposal,' is properly understood as a prerogative of membership in that body. No private citizen enjoys the privilege to advance or frustrate legislative action directly in the legislature. The ability to stymie legislation by absenting oneself from a meeting of the Oregon Senate belongs to Senators alone. The use of that power therefore implicates the 'governmental mechanics' of the legislative process, and *Carrigan* makes clear that a legislator 'has no right' under the First Amendment to use that official power 'for expressive purposes.' The Senators attempt to claim a personal First Amendment right to walk out, but *Carrigan* is clear that 'the legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it.' We accordingly reject the Senators' claim that their walkout is anything other than an exercise of legislative power."

*Linthicum*, 94 F.4th at 893. The *Linthicum* court went on to explain that *Carrigan* only applies where an elected representative exercises "legislative power," and that "making statements" for or against a legislative proposal, including on the Oregon Senate floor while the Legislature is in session, is not an exercise of legislative power. *Id.* at 894 (citing *Carrigan,* 564 U.S. at 128) ("A legislator voting on a bill is not fairly analogized to one simply discussing that bill or expressing an opinion for or against it. [T]he latter is exercising personal First Amendment rights.").

       *Carrigan*, therefore, does not apply here. At the Climate Action Advisory Board, Councilor Ellis was merely "making statements," the same as anyone could have done, not just city councilors. Those statements were not an exercise of her "official power" as a councilor. She didn't have to be a councilor to say what she said. Her comments were not like legislators voting on a bill or absenting themselves from the Senate floor to avoid a quorum and thus stymie legislation they did not support. *Compare Linthicum*, 94 F.4th at 893. Anyone could have said what she said at the board meeting, including non-councilor board members, witnesses, and people in the audience.[21]

       *Linthicum* explains that "history can be relevant to determining whether certain activity is protected by the First Amendment":

> "'[A] universal and long-established tradition of prohibiting certain conduct creates a strong presumption that the prohibition is constitutional . . . .' *See* [*Carrigan*, 564 U.S. at 122] (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 785 (2002)). In concluding that Nevada's law passed constitutional muster, *Carrigan* relied on the fact that 'such rules have been commonplace for over 200 years.' *Id.*; *see also id.* at 133 (Alito, J., concurring in part and concurring in the judgment))."

---

[21]  The same cannot be said for the motion Councilor Ellis made at the follow-on council meeting. Presumably, councilors alone can make motions. But, remember, section 23(f) expressly states that it does not apply at council meetings. It's unclear how or why the City thinks Ellis's motion is not covered by that exception.

*Linthicum,* 94 F.4th at 893.

History supports Councilor Ellis here. As in the Article I, section 8, context, the City can point to no well-established historical prohibition against elected representatives asking their administrative employees to post an open position for hiring.[22]

So, to summarize, *Carrigan* does not apply here. Instead, this case is controlled by *Bond* and *Linthicum.* The City expressly seeks to exclude Councilor Ellis from her elected office because of the content of her public expression, but that expression is protected by the First Amendment. And elected officials cannot be excluded from office, completely disenfranchising their constituents, for speech "criticizing public policy and the implementation of it." *Bond*, 385 U.S. at 136. The City's expulsion proceeding therefore constitutes unlawful retaliation under the First Amendment.

### 5.    Councilor Ellis is entitled to damages under 42 U.S.C. § 1983.

Because the City has violated Councilor Ellis's First Amendment right to freedom of expression, she is entitled to monetary damages under 42 U.S.C. § 1983. Councilor Ellis seeks only $1 in nominal damages, which this Court should award. A party whose rights are invaded can always recover nominal damages. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, *800 (2021) (citing 1 T. Sedgwick, Measure of Damages 71 (7th ed. 1880)).

---

[22] Nor, if such a historical prohibition existed, would expulsion from office be a historically appropriate response to a violation of that prohibition. *See Boquist*, 32 F.4th at 782 ("Our research reveals that, unlike censure, the exercise of the power to bar an elected official from the legislative chamber (whether temporarily or permanently) is not a 'long exercised' means of responding to protected speech."); *see also Houston Community College System*, 595 U.S. at 479 (suggesting that "prevent[ing]" an elected official from "doing his job," or "deny[ing] him any privilege of office" would violate the First Amendment).

### III.  Conclusion

Councilor Ellis was elected by the people of Corvallis. If those voters have a problem with the content of Councilor Ellis's public statements, then they can recall her under Article II, Section 18, of the Oregon Constitution. The City Council, however, does not have that power, and to the extent section 23(f) of the Corvallis City Charter suggests otherwise, it is invalid under Article I, section 8, of the Oregon Constitution and the First and Fourteenth Amendments to the U.S. Constitution.

For the above reasons, Councilor Ellis respectfully requests that the Court grant summary judgment in her favor on Claim 1 (violations of Article I, section 8) and Claim 2 (violations of First Amendment). *See* ECF 1-1 (complaint) at 5.

Respectfully submitted this 11th day of April 2024.

<div style="margin-left:40%">

 /s/ Jesse A. Buss
Jesse A. Buss, OSB # 122919
Willamette Law Group, PC
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

 /s/ Thomas M. Christ
Thomas M. Christ, OSB No. 834064
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland OR 97205
Tel: 503-227-1111
Fax: 503-248-0130
Email: tchrist@sussmanshank.com

*Attorneys for Plaintiff Charlyn Ellis*

</div>