**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Jordan E. Pahl, OSB #194335**
JordanPahl@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

*Attorneys for Defendant City of Corvallis*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHARLYN ELLIS, an individual, | Case No. 6:24-cv-00205-AA |
| Plaintiff, | **DEFENDANT CITY OF CORVALLIS'** |
| v. | **REPLY IN SUPPORT OF MOTION** |
| | **FOR SUMMARY JUDGMENT, AND** |
| CITY OF CORVALLIS, acting by and through the Corvallis City Council, | **OPPOSITION TO PLAINTIFF'S** |
| | **CROSS-MOTION FOR SUMMARY** |
| Defendant. | **JUDGMENT** |

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.    The only issue before this Court is whether the Influence or Coercion Clause passes muster under the Oregon and United States Constitutions. ..............2

        A.    Councilor Ellis only has standing to raise a constitutional challenge to the Influence or Coercion Clause...........................................................2

            1.    Councilor Ellis is only alleged to have violated the Influence or Coercion Clause..........................................................4

            2.    Councilor Ellis does not have standing to bring either an as-applied or facial challenge to the inapplicable provisions of Section 23(f)....................................................................................5

        B.    Whether Councilor Ellis in fact violated the Influence or Coercion Clause is not a "threshold" question for this Court to resolve....................7

    II.    Neither the Influence or Coercion Clause nor proceedings enforcing the Influence or Coercion Clause violate the Oregon Constitution. .............................9

        A.    The Influence or Coercion Clause is properly analyzed under the second *Robertson* category, and passes constitutional muster....................9

        B.    If the Court were to analyze the Influence or Coercion Clause under the first *Robertson* category, it is nevertheless valid under the incompatibility exception...................................................................13

        C.    Councilor Ellis cannot maintain an as-applied challenge because the City agrees that the Influence or Coercion Clause does not fall into the third *Robertson* category....................................................15

        D.    Councilor Ellis does not have a claim for retaliation under the Oregon Constitution....................................................................................16

    III.    The Influence or Coercion Clause does not violate the First Amendment either facially or as-applied....................................................................................17

        A.    Intermediate scrutiny applies to the Influence or Coercion Clause. ..........17

        B.    The Influence or Coercion Clause survives intermediate scrutiny. ...........20

        C.    Councilor Ellis cannot sustain a facial challenge because she admits that the Influence or Coercion Clause is not unconstitutional in all or a substantial number of its applications.............21

        D.    Councilor Ellis' as-applied challenge fails because the Influence or Coercion Clause is valid under the First Amendment and Councilor Ellis' conduct was not constitutionally protected. ...................22

IV.     Councilor Ellis' First Amendment retaliation claim fails for the same
        reasons her as-applied challenge fails: her conduct was not constitutionally
        protected..................................................................................................................22

CONCLUSION........................................................................................................................23

CERTIFICATE OF COMPLIANCE..........................................................................................24

# TABLE OF AUTHORITIES

Cases                                                                                     Page(s)

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. —, 141 S. Ct. 2373 (2021)...................................................... 21
*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979).......................................................................... 4
*Biodiversity Legal Found. v. Badgley*,
  309 F.3d 1166 (9th Cir. 2002) ............................................................ 4
*Blair v. Bethel Sch. Dist.*,
  608 F.3d 540 (9th Cir. 2010) ............................................................ 23
*Bucklew v. Precythe*,
  587 U.S. 119 (2019).......................................................................... 21
*Bullard v. Wastequip Mfg. Co. LLC*,
  CV14-01309 MMM (SSx), 2015 WL 12766467 (C.D. Cal. Apr. 14, 2015)............. 16
*City of Eugene v. Miller*,
  318 Or. 480 (1994)............................................................................ 15
*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015).......................................................................... 21
*City of Portland v. Tidyman*,
  306 Or. 174 (1988)............................................................................ 11
*Clapper v. Amnesty Int'l*,
  568 U.S. 398 (2013).......................................................................... 3
*Colacurcio v. City of Kent*,
  163 F.3d 545 (9th Cir. 1998) ............................................................ 20
*Fidanque v. State ex rel. Oregon Gov't Standards & Pracs. Comm'n*,
  328 Or. 1 (1998)............................................................................... 15
*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998) ............................................................ 22
*German v. Eudaly*,
  No. 3:17-CV-2028-MO, 2018 WL 3212020 (D. Or. June 29, 2018) .................. 16
*Get Outdoors II, LLC. v. City of San Diego*,
  506 F. 3d 886 (9th Cir. 2007) ........................................................ 5, 6
*Gilliland v. Easton*,
  No. 6:22-cv-00496-MO, 2023 WL 6850237 (D. Or. Oct. 16, 2023)................... 16
*In re Nat'l Sec. Letter*,
  33 F.4th 1058 (9th Cir. 2022) ...................................................... 18, 19
*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ............................................................ 16
*Libertarian Party of L.A. Cnty. v. Bowen*,
  709 F.3d 867 (9th Cir. 2013) ............................................................ 5
*Linthicum v. Wagner*,
  94 F.4th 887 (9th Cir. 2024) ...................................................... 17, 22
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................... 3, 5

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011)........................................................................................ 22
*Nieves v. Bartlett*,
  139 S. Ct. 1715 (2019)...................................................................................... 8
*Norton v. Ashcroft*,
  298 F.3d 547 (6th Cir. 2002) ......................................................................... 18
*Porter v. Martinez*,
  68 F.4th 429 (9th Cir. 2023) .......................................................................... 20
*Quinlan v. City of Seattle*,
  No. 2:22-cv-445-TSZ-TLF, 2023 WL 9750576 (W.D. Wash. Dec. 22, 2023) ........................ 16
*Spirit of Aloha Temple v. County of Maui*,
  49 F.4th 1180 (9th Cir. 2022) ........................................................................ 21
*State v. Babson*,
  355 Or. 383 (2014)................................................................................... 10, 15
*State v. Moyer*,
  225 Or. App. 81 (2009), *aff'd*, 348 Or. 220 (2010) ....................................................... 9
*State v. Moyer*,
  348 Or. 220 (2010)........................................................................................ 10
*State v. Moyle*,
  299 Or. 691 (1985)........................................................................................ 12
*State v. Robertson*,
  293 Or.  (1982) ............................................................. 9, 10, 11, 13, 15, 16
*State v. Spencer*,
  289 Or. 225 (1980)......................................................................................... 9
*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)........................................................................................ 3
*Texas v. United States*,
  523 U.S. 296 (1998)........................................................................................ 3
*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ........................................................................... 4
*Twitter, Inc. v. Garland*,
  61 F.4th 686 (9th Cir. 2023) ....................................................................... 18, 19
*United States v. O'Brien*,
  391 U.S. 367 (1968)....................................................................................... 20
*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989)............................................................................... 17, 18, 20
*Warden v. Pataki*,
  35 F. Supp. 2d 354 (S.D.N.Y.)........................................................................... 19
*Waters v. Churchill*,
  511 U.S. 661 (1994)..................................................................................... 7, 8
*Wilson v. Dep't of Corr.*,
  259 Or. App. 554 (2013).................................................................................. 11
*Wright v. Illinois Dep't of Child. & Fam. Servs.*,
  40 F.3d 1492 (7th Cir. 1994) ............................................................................. 7

