**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Jordan E. Pahl, OSB #194335**
JordanPahl@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

*Attorneys for Defendant City of Corvallis*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHARLYN ELLIS, an individual, | Case No. 6:24-cv-00205-AA |
| Plaintiff, | **DECLARATION OF JAMES K. BREWER IN SUPPORT OF CITY OF CORVALLIS' REPLY TO MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF CORVALLIS, acting by and through the Corvallis City Council, | |
| Defendant. | |

I, James K. Brewer, declare as follows:

1.      I retired from the practice of law on March 29, 2024.  Prior to retirement, I served

as the City Attorney and Deputy City Attorney for the City of Corvallis, Oregon over the course

of 31 years.  I also served as the City Attorney for Philomath and Harrisburg, and I represented

the Oregon Cascades West Council of Government, along with representing other local

governments and private clients in the Mid-Willamette Valley and Central Coast.  I have

personal knowledge of the facts set forth herein.  I make this declaration in support of the Reply

**Page 1 –**      DECLARATION OF JAMES K. BREWER

Doc ID: 57ad0d03aa72412c848da51ba19ade2088b6441b

in Support of the City of Corvallis' Motion for Summary Judgment and in Opposition to

Plaintiff's Cross-Motion for Summary Judgment.

2.      The role of the Corvallis City Attorney is to provide legal guidance and counsel to

the Corvallis City Council and City staff in their capacities as the City's elected officials and

employees.  In this manner, the City Attorney represents the interests of the City and not the

individuals or the personal interests of City Councilors or staff.  My legal guidance included

educating and training City Councilors on the City Charter and our form of government,

specifically including the Charter's mandates on separating the duties and functions of elected

officials from executive, administrative, and operational responsibilities assigned exclusively to

the City Manager.

3.      The Charter delineates between the Council's policymaking responsibilities and

the Manager's responsibilities for personnel, operations, and administration, among other things.

The City has hundreds of full-time employees, part-time employees, and seasonal positions.

With extremely limited exceptions and clear delineation, the Council has no Charter authority for

hiring, firing, delegating, instructing, and supervising any of the City's employees or officers.

The Charter forbids the Councilors from trying to influence or coerce the Manager's

responsibilities over personnel.  This separation of powers between the Council and the Manager

is a form of government in which Council is responsible for determining policy and what

resources will be available to conduct City business and operations, and the Manager is solely

responsible for the implementation and utilization of those resources to obtain, as the Charter

states, "the utmost efficiency in the departments."

4.      The Manager is selected by Council without regard to political considerations;

serves for an indefinite term; and may be removed only by Council.  The Manager advises the

**Page 2 –**      DECLARATION OF JAMES K. BREWER

Council on the affairs and needs of the City and reports to the Council.  And, the Manager is the chief executive officer and administrator of all City business, including responsibility and authority for all personnel, hiring, firing, reviewing, supervising, delegating, assigning projects, and directing all employees and officers and all departments.  With regard to personnel, the Council's extremely limited role is appointing and reviewing the performance of the City Manager, the City Attorney, and the Municipal Judge—or other positions created by the Council for direct appointment by the Council.

        5.       Councilor Charlyn Ellis has served on the Council for approximately seven years. During that time, I educated Councilor Ellis in writing and orally on her role as an elected Councilor and the Manager's responsibilities as the administrative head of City government. Councilor Ellis is aware of, from our meetings and from Council orientation materials, the Council / Manager form of government, as described above and set forth in the Charter.  I have also educated Councilor Ellis on the ramifications of attempting to interfere or influence the Manager's responsibilities over personnel issues, which is forfeiture of the elective office.

        6.       I attended the Corvallis City Council meeting on September 18, 2023.  I was not aware in advance of the meeting that Councilor Ellis had notified staff that she intended to make two motions.  I later came to learn that Councilor Ellis' first motion was to direct the City Manager to post a full-time position for the job of Climate Program Specialist within two weeks, and the second being a motion to direct the Manager to appoint a temporary support staff position for monthly meetings of the CAAB until the permanent position was filled.  During the course of the meeting Councilor Ellis made the first of these motions.  As the City Attorney, I explained contemporaneously that a motion directing the Manager to appoint an employee is "disallowed by the Charter."  I made it clear at the time to Councilor Ellis that she could express

Doc ID: 57ad0d03aa72412c848da51ba19ade2088b6441b

her frustrations and needs, or she could raise issues with the Manager's job performance, but

Councilor Ellis could not direct that the Manager take any action.  I further advised that a

Councilor can make a motion for an outcome, such as supporting Councilor Ellis' advisory board

in efforts to continue their work as soon as possible, and then allow the Manager to determine

how to achieve that outcome.  I stand by that legal guidance.

