IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**CHARLYN ELLIS,**

          Plaintiff,                      No. 6:24-cv-00205-AA

      v.                              **OPINION & ORDER**

**CITY OF CORVALLIS, acting by
and through the Corvallis City
Council,**

          Defendant.

_____

AIKEN, District Judge.

      This case was removed to federal court while Plaintiff's Motion for Preliminary Injunction was pending before the Benton County Circuit Court. ECF. No. 1-1. Following removal, Defendant did not respond to Plaintiff's motion. On February 22, 2024, this Court granted Plaintiff's motion for preliminary injunction at a hearing, ECF No. 9, and Opinion serves to memorialize that Order.

## LEGAL STANDARD

      A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the

balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

"Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).

## BACKGROUND

Defendant City of Corvallis is an Oregon municipality. It is governed by the Corvallis City Council, which is composed of nine Councilors and a non-voting Mayor. Compl. ¶ 5. ECF No. 1-1. Each of the Councilors represents a City Ward. *Id.* Plaintiff Charlyn Ellis is a member of the Corvallis City Council, representing Ward 5. Ellis Decl. ¶ 3. ECF No. 1-1.

Plaintiff is also the chair of the Climate Action Advisory Board ("CAAB"), which "is tasked, among other things, with helping Corvallis meet the greenhouse gas emissions target set forth in the Corvallis Climate Action Plan (CAP) and with advising the City Council on all matters related to implementation of the CAP." Ellis Decl. ¶ 4.

On September 13, 2023, at a public meeting of the CAAB, Plaintiff raised a concern that the CAAB had insufficient staff support from the City and "pointed out that the position of Climate Program Specialist, a City job, was vacant." Ellis Decl. ¶ 5. As a result of Plaintiff's concerns, the CAAB "agreed to advise the City County to consider directing the City Manager to post the position of Climate Program Specialist for hiring." *Id.* The City Manager was not present at the CAAB meeting. *Id.*

On September 18, 2023, at a public meeting of the City Council, Plaintiff moved the Council "to direct the City Manager to post the full-time job position of Climate Program Specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled." Ellis Decl. ¶ 6. The motion was not adopted. *Id.* The City Manager was not at the meeting. *Id.*

On November 27, 2023, Plaintiff met with the Mayor, Council President, and City Attorney. Ellis Decl. ¶ 7. Plaintiff was told that her public statements at the CAAB meeting and her motion to the City Council violated Section 23(f) of the Corvallis City Charter. *Id.* Plaintiff was told that proceedings had been initiated to remove her from office. *Id.*

Section 23(f) of the Corvallis City Charter provides as follows:

Interference in administration and elections. Neither the Mayor nor any member of the Council shall in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies; or attempt to exact any promise relative to any appointment from any candidate for Manager, or discuss directly or indirectly, with the Manager the matter of specific appointments to any City office or employment. A violation of the foregoing provision of this section shall forfeit the office of the offender. Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

Compl. ¶ 10.

The allegations and charges against Plaintiff were set forth in a document entitled "A Resolution Regarding a Violation of Section 23(f) and Declaring a Vacancy in the Ward 5 Council Position," (the "Expulsion Resolution."). Ellis Decl. ¶ 8. The Expulsion Resolution alleges that Plaintiff's statements at the September 13, 2023, CAAB meeting "were a direct and indirect attempt to influence the City Manager in the appointment of an employee and an attempt to discuss indirectly with the City Manager the matter of specific appointment to City employment." Ellis Decl. Ex. 1, at 3. The Expulsion Resolution also alleges that Plaintiff's statements at the September 18, 2023, City Council meeting were "a direct attempt to influence the City Manager in the appointment of an employee and an attempt to discuss directly with the City Manager the matter of specific appointment to City employment." *Id*. The Expulsion Resolution was supported by the joint Declaration of Mayor Charles Maughan, Council President Tracey Yee, Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James Brewer. Ellis Decl. ¶ 8; Ex. 2.

In the City's Due Process Memorandum, the charges against Plaintiff were set forth as follows:

> The City of Corvallis has charged Councilor Ellis with violating the Charter, specifically Section 23(f), in two particulars:
>
> 1. During the September 13, 2023 Corvallis Climate Action Advisory Board ("CAAB") meeting (the "CAAB Meeting"), Councilor Ellis introduced and discussed her concern that the CAAB has insufficient staff support to conduct its meetings and work and advocated that the CAAB adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties to support the work of the CAAB within a specific amount of time; and
>
> 2. In the record City of Corvallis City Council meeting held on September 18, 2023 (the "Council Meeting"), Councilor Ellis moved "to direct the City Manager to post the full-time job of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled," which motion was later amended by substitution.
>
> The actions of Councilor Ellis violated Section 23(f) in that they were both direct and indirect attempts, by suggestion or otherwise, to influence or coerce the City Manager in the appointment of an employee or officer. These charges are reflected in the Resolution noted for hearing on February 5, 2024.