Statutes

ORS 132.560(4) .................................................................................................................. 5
ORS 161.505 ..................................................................................................................... 5

## INTRODUCTION

The City of Corvallis ("the City") seeks summary judgment against each of the three claims City Councilor Charlyn Ellis ("Councilor Ellis") asserts in this lawsuit. The first claim, based on Article I, section 8 of the Oregon Constitution, should be dismissed because the Influence or Coercion Clause in Section 23(f) of the City Charter is a content-neutral restriction that is not overbroad, and its enforcement against Councilor Ellis does not violate her constitutional rights. The second claim, based on the First Amendment to the U.S. Constitution, should be dismissed because the Influence or Coercion Clause is not unconstitutional in all circumstances, does not prohibit such a broad range of conduct as to be constitutionally overbroad, and does not violate First Amendment rights as applied to Councilor Ellis. And the third claim, for retaliation, should be dismissed because Councilor Ellis cannot meet her burden of proving that she engaged in protected conduct.

Councilor Ellis' opposition and cross-motion fails to show that any of her claims survive summary judgment. Plaintiff focuses on inapplicable provisions of Section 23(f) and asserts claims not properly before the Court, and in so doing fails to engage with the Oregon and federal caselaw holding that her conduct in making motions directing the City Manager to take specific hiring actions is not constitutionally protected. Additionally, Councilor Ellis essentially argues that the City should find a narrower way to stop attempts to influence and coerce the City Manager, rather than the clear rule—articulated in the Influence or Coercion Clause. That clause prohibits such attempts to coerce and influence while allowing Councilors to engage in good faith with the City Manager on matters of staffing, including asking when positions may be filled or requesting resources to support goals and efforts established by the Council.

Because neither the Oregon nor the U.S. Constitutions prevent the City from enforcing narrowly tailored provisions aimed at maintaining the separation of powers between the City Council and the City Manager and preventing corruption, the Influence or Coercion Clause passes muster under well-established state and federal constitutional standards, and repercussions

**Page 1 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

for violations of that Clause do not violate Councilor Ellis' free speech rights.  For those reasons, Councilor Ellis' constitutional challenges to the Influence or Coercion Clause, as well as her claim for retaliation, are unviable as a matter of law.

## ARGUMENT

**I.**    **The only issue before this Court is whether the Influence or Coercion Clause passes muster under the Oregon and United States Constitutions.**

Councilor Ellis has raised several issues in Plaintiff's Motion for Summary Judgment and Response to Defendant's Cross Motion  (Dkt. 15) that are not before the Court, including constitutional challenges to inapplicable provisions of Section 23(f) and the merits of the underlying alleged violation of the Influence or Coercion Clause.  For clarity, the City lays out here the pertinent legal issues for examination and decision.

### A.    **Councilor Ellis only has standing to raise a constitutional challenge to the Influence or Coercion Clause.**

Councilor Ellis fails to distinguish between the discrete provisions of Section 23(f) of the Corvallis City Charter.  (Decl. of  Kerry J. Shepherd in Support of Def.'s Mot. for Summ. J. ("Shepherd Decl.") (Dkt. 11), Ex. 1.)  Of the three prohibitions identified in Section 23(f)—the Influence or Coercion Clause, the Promises Clause, and the Specific Appointments Clause[1]—

---

[1] Although Councilor Ellis suggests an alternative interpretive framework for Section 23(f) (Dkt. 15 at 9-10), that alternative framework has no bearing on the constitutional analysis here.  The City maintains that its suggested framework—divided into the three Influence or Coercion, Promises, and Specific Appointments Clauses—is the proper reading of Section 23(f). Councilor Ellis' alternative framework collapses the Promises Clause and Specific Appointments Clause, but that is beside the point.

Because, as described below, the City does not contend that Councilor Ellis violated either the Promises Clause or the Specific Appointments Clause, and the surrounding clauses still apply with equal effect to the Influence or Coercion Clause, Councilor Ellis' collapsing of Section 23(f) has no bearing on the analysis.  In other words, for purposes of this litigation, Section 23(f)'s relevant parts read as follows:

Neither the Mayor nor any member of the Council shall in any manner, directly or indirectly, by suggestion or otherwise, *attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of*

**Page 2 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

Councilor Ellis has standing to challenge only the Influence or Coercion Clause; nothing more is before this Court.  The City's allegations as presented for the Due Process Hearing were predicated solely on the assertion that Councilor Ellis violated the Influence or Coercion Clause of Section 23(f), which specifically prohibits Councilors from, "*in any manner, directly or indirectly, by suggestion or otherwise, attempt[ing] to influence or coerce the Manager in the making of any appointment or removal of any officer or employee*."  (*See* 1/22/2024 City of Corvallis Due Process Hearing Memorandum ("Hearing Memorandum"), Shepherd Decl. Ex. E at 25 ("Councilor Ellis Violated the Influence or Coercion Clause of Section 23(f).").)

To establish standing, a party must show an injury that is "[1] concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling."  *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted).  This "irreducible constitutional minimum" requires that the party suffer "an invasion of a legally protected interest[.]"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Additionally, the case must be "ripe" and not based on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).  Thus, an injury that is only possible is not enough—there must be a "substantial risk" that the harm will occur.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Clapper*, 568 U.S. at 411-12 (rejecting a standing theory premised on a speculative chain of possibilities).

When challenging a statute on constitutional grounds, the ripeness and standing requirements are met if the plaintiff "face[s] a realistic danger of sustaining a direct injury as a

---

supplies. . . .  A violation of the foregoing provisions of this section shall forfeit the office of the offender.  Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

(Emphasis added).  For ease of reference, the City continues in this brief to refer to the above-italicized portion of Section 23(f) as the "Influence or Coercion Clause."