      7.      I believe that Councilor Ellis' conduct during the City Council meeting on

September 18 was inconsistent with Section 23(f) of the City Charter.  Councilor Ellis appeared,

in those moments and in her motion to City Council, to be directly or indirectly attempting to

influence the Manager in the appointment (or removal) of an employee that was exclusively the

Manager's responsibility.  There were many alternative and appropriate means for Councilor

Ellis to seek support for meetings of the advisory board, but she did not take them.  By way of

example only, Councilor Ellis could have:

      a.      Sent an email or met privately with the Manager to ask about the status of

hiring or assigning staff to support CAAB's regular meetings;

      b.      Asked in open session for an update on hiring;

      c.      Expressed her frustration that CAAB was having difficulty in arranging

meetings and needed some administrative support;

      d.      Made a motion to discipline the Manager as part of a job performance

review in the event she believed the Manager was failing to fulfill their

responsibilities; and

      e.      Made a motion per Sections 11 and 12 of the Charter for the Council to

create a brand-new appointive office, on par with the Manager, City Attorney, and

Doc ID: 57ad0d03aa72412c848da51ba19ade2088b6441b

Municipal Judge, that would be appointed by and report directly to Council, and

without any Manager oversight.

Rather than take any of these actions, Councilor Ellis made a motion to direct the Manager on a

personnel matter in violation of Section 23(f).  I believed then, as I do now, that Councilor Ellis

knew the consequences and risks of doing so.

8.      Some weeks following the City Council meeting mentioned above, I watched the

video recording of the Climate Action Advisory Board meeting chaired by Council Ellis on

September 13, 2023.  I came away with the firm belief that Councilor Ellis violated Section 23(f)

of the Charter during that advisory board meeting.  To be clear, the CAAB advisory board

meetings are not meetings of the City Council.  Rather, these are public meetings of an advisory

body that require some administrative effort by City staff assigned by the Manager.  Rather than

recommend that the CAAB advise the Council to take any of the possible actions that I described

above, and more, to address her staffing concerns for CAAB, Councilor Ellis used this advisory

meeting to develop motions to the City Council that would direct the Manager about how to do

his job in hiring staff (rather than a contractor), managing staff, assigning staff, whether this staff

person (or persons) should be permanent or temporary (or both), and the qualifications of the

person(s) she wanted for the job.  This, too, could have been managed in myriad of ways without

violating Section 23(f) of the Charter, yet Councilor Ellis proceeded in a way that would

effectively direct the Manager's job responsibilities.  The video recording of this meeting also

showed Councilor Ellis offering instructions to the CAAB members about how to best organize

their statements to the Council in support of adopting the proposed motion for the upcoming

Council meeting.

**Page 5 –**      DECLARATION OF JAMES K. BREWER

9.      On November 27, 2023, Councilor Ellis met with Mayor Charles Maughan, Council President Tracey Yee, and me as the City Attorney.  The purpose of the meeting was to give notice to Councilor Ellis of our belief that she had violated Section 23(f) of the Charter, and to provide notice that as the matter was one for the City Council as a whole to determine, it would be on the agenda for the next Council meeting.  We provided her with a draft resolution for the Council to consider at its next meeting, and discussed the process going forward— including the opportunity for a hearing before City Council.  Mayor Maughan and Council President Yee presented the draft resolution and went through its contents.  Within the draft resolution there is a quote of Section 23(f) from the Charter.  Councilor Ellis read this provision, affirmed that she violated its provisions, stated that she would resign, and asked to announce her resignation in an open session with City Council on December 4, 2023.  The group agreed to remove the bulk of the provisions of the draft resolution as they would not be necessary.  Later, at a meeting at my office on December 1, 2023, Councilor Ellis notified me that she had changed her mind about resigning, in response to which leadership changed the agenda for the December 4, 2023 City Council meeting and prepared another revised draft resolution, largely returning to the original content, which is reflected in a letter dated December 6, 2023 to Councilor Ellis.

10.      Councilor Ellis' actions on September 13 and 18, 2023, were not her first or second exposures to Section 23(f) of the Charter.  I had educated her on this provision and the separation of powers concepts that are expressed in the Charter, as summarized above. Separation of powers was the subject of communications with Councilor Ellis in February 2018, as well.  Councilor Ellis had involved herself in staffing issues when she wanted to be certain that the City Manager would pay the contractor who was to staff the CAAB a specific amount

**Page 6 –**      DECLARATION OF JAMES K. BREWER

rather than negotiating a best price, which caused the Manager to send an email to Councilor

Ellis attached as Exhibit 1.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May ___, 2024, at Corvallis, Oregon.
05 / 01 / 2024

_____
James K. Brewer

**Page 7 –**        DECLARATION OF JAMES K. BREWER