Ellis Decl. Ex. 3, at 4.

The Expulsion Resolution was the subject of a due process hearing, which was scheduled for February 5, 2024. Ellis Decl. ¶ 9. Plaintiff filed suit in Benton County Circuit Court on January 22, 2024, seeking injunctive relief and a declaratory judgment concerning Section 23(f). On January 31, 2024, the City removed the case to federal court. ECF No. 1.

## DISCUSSION

In this motion, Plaintiff seeks an injunction (1) enjoining the City from continuing to prosecute Plaintiff under Section 23(f) of the Corvallis City Charter until further order of the Court; (2) ordering the City to cancel the due process hearing against Plaintiff and set no future hearing in that matter until further order of the Court; (3) enjoining the City from adopting the Expulsion Resolution or any similar resolution pending further order of the Court; (4) enjoining the City from bringing any additional proceeding against Plaintiff or any other member of the City Council under Section 23(f) until further order of the Court.  Pl. Mot. 2-3.

### I.     Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

### A. Oregon Constitution

The Oregon Constitution provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." Or. Const. art. 1, § 8.  "This forecloses the enactment of any law written in terms

directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined to within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson*, 293 Or. 402, 412 (1982).

The Oregon Supreme Court has "recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on the pursuit or accomplishment of *forbidden results*." *State v. Plowman*, 314 Or. 157, 163-64 (1992) (citing *Robertson*, 293 Or. at 416-17) (emphasis in original). Accordingly, under *Robertson*, laws restricting speech are divided into three categories. *Multnonah Cnty. v. Mehrwein*, 366 Or. 295, 301 (2020).

The first *Robertson* category "encompasses any law 'that is written in terms directed to the substance of any 'opinion' or any 'subject' of communication.'" *Mehrwein*, 366 Or. at 301 (quoting *State v. Babson*, 355 Or. 383, 393-94 (2014)). Laws that focus on the content of the speech will violate the Oregon constitution unless they fall within some historical exception. *Robertson*, 293 Or. at 412. "Analysis under the first category of *Robertson* is focused on the text of the law," and examines the context and legislative history "only when there is some question regarding the legislature's intent regarding the meaning or scope of the text of the statute." *Babson*, 355 Or. at 394, 396. "The court in *Robertson* framed this inquiry as whether the stature was 'written in terms' directed at speech." *Id.* at 394.

"A law falls under the second category of *Robertson* if it is 'directed in terms against the pursuit of a forbidden effect'" and "'the proscribed means [of causing that effect] include speech or writing." *Babson*, 355 Or. at 397 (quoting *Robertson*, 293 Or. at 415, 417-18). The third *Robertson* category "also focuses on forbidden effects, but without referring to expression at all." *Plowman*, 314 Or. at 164.

Because Section 23(f) purports to forbid discussion of an entire subject—employment by the City and City procurement—it falls within the first *Robertson* category and will only be permissible under the Oregon Constitution if it falls within some historical exception. The City, as the party opposing a claim of constitutional privilege, bears the "heavy burden" of demonstrating that a historical exception applies. *Moser v. Frohnmeyer*, 315 Or. 372, 376 (1993). The City did not respond to Plaintiff's motion for preliminary injunction and so have failed to carry that burden. The Court concludes that no such historical exception is implicated. The Court concludes that Plaintiff has demonstrated an adequate likelihood of success on the merits of her claim under the Oregon Constitution.

### B. First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech[.]" U.S. Const. Amend. I. The Fourteenth Amendment makes this limitation applicable to the states and to their political subdivisions. *Foti v. City of Menlo Park*, 146 F.3d 629, 634 n.4 (9th Cir. 1998). "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content," although "this principle, like

other First Amendment principles, is not absolute." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks and citation omitted, alterations normalized).