**Page 3 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

result of the statute's operation or enforcement," rather than an "imaginary or speculative" threat. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citation omitted). In other words, there must be a "genuine threat of imminent prosecution." *Id.*; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.") (internal quotation marks omitted). Moreover, standing is assessed based on the facts of the case at the time the action was commenced. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002).

> **1.    Councilor Ellis is only alleged to have violated the Influence or Coercion Clause.**

The only issue before the City Council at the scheduled Due Process Hearing was whether Councilor Ellis violated the Influence or Coercion Clause of Section 23(f). Nothing more. (Hearing Memorandum at 25 ("Councilor Ellis Violated the Influence or Coercion Clause of Section 23(f)."; *see also id.* at 31 ("Councilor Ellis violated the Influence and Coercion Clause of Section 23(f) by attempting to influence and coerce the City Manager by directing him to make specific staffing and hiring decisions[.]") Those were the facts at the time Councilor Ellis filed her Complaint in this action.

Councilor Ellis argues, nevertheless, that the draft resolution shared with her in November and December 2023 constitutes a "charging instrument" that "remains in effect" because it has never been "withdrawn or amended." That is plainly wrong. The key fact is what the City was pursuing when it filed its Due Process Hearing Memorandum.

Other than as an attachment to the Hearing Memorandum for factual background, the Draft Resolution has never been presented to the City Council for a vote or consideration of the merits of the allegations contained in the Draft Resolution. Although it references the Draft Resolution, the Hearing Memorandum likewise makes it clear that, at the Due Process Hearing,

the City intended to allege *only* violations of the Influence or Coercion Clause.  (Hearing Memorandum at 5 ("The actions of Councilor Ellis violated Section 23(f) in that they were both direct and indirect attempts, by suggestion or otherwise, to influence or coerce the City Manager in the appointment of an employee or officer.").)  In other words, the only reference to other sections of Section 23(f) is in a draft document, never presented to the City Council for resolution on its merits.[2]  Therefore, the only provision of Section 23(f) at issue is the Influence or Coercion Clause.

> ### 2.  Councilor Ellis does not have standing to bring either an as-applied or facial challenge to the inapplicable provisions of Section 23(f).

To pursue a facial constitutional challenge to a restriction before it is enforced against them, a plaintiff must demonstrate "an actual and well-founded fear that the challenged statute will be enforced."  *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013).  Challenges alleging that a law is unconstitutionally overbroad under the First Amendment are subject to a slightly different standing analysis.  *Get Outdoors II, LLC. v. City of San Diego*, 506 F. 3d 886, 891 (9th Cir. 2007).  In that context, the Ninth Circuit has explained that it follows a string of recent decisions from other circuits "holding that the three [*Lujan v. Defenders of*

---

[2] Councilor Ellis refers to the Draft Resolution as a "charging instrument," which is a term of art in criminal law.  ORS 132.560(4) ("'[C]harging instrument' means any written instrument sufficient under the law to charge a person with *an offense*, and shall include, but not be limited to, grand jury indictments, informations, complaints and uniform traffic, game or boating complaints." (emphasis added)).  Councilor Ellis cites no authority for the proposition that this term applies outside of the criminal context, especially given that "offense" refers to "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state."  ORS 161.505.  Violations of Section 23(f) do not constitute an "offense" because the Charter does not provide for a term of imprisonment or a fine for violations.  Likewise, it is not apparent that the Draft Resolution would have been "sufficient under the law to charge" Councilor Ellis with a violation of Section 23(f).  Again, the Draft Resolution was a *draft* of a resolution slated for presentation to the City Council for its consideration, with no force of law without an action by the City Council to ratify or adopt it.  And, as described, the Draft Resolution was never actually presented to the City Council for consideration, other than as factual background for the City's Hearing Memorandum.

**Page 5 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

*Wildlife*, 504 U.S. 555 (1992)] elements [injury in fact, fairly traceable to the challenged conduct, that is likely to be redressed by a favorable decision] still apply in the overbreadth context." *Get Outdoors II*, 506 F.3d at 891. Accordingly, Councilor Ellis' standing to challenge the portion of Section 23(f) that applies to her (the Influence or Coercion Clause) "does not provide [her] with a passport to explore the constitutionality of every provision of" Section 23(f). *Id.* at 892 (citation omitted). A plaintiff simply "cannot leverage [her] injuries under certain, specific provisions to state an injury under [Section 23(f)] generally." *Id.*

Here, Councilor Ellis has not demonstrated a credible threat of prosecution of any provision of Section 23(f)—other than the Influence or Coercion Clause—at the time her legal counsel filed this lawsuit on January 22, 2024, after 9 pm. (*See* 1/22/24 Pl.'s Compl. for Declaratory and Injunctive Relief ("Compl.") at 1.) The City's Due Process Hearing Memorandum—filed before noon earlier that same day (*see* Shepherd Decl at ¶¶ 2-3)—made this abundantly clear. And, as described above, the City does not contend that Councilor Ellis violated either of the remaining provisions of Section 23(f) (or, in Councilor Ellis's alternative grammatical framework, subsection ii). The City specifically elected not to proceed under the Specific Appointments Clause because, consistent with its other allegations, the City does not view Councilor Ellis' conduct as "discussing"—or attempting to "discuss"—anything with the City Manager. Rather, Councilor Ellis' conduct, as described in the City's Hearing Memorandum, constituted attempts to influence or coerce the City Manager. Councilor Ellis attempted to direct the City Manager to take specified actions, and a directive is not a discussion.[3]

---

[3] Councilor Ellis suggests that the City's election not to proceed with allegations that she violated the Specific Appointments Clause constitutes an admission that that provision is constitutionally defective. (Dkt. 15 at 36 n.18.) The City makes no such admission or concession. Rather, as explained, the City elected not to proceed with that allegation because, in the City's view, Councilor Ellis' conduct did not constitute a "discussion" prohibited by the Specific Appointments Clause. Indeed, the City agrees that any alleged violation of the Specific Appointments Clause occurring at the City Council meeting would necessarily have to be a

It is beyond dispute that the only provision at issue is the Influence or Coercion Clause, and there was and is no actual or well-founded fear of enforcement of any other, alternative provision of Section 23(f) at the time this lawsuit was filed. Therefore, Councilor Ellis only has standing to challenge—either facially or as-applied—the Influence or Coercion Clause.

**B.      Whether Councilor Ellis in fact violated the Influence or Coercion Clause is not a "threshold" question for this Court to resolve.**

It is not a federal court's role to assess the underlying merits of the allegations against Councilor Ellis under the City Charter. That is for the City Council to decide. The City is not aware of any case suggesting—and Councilor Ellis does not cite any—that a federal court considering the constitutionality of a local law must first determine whether that local law was, in fact, violated. And that is not the case here.