Here, Plaintiff bases her motion for preliminary injunction on the allegation that the City retaliated against her for her protected expression. The First Amendment "prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (internal quotation marks and citation omitted). This prohibition extends to retaliation against elected officials for their protected speech. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). "An elected official's claim under 42 U.S.C. § 1983 for First Amendment retaliation by his elected peers begins with the elements of the plaintiff's prima facie case." *Id.* at 775. To maintain a prima face case, a plaintiff must show (1) he engaged in constitutionally protected activity; (2) as a result he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Id.*

With respect to the first element, the First Amendment "has no application when what is restricted is not protected speech." *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 121 (2011). Plaintiffs bear the burden of establishing that the activity in question is protected expression. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).

The Ninth Circuit has recently held that the exercise of the powers of a legislator's office for expressive purposes is not protected expression for purposes of the First Amendment. *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024). Legislative power "is not personal to the legislator but belongs to the people; the legislator has no personal right to it," *Carrigan*, 564 U.S. at 126, and the First Amendment does not confer a right to "use governmental mechanics to convey a message." *Linthicum*, 94 F.4th at 893 (internal quotation marks and citation omitted).

Here, the allegations in the Expulsion Resolution assert that Plaintiff violated Section 23(f) by making a motion at the September 18, 2023, meeting of the City Council. This is a use of governmental mechanics and an exercise of the powers of Plaintiff's office and so is not protected expression. However, the allegations related to the September 13, 2023, meeting of the CAAB only charge Plaintiff with discussing the forbidden subjects and with advocating for a course of action. These are not the use of governmental mechanics. They are simply speech and so protected by the First Amendment.

By advancing the Expulsion Resolution and seeking to remove Plaintiff from office, the City has obviously subjected Plaintiff to an adverse action. The causal connection between the adverse action and the protected expression is spelled out in the Expulsion Resolution itself. The Court concludes that Plaintiff has made a sufficient showing to demonstrate a likelihood of success on the merits of her First Amendment claim.

Because Plaintiff has shown a likelihood of success on the merits of her claim, or at the very least serious questions going to the merits, the Court concludes that this factor weighs in favor of the grant of a preliminary injunction.

## II.    Irreparable Harm

In order to satisfy the standard for a preliminary injunction, a party must show that "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22 (internal quotation marks and citation omitted). "Irreparable harm is relatively easy to establish in a First Amendment Case." *CTIA—The Wireless Ass'n v. City of Berkeley¸* 928 F.3d 832, 851 (9th Cir. 2019). The Ninth Circuit has held that "an alleged constitutional infringement will often alone constitute irreparable harm," but that, in such cases, the plaintiff must still establish "a sufficient likelihood of success on the merits of its constitutional claims to warrant the grant of a preliminary injunction." *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (internal quotation marks and citation omitted, alterations normalized). Here, the Court concludes that Plaintiff has adequately demonstrated that she is likely to suffer an irreparable harm in the form of an infringement of her constitutional rights under article I, section 8 of the Oregon Constitution and under the First Amendment of the United States Constitution. This factor therefore weighs in favor of the requested injunction.

### III.    The Balance of the Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When the government is a party, these last two factors of the preliminary injunction analysis will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The finding that a Plaintiff has raised serious First Amendment issues "compels a finding that the balance of hardships tips sharply in Plaintiff's favor." *Am. Beverage Ass'n v. City and Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (internal quotation marks and citation omitted, alterations normalized). The Ninth Circuit has also "consistently recognized the significant public interest in upholding First Amendment principles," because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotation marks and citation omitted). The Court has already determined that Plaintiff has demonstrated a likelihood of success on the merits and so concludes that the public interest and the balance of the equities weigh in favor of the requested injunction.

Because all four factors weigh in favor of the grant of a preliminary injunction, the Court will grant Plaintiff's motion.

## CONCLUSION

This Opinion serves to memorialize the preliminary injunction granted on February 22, 2024.  ECF No. 9.  Until further order of this Court, the City is enjoined from:

(1) Continuing to prosecute Plaintiff under Section 23(f) of the Corvallis City Charter or proceeding with the due process hearing concerning Plaintiff's removal from office, previously scheduled for February 5, 2024;

(2) Adopting "A Resolution Regarding a Violation of Charter Section 23(f) and Declaring a Vacancy in the Ward 5 Council Position," or any similar resolution;

(3) From bringing or prosecuting additional proceedings against Plaintiff or any other member of the City Council under Section 23(f).

The Court will not require Plaintiff to furnish a bond or security for this preliminary injunction.

It is so ORDERED and DATED this  10th  day of January 2025

/s/Ann Aiken_____
ANN AIKEN
United States District Judge