Councilor Ellis may have a basis to challenge the "substantive accuracy" of the City Council's ultimate decision—if it ever comes to one—but the Constitution does not provide an avenue for such a challenge. *Waters v. Churchill*, 511 U.S. 661, 679 (1994) (holding, in the context of a claim for First Amendment retaliation against a public employee, that "an employee may be able to challenge the substantive accuracy of the employer's factual conclusions under state contract law, or under some state statute or common-law cause of action[,] . . . [b]ut this protection is not mandated by the Constitution"); *see also Wright v. Illinois Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1506 (7th Cir. 1994) (describing, also in a First Amendment retaliation claim in the public employment context, that "[i]n this case, the Department suspected that Wright had at least misled the court, if not committed outright perjury. Whether Wright did,

_____

"discussion" that is subject to the safe harbor provision of Section 23(f), which excludes from its general prohibitions "discussi[ons] with or suggesti[ons] to the Manager" by "the Council, while in open session." Again, as described in the City's Motion for Summary Judgement and its Hearing Memorandum, Councilor Ellis is not accused of discussing or attempting to discuss anything with the City Manager. She made a direct motion, rather than a discussion. Likewise, for the reasons stated above in footnote 2, the City disputes Councilor Ellis' characterization of the Draft Resolution operating to have "charged" her with violations of the City Charter.

**Page 7 –**      DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

in fact, commit perjury is a matter for the Department to work out as an original matter, and then perhaps for a court hearing on an action under state law." (internal citations omitted)).

To this point, state law provides the process for enforcing forfeiture of an elected office by a public official.  In the event that the City Council ultimately determines that Councilor Ellis did, in fact, violate the Influence or Coercion Clause, and that determination requires judicial enforcement, the proper procedural vehicle for such enforcement is ORS 30.510(2) ("An action at law may be maintained in the name of the state, upon the information of the district attorney, or upon the relation of a private party against the person offending, . . . [w]hen any public officer . . . does or suffers an act which, by the provisions of law, makes a forfeiture of the office of the public officer[.]").  The mechanics of enforcement of the forfeiture provision under Section 23(f) of the Charter had not yet come to pass when this lawsuit was filed, and are not before the Court.

Similarly, in other First Amendment retaliation contexts, a "plaintiff pressing a [First Amendment] retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).  In considering retaliation claims in both the public employment and retaliatory arrest contexts, the federal court tethers its analysis to the reasonableness of the actions taken in response to the allegedly protected conduct:  an analysis which may take into account, but does not depend on, the substantive merits of the underlying alleged violation.  *See Waters*, 511 U.S. at 678 (1994) ("In those situations, many different courses of action will necessarily be reasonable.  Only procedures outside the range of what a reasonable manager would use may be condemned as unreasonable."); *see also Nieves*, 139 S. Ct. at 1725 (2019) ("[W]hen reviewing an arrest, we ask whether the circumstances, viewed objectively, justify the challenged action, and if so, conclude that action was reasonable whatever the subjective intent motivating the relevant officials." (cleaned up)).[4]  It is not the

---

[4] To the extent that the Court were to consider the merits of the allegations against Councilor Ellis, the City's position was laid out in its Due Process Hearing Memorandum for the City Council to consider.  And were the Court to determine that engagement on the merits of the

**Page 8 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO
CROSS-MOTION FOR SUMMARY JUDGMENT

federal court's role to assess whether Councilor Ellis violated the Influence or Coercion Clause, and doing so would not be relevant to the legal questions before this Court.

## II.    Neither the Influence or Coercion Clause nor proceedings enforcing the Influence or Coercion Clause violate the Oregon Constitution.

### A.    The Influence or Coercion Clause is properly analyzed under the second *Robertson* category, and passes constitutional muster.

Although Councilor Ellis states that the inquiry mandated by *State v. Robertson*, 293 Or. 415 (1982), here is "easy," courts typically do not consider the *Robertson* analysis to be easy—especially when distinguishing between a first- and second-category law. *State v. Moyer*, 225 Or. App. 81, 89 (2009), *aff'd*, 348 Or. 220 (2010) ("Although describing the [*Robertson*] framework can be accomplished without much difficulty, applying it has proved somewhat more challenging to the courts. In particular, the line between a first-category regulation (one that targets the content of speech) and a second-category regulation (one that targets only the harmful effects of speech) has proved somewhat elusive.").

Here, the analysis has a roadmap because *Robertson*, which laid out the test in question, dealt with a statute similar to the restriction at issue here. Oregon law is well-defined that statutes prohibiting an effect that may be achieved—exclusively or otherwise—through speech are analyzed under the second *Robertson* category. This mode of analysis is not only mandated by the caselaw interpreting *Robertson*, but by *Robertson* itself, which dealt with a coercion statute:

> [I]t cannot be said that the coercion statute does not forbid speech. We agree that because the statute is directed in terms against the pursuit of a forbidden effect and not, like the disorderly conduct provision in [*State v.*] *Spencer*[, 289 Or. 225 (1980)], against forbidden speech as such, it is not a law whose enactment was for this reason alone wholly withdrawn from legislative authority by article I, section 8. But because speech is

---

Charter violation was appropriate at this time and in this Court, the City requests that the Court schedule a separate hearing focusing on that factual determination.

a statutory element in the definition of the offense, the statute is susceptible to attack for possible overbreadth.

*Robertson*, 293 Or. at 415. In establishing the three-category test, the *Robertson* court expressly held that a statute prohibiting coercion—like the Influence or Coercion Clause—was *not* "a law whose enactment was for this reason alone wholly withdrawn from legislative authority by article I, section 8," *id.*; in other words, it did not fall into the first category of presumptively invalid, content-based restrictions on speech. Rather, the coercion statute merely included speech as a "statutory element in the definition of the offense" and, therefore, was "susceptible to attack for possible overbreadth," *id.*: the method of analysis for second category laws, *see State v. Babson*, 355 Or. 383, 391 (2014) (holding that laws falling under the second *Robertson* category are analyzed under this category for overbreadth, where a "court determines whether the law is overbroad, and, if so, whether it is capable of being narrowed").

Here, the Influence or Coercion Clause specifies the harm it seeks to prevent: influencing or coercing the City Manager. Councilor Ellis wrongly contends that, because "*influencing* and *coercing* can only be accomplished *by* speech in the form of promises or threats," (Dkt. 15 at 20 (emphasis in original)), such a restriction must fall into the first *Robertson* category. That is incorrect. The City does not dispute that expressive conduct of some kind is required to influence or coerce—in other words, it is an element of the offense—and, therefore, as described in greater detail below, the City does not contend that the Influence or Coercion Clause should be analyzed under *Robertson*'s third category.

Whether the prohibited conduct can *only* be accomplished by speech, however, is not the inquiry under *Robertson*. Rather, the proper inquiry is whether the statute is directed, by its terms, at the harmful effects of expression: put differently, whether the statute is *only* violated when the harmful effect is attempted or accomplished. *See Robertson*, 293 Or. at 416-17 ("[L]aws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end."); *see also State v. Moyer*, 348 Or. 220, 232 n.4 (2010) (holding that the law at

**Page 10 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

issue did not fall into the second *Roberston* category "[b]ecause the targeted effects are not expressed in the statute"); *see also City of Portland v. Tidyman*, 306 Or. 174, 184 (1988) (holding that the restriction at issue fell into the first *Robertson* category, because the text of the ordinance failed to reference the undesired effect at which it was supposedly directed); *Wilson v. Dep't of Corr.*, 259 Or. App. 554, 559 (2013) (holding that a rule prohibiting inmates from receiving sexually explicit material which poses a threat to security or discipline fell into the second *Robertson* category because the rule "specifies a variety of harms and prohibits expression only when it would pose a threat of one or another of those harms").

As applied here, the Influence or Coercion Clause is not overbroad and therefore passes muster under the second *Robertson* category. Indeed, Councilor Ellis concedes that "Section 23(f) is designed, obviously, to prevent cronyism and patronage." (Dkt 15. at 24.) But she then claims, without further explanation, that "'influence or coercion' can be innocuous; it does not necessarily, or even usually, rise to the level of encouraging patronage or cronyism." (*Id.* at 25 n.11.) Councilor Ellis also contends that the Influence or Coercion Clause prohibits making suggestions to the City Manager. (Pl.'s Mot. at 18 n.11.) That is not correct. The Influence or Coercion Clause prohibits attempts to influence or coerce the City Manager, which may be *achieved* "by suggestion or otherwise." She fails to acknowledge that Section 23(f) contains a specific intent requirement; in order to violate the Influence or Coercion Clause, the offending Council member must "*attempt* to influence or coerce the Manager." As described in the City's Motion, if a Council member does not *intend* to "influence or coerce" the City Manager, then they have not violated the Influence or Coercion Clause. (Def.'s Mot. for Summ. J. (Dkt. 10) at 21.) And she fails to acknowledge another important purpose of the Influence or Coercion Clause: effectuating and maintaining the separation of powers between the City Manager and the City Council.

Councilor Ellis similarly does not offer examples of a possible narrower restriction that could achieve the desired end, nor does she offer examples of clearly protected conduct that the

**Page 11 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

Influence or Coercion Clause might reach.  *See, e.g.*, *State v. Moyle*, 299 Or. 691, 702 (1985) (listing examples of conduct that the statute at issue might be read to prohibit).  In other words, Councilor Ellis fails to articulate how the Influence or Coercion Clause extends beyond its intended purpose, to reach innocent conduct.

Councilor Ellis admits that she did, in fact, intend to coerce and influence the City Manager, including making statements "that may be interpreted as intended to 'influence' the city manager."  (Decl. of Charlyn Ellis in Supp. of Pl.'s Mot. for Summ. J. (Dkt. 16) ¶ 18.) Additionally, Councilor Ellis' own experiences on the City Council belie her contention that the Influence or Coercion Clause's reach is too broad.  In other circumstances, Councilor Ellis has meaningfully engaged with the City Manager on matters of hiring without running afoul of the Influence or Coercion Clause—or, for that matter, any other provision of Section 23(f).  The minutes of the City of Corvallis Budget Commission meeting, which took place on May 4, 2023, reflect that "[i]n response from Councilor Ellis, [City] Manager [Mark] Shepard said they could not make a commitment to the number of [full time employees] that would be committed to support the CAAB and [Imagine Corvallis Action Network], as it will be determined during the transitioning process."  (Decl. of Mark Shepard in Supp. of Def.'s Reply in Supp. of Mot. for Summ. J. ("Shepard Decl.") Ex. 1 at 6.)  Section 23(f) was not implicated by this exchange.

In other instances, Councilor Ellis came closer to the line.  For example, in 2018, Councilor Ellis had a meeting with a new project manager before her contract was finalized, about cost proposals for managing the various boards, including the CAAB.  (Decl. of James K. Brewer in Supp. of Def.'s Reply in Supp. of Mot. for Summ. J. ("Brewer Decl.") Ex. 1.)  As part of an email chain discussing the allocation of funds between various boards, Mr. Shepard informed Councilor Ellis, along with the other individuals included on the email chain, that the contractor in question had made a cost proposal and negotiations were ongoing.  (*Id.*) Mr. Shepard provided an explanation of some of the budgetary considerations, and then raised

**Page 12 –**     DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

several concerns for the group, including "skating very close to an inadvertent violation of our

Charter." (*Id.*)  Mr. Shepard explained:

> The Charter prohibits the Mayor or Councilors from influencing the [City Manager's]
> hiring of staff and purchasing of supplies/services.  The contractor for CAAB is a
> purchased service.  I don't believe [Councilor Ellis'] intent is to influence me in my
> negotiations.  However, her discussion with the contractor while I am engaged in active
> negotiations and expressing her desire for a certain expenditure comes close to the line on
> this issue.  While I think we have avoided this from compromising my ability to negotiate
> with the contractor, it has confused things and made the process more difficult and could
> have led to a breakdown in the negotiations.  [Councilor Ellis] should have brought her
> question to me rather than talk with the contractor.

(*Id.*)

Ultimately, Councilor Ellis contends that there must be a narrower way to prevent City

Council members from attempting to influence or coerce the City Manager than a restriction

specifically prohibiting attempts at influencing or coercing the City Manager.  There is not.

Because the Influence or Coercion Clause does not "announce[] a prohibition that reaches

conduct which may not be prohibited," *Robertson*, 293 Or. at 410 (citation omitted), it is not

overbroad and therefore passes muster under the second *Robertson* category.

**B.**    **If the Court were to analyze the Influence or Coercion Clause under the first**
***Robertson* category, it is nevertheless valid under the incompatibility**
**exception.**

The Corvallis City Charter contemplates a clear separation of powers between a City

Council with authority over policy matters and a City Manager with authority over

administrative decisions.  As explained in the City's Motion, matters of City administration and

operations, including hiring, are specifically reserved in the Charter for the City Manager, and

those functions are incompatible with the role of Councilor.

Councilor Ellis has argued that the incompatibility exception does not extend "to a city

councilor commenting about a job the council created but hasn't filled" and that it does not

"vitiate the councilor's proper performance of her duties to discuss the vacancy." (Dkt. 15 at

23.)  These contentions are both incorrect for a few reasons.  First, Councilor Ellis' conduct did

**Page 13 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO
CROSS-MOTION FOR SUMMARY JUDGMENT

not constitute "comments" or "discussions." She sought to use the mechanisms of the Council and her coercive powers as a Councilor to direct the Manager to take certain actions that neither she nor the Council had the authority to order. These actions were directives; not good faith "comments" or "discussions." Second, Councilor Ellis is incorrect in her assertion that there was a current, vacant position at the time these meetings occurred. There was no such job vacancy. (Shepard Decl. ¶¶ 8-9.)

The City agrees with Councilor Ellis that one of the duties of the Councilors is to appoint the City Manager and supervise him in the performance of his duties. (Dkt. 15 at 23.) To that end, Councilor Ellis could have (but did not):

- Sent an email or met privately with the City Manager to ask about the status of hiring or assigning staff to support CAAB's regular meetings;

- Asked in open session for an update on hiring;

- Expressed her frustration that CAAB was having difficulty in arranging meetings and needed some administrative support;

- Moved to discipline the City Manager as part of a job performance review in the event she believed the City Manager was failing to fulfill his responsibilities;

- Moved per Sections 11 and 12 of the Charter for the Council to create a brand-new appointive office, on par with the City Manager, City Attorney, and Municipal Judge, that would be appointed by and report directly to Council, and without any Manager oversight.

(Brewer Decl. ¶ 7.)

What Councilor Ellis chose to do, however, stepped over the line of permissible actions by a Council member and is incompatible with her position, as contemplated by the Charter. For these reasons, if the Court determines that the Influence or Coercion Clause should be analyzed

under the first *Robertson* category, the restriction nevertheless is valid under the incompatibility exception.[5]

    **C.    Councilor Ellis cannot maintain an as-applied challenge because the City agrees that the Influence or Coercion Clause does not fall into the third *Robertson* category.**

An as-applied challenge alleging that enforcement of a law violates a plaintiff's Article I, section 8, rights only arises when the law falls into the third *Robertson* category. *City of Eugene v. Miller*, 318 Or. 480, 490 (1994) (describing that the "as applied inquiry arises out of the third Robertson category") (internal quotation marks omitted). Neither the City nor Councilor Ellis contend that the Influence or Coercion Clause falls into *Robertson*'s third category: laws that focus only on forbidden effects with no reference to expression. *See Babson* 355 at 391 ("If the law focuses on forbidden effects, and the proscribed means of causing those effects includes expression, then the law is analyzed under the second *Roberston* category. . . . If, on the other hand, the law focuses *only* on forbidden effects, then the law is in the third *Robertson* category[.]" (emphasis added)). Only category three laws are subject to as-applied challenges. *Id.* (describing that, where a law falls into *Robertson*'s third category, "an individual can challenge the law as applied to that individual's circumstances").

---

[5] Additionally, Councilor Ellis devotes a portion of her brief to pointing out that the City cannot carry the burden of demonstrating that the Influence or Coercion Clause falls under a well-established historical exception to Article I, section 8 of the Oregon Constitution, and contends that *Fidanque v. State ex rel. Oregon Gov't Standards & Pracs. Comm'n*, 328 Or. 1, 7 (1998), supports this position. (Dkt. 15 at 21-22.) The City does not, for the record, attempt to carry that burden, as it does not contend that the Influence or Coercion Clause falls into one of the few, well-established historical exceptions that permit first Robertson category laws to nevertheless remain in effect. Additionally, for the reasons described in the City's Motion, *Fidanque* is neither on-point here, nor analytically useful. (Dkt. 10 at 20 n.4.) Namely, the statute at issue in *Fidanque* was not—like the Influence or Coercion Clause here is—focused on preventing an undesired effect. Second, as described in the City's Motion, *Fidanque* is a notoriously tortured opinion, whose holding cannot easily be extrapolated to circumstances beyond the context of lobbying as a profession, professional regulations, and registration fees, and the Influence or Coercion Clause is none of those things.

**Page 15 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

Councilor Ellis does not cite—and the City is not aware of—any cases holding that a proceeding to enforce a law falling into either the first or second category of the *Robertson* test is susceptible to an as-applied challenge.  Because there is no dispute that the Influence or Coercion Clause does *not* fall into *Robertson*'s third category, Councilor Ellis cannot sustain an as-applied challenge under the Oregon Constitution.

### D. Councilor Ellis does not have a claim for retaliation under the Oregon Constitution.

For the first time in her Cross-Motion, Councilor Ellis argues a non-existent claim for retaliation under the Oregon Constitution.  (Dkt. 15 at 27.)  While she asserted a claim for retaliation under the First Amendment, she did not, in her Complaint, assert a claim for retaliation under the Oregon Constitution.

A party may not raise a claim for relief for the first time in a motion for summary judgment or a response to a motion for summary judgment.  *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (a plaintiff "may not effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary judgment"); *Gilliland v. Easton*, No. 6:22-cv-00496-MO, 2023 WL 6850237, at *4 (D. Or. Oct. 16, 2023) (plaintiff "cannot now effectively amend his pleadings to add new claims or defendants through his Response to Defendants' Motion for Summary Judgment."); *Quinlan v. City of Seattle*, No. 2:22-cv-445-TSZ-TLF, 2023 WL 9750576, at *5 (W.D. Wash. Dec. 22, 2023) ("It is improper to raise new claims in response to a summary judgment motion."); *Bullard v. Wastequip Mfg. Co. LLC*, CV14-01309 MMM (SSx), 2015 WL 12766467, at *10 (C.D. Cal. Apr. 14, 2015) ("It is well-settled in the Ninth Circuit that parties generally cannot assert unpled theories for the first time at the summary judgment stage.").

Even if the Court were inclined to consider Councilor Ellis' untimely assertion of a claim for retaliation under the Oregon Constitution, as Councilor Ellis notes, no Oregon court has recognized such a claim.  *German v. Eudaly*, No. 3:17-CV-2028-MO, 2018 WL 3212020, at *5 (D. Or. June 29, 2018) ("Neither party has cited, nor have I been able to find, any discussion of a

freedom of speech retaliation claim under the Oregon Constitution.").  To the extent that such a claim were to exist, it would fail because the Influence or Coercion Clause is a valid restriction, and violations of that provision are not protected speech which could give rise to a retaliation claim.  *See Linthicum v. Wagner*, 94 F.4th 887, 895 (9th Cir. 2024) (holding that the Senator plaintiffs were unlikely to prevail on the merits of their First Amendment retaliation claim because their conduct in walking out of the legislature was an exercise of legislative power not protected under the First Amendment).

### III.    The Influence or Coercion Clause does not violate the First Amendment either facially or as-applied.

#### A.    Intermediate scrutiny applies to the Influence or Coercion Clause.

Councilor Ellis provides little analysis regarding whether the Influence or Coercion Clause is content-based or content-neutral for purposes of determining whether strict or intermediate scrutiny applies.  (Dkt. 15 at 34.)  She states summarily that the Clause "is content-based because it applies to speech based on the topic discussed or idea or message expressed." (*Id.*)  That is not the test applied in a First Amendment analysis.  As described in the City's Motion, "[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The Ninth Circuit in *Linthicum v. Wagner* recently considered the validity of an Oregon constitutional amendment disqualifying from appearance on the ballot for the next election state senators and representatives who had accrued 10 or more absences from legislative floor sessions.  94 F.4th 887 (2024).  Although the *per curiam* majority decision did not discuss content-neutrality, Judge Bybee's concurrence did.  Judge Bybee concluded that the disqualification provision was "facially content neutral," comparing it to the content-neutral ethics rule the Supreme Court considered in *Carrigan*.  *Id.* at 898 (Bybee, J., concurring).  In other words, the fact that the disqualification amendment had "an incidental effect on some

speakers and messages but not others" did not render it content-based.  *Id.* at 896 (Bybee, J., concurring) (quoting *Ward*, 491 U.S. at 791).

In another example, *Norton v. Ashcroft*, the Sixth Circuit considered the constitutionality of a federal statute which allowed civil penalties against individuals who threaten, intimidate, or interfere with, or attempt to threaten, intimidate, or interfere with individuals obtaining or providing reproductive health services.  298 F.3d 547, 552 n.1 (6th Cir. 2002).  Anti-abortion activists challenged the law on First Amendment grounds, arguing that the law constituted a content-based restriction on speech.  *Id.* at 552.  The court held that portions of the law impacted protected expression, but "in a content-neutral manner."  *Id.* at 552-53.  The court concluded that the law "prohibit[ed] interference with not only abortion-related services, it also prohibits interference with counseling regarding abortion alternatives," and that it "applie[d] to anyone who violates its terms, regardless of ideology or message."  *Id.* at 553.  Thus, the Sixth Circuit applied intermediate scrutiny to the plaintiff's First Amendment challenge, and agreed with "[e]very circuit court to address this challenge," all of which had previously "ruled that the [law was] not impermissibly vague" under an intermediate scrutiny analysis.  *Id.*

The two cases Councilor Ellis cites for the proposition that strict scrutiny applies are not to the contrary.  Both cases, *Twitter, Inc. v. Garland*, 61 F.4th 686 (9th Cir. 2023), *cert. denied sub nom. X Corp. v. Garland*, 144 S. Ct. 556 (2024), and *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1062 (9th Cir. 2022) (collectively, "the National Security Cases"), arose in the highly specific context of national security and nondisclosure obligations.[6]  Both cases dealt, in part, with

---

[6] Additionally, although Councilor Ellis refers to strict scrutiny as "fatal scrutiny," (Dkt. 15 at 27, 30), it is worth noting that the courts in both of the National Security Cases held that the challenged nondisclosure obligations *withstood* strict scrutiny.  *Twitter*, 61 F.4th at 702; *In re Nat'l Sec. Letter*, 33 F.4th at 1076.  Councilor Ellis appears to assume that, were strict scrutiny to apply, that finding would be "fatal in fact" (Dkt 15. at 27) to the Influence or Coercion Clause.  The City does not concede that, were strict scrutiny to apply, the Influence or Coercion Clause would fail.

**Page 18 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION
                 FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO
                 CROSS-MOTION FOR SUMMARY JUDGMENT

national security letters ("NSL"), which are "a form of administrative subpoena," issued by the Federal Bureau of Investigation.  *In re Nat'l Sec. Letter*, 33 F.4th at 1063.  "By statute, the NSL may include a requirement that the recipient not disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records[.]"  *Id.*  Because the recipients of the NSLs in question were prevented from disclosing the fact of its issuance, the Ninth Circuit held, in both National Security Cases, that such nondisclosure requirements were content-based.  *Id.*; *see also Twitter*, 61 F.4th at 697.  The restrictions at issue in the National Security Cases bear virtually no resemblance to the Influence or Coercion Clause, and analysis of those restrictions is not instructive here.

In focusing on the National Security Cases, Councilor Ellis fails to address the caselaw that squarely addresses a provision like the Influence or Coercion Clause.  As described in the City's Motion, the Southern District of New York considered a New York law which placed a similar restriction on community board members.  *Warden v. Pataki*, 35 F. Supp. 2d 354 (S.D.N.Y.), *aff'd sub nom Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999).  (*See* Dkt. 10 at 27-28.) The court found that the statute—which prohibited community board members from "interfering with" or being "involved in" certain hiring matters—was content-neutral, because "it prohibit[ed] interference with the hiring process of certain school personnel irrespective of whether a community board member is seeking to support a candidate or oppose him, and without reference to the reasons for the community board member's position."  *Id.* at 364.

The same is true of the Influence and Coercion Clause.  Councilor Ellis admits, in fact, that the Clause applies equally to *pro*-cronyism and *anti*-cronyism messages.  (Dkt. 15 at 26 ("[T]he prohibition would, by its terms, apply even if Councilor Ellis had asked the board to ask the council not to hire anyone to the position but instead continue to leave it vacant.  An anti-patronage, anti-cronyism message would still run afoul of Section 23(f).").)  In short, the Influence or Coercion Clause is directed at preventing *any* undue influence on the City Manager in matters of hiring, regardless of the purpose or direction of that influence.

**Page 19 –**      DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

B.      **The Influence or Coercion Clause survives intermediate scrutiny.**

The Influence or Coercion Clause is narrowly tailored to advance an important government interest, and therefore survives intermediate scrutiny. Councilor Ellis asserts that the City cannot show that the applicable restrictions[7] are "no greater than is essential to the furtherance of the [substantial government] interest" furthered by the restrictions. *Porter v. Martinez*, 68 F.4th 429, 439 (9th Cir. 2023), *cert. den.*, ___ U.S. ___, 2024 WL 759806 (2024) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).

For a restriction to pass intermediate scrutiny, it must not "burden substantially more speech than is necessary." *Ward*, 491 U.S. at 798-799. Courts "generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." *Colacurcio v. City of Kent*, 163 F.3d 545, 555 (9th Cir. 1998).

Councilor Ellis does not appear to dispute that preventing corruption, cronyism, and patronage is an important government interest. (Dkt. 15 at 34 ("[C]ombatting cronyism and patronage is a laudable goal[.]") As described above, in the discussion regarding overbreadth under the Oregon Constitution, Councilor Ellis cannot show that the Influence or Coercion Clause imposes restrictions greater than those essential to prevent attempts by the Council members to influence or coerce the City Manager or to effectuate the separation of powers contemplated by the Charter. The City has provided many examples of alternative channels of communication that the Influence or Coercion Clause leaves open—including Councilor Ellis' own prior conduct. Councilor Ellis fails to describe how these channels of communication of which she has previously availed herself are insufficient to achieve her desired end of raising

---

[7] Councilor Ellis confines her intermediate scrutiny argument to a footnote, in which she addresses only the Specific Appointments Clause. (Dkt. 15. at 35 n.16.) For the reasons explained above, the Specific Appointments Clause is not at issue here.

**Page 20 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

issues of staffing with the City Manager in open sessions of the Council.  Because the Influence or Coercion Clause does not reach beyond what is necessary to achieve its proper, intended purpose, it is sufficiently narrowly tailored to survive intermediate scrutiny.

### C.    Councilor Ellis cannot sustain a facial challenge because she admits that the Influence or Coercion Clause is not unconstitutional in all or a substantial number of its applications.

"[C]lassifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated[.]"  *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).  To mount a successful facial challenge, the plaintiff "must establish that no set of circumstances exists under which the [law] would be valid, or show that the law lacks a plainly legitimate sweep."  *Ams. for Prosperity Found. v. Bonta*, 594 U.S. —, 141 S. Ct. 2373, 2387 (2021) (alteration in original; internal quotation marks and citation omitted).  In other words, "[a] facial challenge is really just a claim that the law or policy at issue is unconstitutional *in all its applications*."  *Bucklew*, 587 U.S. at 138 (emphasis added).  But in the First Amendment context, "a law may be invalidated as overbroad [a type of facial challenge] if a *substantial number* of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Bonta*, 141 S. Ct. at 2387 (citation omitted; emphasis added).  Facial challenges are "the most difficult to mount successfully[.]"  *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015) (alteration adopted and citation omitted).  And they are "generally disfavored."  *Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1188 (9th Cir. 2022).

Councilor Ellis cannot demonstrate that a "substantial number" of the Influence or Coercion Clause's applications are unconstitutional, relative to its legitimate reach.  In fact, Councilor Ellis admits that *some* restriction on interference with the City Manager's authority over hiring is appropriate.  (Dkt. 15 at 34-35.)  As discussed relative to the Oregon constitutional overbreadth analysis, Councilor Ellis fails to articulate how the Influence or Coercion Clause reaches beyond its intended purpose, and likewise fails to offer examples of either possible narrower restrictions that could achieve the desired end or clearly protected conduct that the

**Page 21 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

Influence or Coercion Clause might reach.  Because she cannot demonstrate that a substantial number of the applications of the Influence or Coercion Clause are unconstitutional, Councilor Ellis' facial challenge fails.

> **D.    Councilor Ellis' as-applied challenge fails because the Influence or Coercion Clause is valid under the First Amendment and Councilor Ellis' conduct was not constitutionally protected.**

The City does not dispute that elected officials like Councilor Ellis retain First Amendment protections.  Councilor Ellis fails to acknowledge, however, that elected officials have no First Amendment—or any other—"right to use official powers for expressive purposes." *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011).  As the Ninth Circuit recently held: "[A]ny official action in the legislature that tends to the passage or defeat of a particular proposal, is properly understood as a prerogative of membership in that body.  No private citizen enjoys the privilege to advance or frustrate legislative action directly in the legislature." *Linthicum*, 94 F.4th at 893 (internal citations and quotation marks omitted) (applying the holding in *Carrigan* to legislative walkouts).

To succeed on an as-applied challenge, a plaintiff must demonstrate that the challenged restriction is unconstitutional as applied to their particular speech activity—in other words, the restriction, applied in their case, reached protected conduct.  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998).  For the reasons explained in the City's Motion, Councilor Ellis has no right to use Council mechanisms—namely, making motions—for expressive purposes. *Linthicum*, 94 F.4th at 893.  For that reason, Councilor Ellis' as-applied challenge fails.

**IV.    Councilor Ellis' First Amendment retaliation claim fails for the same reasons her as-applied challenge fails: her conduct was not constitutionally protected.**

For the same reasons described above, and for the reasons stated in the City's Motion, Councilor Ellis' First Amendment retaliation claim fails.  Each element of a First Amendment retaliation claim depends on the existence of protected conduct:

**Page 22 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO CROSS-MOTION FOR SUMMARY JUDGMENT

(1) [s]he engaged in *constitutionally protected activity*; (2) as a result, [s]he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from *continuing to engage in the protected activity*; and (3) there was a substantial causal relationship between the *constitutionally protected activity* and the adverse action.

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (emphasis added).  Because her conduct was not constitutionally protected—as described extensively above—Councilor Ellis cannot meet the requirements of such a claim.  (Dkt. 10 at 31-33.)

## CONCLUSION

For the foregoing reasons, the City of Corvallis is entitled to summary judgment on all three of Councilor Ellis' claims.  The City requests that the Court grant its Motion for Summary Judgment, deny Councilor Ellis' Cross-Motion, and dismiss Councilor Ellis' claims with prejudice.

DATED:  May 2, 2024.          MARKOWITZ HERBOLD PC

*s/ Kerry J. Shepherd*

_____
Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Jordan E. Pahl, OSB #194335
JordanPahl@MarkowitzHerbold.com
*Attorneys for Defendant*

**Page 23 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO
CROSS-MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains 8,304 words, including headings, footnotes, and quotations,

but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits,

and any certificates of counsel.

2138094.4

**Page 24 –**    DEFENDANT CITY OF CORVALLIS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S TO
CROSS-MOTION FOR SUMMARY JUDGMENT