# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

**CHARLYN ELLIS,**

        Plaintiff,

v.

**CITY OF CORVALLIS, acting by
and through the Corvallis City
Council,**

        Defendant.

No. 6:24-cv-00205-AA

**OPINION & ORDER**

_____

AIKEN, District Judge.

    This case comes before the Court on Cross-Motions for Summary Judgment filed by Plaintiff Charlyn Ellis and Defendant City of Corvallis. ECF Nos. 10, 15. For the reasons set forth below, Plaintiff's Motion is GRANTED in part and DENIED in part and Defendant's Motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

    Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury

could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Defendant City of Corvallis is an Oregon municipality. It is governed by the Corvallis City Council, which is composed of nine Councilors and a non-voting Mayor. Compl. ¶ 5. ECF No. 1-1. Each of the Councilors represents a City Ward. *Id.* The City also employs a City Manager who is "responsible for appointing and supervising staff support for the City's advisory boards, and for managing the City's financial budget to achieve this objective with the greatest efficiency reasonably possible." Shepard Decl. ¶ 2, ECF No. 19; Shepherd Decl. Ex. A, at 7, ECF No 11. The City Manager "is selected by the Council without regard to political considerations; serves for an indefinite term; and may be removed only by [the] Council." Brewer Decl. ¶ 4,

ECF No. 20; Shepherd Decl. Ex. A, at 7.  Mark Shepard has been the Corvallis City Manager since May 2015.  Shepard Decl. ¶ 1.

The Corvallis City Charter delineates between the City Council's policymaking power and the City Manager's responsibility for personnel, operations, and administration.  Brewer Decl. ¶ 3.  "This separation of powers between the Council and the Manager is a form of government in which [the] Council is responsible for determining policy and what resources will be available to conduct City business and operations, and the Manager is solely responsible for implementation and utilization of those resources to obtain, as the Charter states, 'the utmost efficiency in the departments.'"  *Id.*  The City Manager is "the chief executive officer and administrator of all City business, including responsibility and authority for all personnel, hiring, firing, reviewing, supervising, delegating, assigning projects, and directing all employees and officers and all departments."  Brewer Decl. ¶ 4; Shepherd Decl. Ex. A, at 8.  "With extremely limited exceptions and clear delineation, the Council has no Charter authority for hiring, firing, delegating, instructing, and supervising any of the City's employees or officers."  Brewer Decl. ¶ 3.  The City Council has authority for appointing and reviewing the performance of the City Manager, the City Attorney, and the Municipal Judge, or other positions created by the City Council for direct appointment by the City Council.  *Id.* at ¶ 4; Shepherd Decl. Ex. A, at 4.

Plaintiff Charlyn Ellis is a member of the Corvallis City Council, representing Ward 5.  Ellis Decl. ¶ 3.  ECF No. 16.  She was first elected to that position in 2016 and has served four consecutive two-year terms.  *Id.*

Plaintiff also chairs the Climate Action Advisory Board ("CAAB"). Ellis Decl. ¶ 4. The CAAB "is tasked, among other things, with helping Corvallis meet the greenhouse gas emissions target set forth in the Corvallis Climate Action Plan, and with advising the City Council on all matters related to implementation of that plan." *Id.*

On September 13, 2023, there was a public meeting of the CAAB. Ellis Decl. ¶ 5. At that meeting, Plaintiff "raised a concern that the board had insufficient City staff support to fulfill its mission and pointed out that the position of Climate Program Specialist was vacant." *Id.* The CAAB agreed to ask the City Council to consider directing the City Manager to post the position of Climate Program Specialist for hiring. *Id.*

There was a public meeting of the City Council on September 18, 2023. Ellis Decl. ¶ 6. Consistent with the determination of the CAAB, Plaintiff moved the Council "to order the City Manager to post the full-time job position of Climate Program Specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled." *Id.* City Attorney James Brewer was present at the City Council meeting and informed Plaintiff that, as a City Councilor, she "could raise issues with the Manager's job performance," but "could not direct that the Manager take any action." Brewer Decl. ¶ 6. Brewer "further advised that a Councilor can make a motion for an outcome, such as supporting Councilor Ellis' advisory board in efforts to continue their work as soon as possible, and then allow

the Manager to determine how to achieve that outcome." *Id.*  Plaintiff's motion was not adopted.  Ellis Decl. ¶ 6.

Plaintiff affirms that her statements to the CAAB and the City Council meeting "were made with the hope and intention of convincing the City Council to encourage the city manager to take steps to fill the vacant Climate Program Specialist position."  Ellis Decl. ¶ 6.

City Manager Shepard was out of town on vacation between September 12 and September 22, 2023, and so was not present at either the September 13, 2023, CAAB meeting or the September 18, 2023, City Council meeting.  Shepard Decl. ¶ 10; Ellis Decl. ¶¶ 5-6.  Shepard affirms that "at the time the relevant CAAB and Council meetings took place, there was no vacant position for a climate program specialist," and that the City "never had a position with the title or job description of a Climate Program Specialist" during Shepard's tenure as City Manager.  Shepard Decl. ¶ 13.

On November 27, 2023, Plaintiff was summoned to a private meeting with the Mayor, the Council President, and the City Attorney.  Ellis Decl. ¶ 8. At the meeting, Plaintiff was told that her statements to the CAAB on September 13, 2023, and to the City Council on September 18, 2023, violated Section 23(f) of the Corvallis City Charter and that Plaintiff was being removed from her position as Councilor for Ward 5. *Id.*

Section 23(f) of the Corvallis City Charter provides as follows:

> Interference in administration and elections.  Neither the Mayor nor any member of the Council shall in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or

in the purchase of supplies; or attempt to exact any promise relative to any appointment from any candidate for Manager, or discuss directly or indirectly, with the Manager the matter of specific appointments to any City office or employment.  A violation of the foregoing provision of this section shall forfeit the office of the offender.  Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City.

Shepherd Decl. Ex. A, at 9.

The allegations and charges against Plaintiff were set forth in "A Resolution Regarding a Violation of Charter Section 23(f) and Declaring a Vacancy in the Ward 5 Council Position" (the "Expulsion Resolution."manner).  Ellis Decl. ¶ 9; Ex. 1.  The Expulsion Resolution alleges that Plaintiff's statements at the September 13, 2023, CAAB meeting "were a direct and indirect attempt to influence the City Manager in the appointment of an employee and an attempt to discuss indirectly with the City Manager the matter of specific appointment to City employment."  Ellis Decl. Ex. 1, at 3.  The Expulsion Resolution also alleges that Plaintiff's statements at the September 18, 2023, City Council meeting were "a direct attempt to influence the City Manager in the appointment of an employee and an attempt to discuss directly with the City Manager the matter of specific appointment to City employment."  *Id.* The Expulsion Resolution was supported by the joint Declaration of Mayor Charles Maughan, Council President Tracey Yee, Council Vice President Hyatt Lytle, City Manager Mark Shepard, and City Attorney James Brewer.  Ellis Decl. ¶ 9; Ex. 2.

Plaintiff initially accepted the opinion of the City Attorney and told those at the November 27, 2023, meeting that she intended to resign from her position on the City Council.  Ellis Decl. ¶ 11; Ex. 2, at 1.  However, Plaintiff subsequently obtained

independent legal advice, rescinded her planned resignation, and demanded a hearing on the Expulsion Resolution before the full City Council.  Ellis Decl. ¶ 12; Ex. 2, at 2.  The City agreed to provide the requested hearing.  *Id.*

In advance of the due process hearing, the City of Corvallis retained outside counsel and submitted a Due Process Hearing Memorandum (the "Due Process Memo") "to describe the issues presented under the City Charter, summarize the factual record, and outline the pertinent legal issues for the City Council's consideration."  Shepherd Decl. Ex. E, at 4.  The Due Process Memo summarized the case as follows:

> The City of Corvallis has charged Councilor Ellis with violating the Charter, specifically Section 23(f), in two particulars:
>
> 1. During the September 13, 2023 Corvallis Climate Action Advisory Board ("CAAB") meeting (the "CAAB Meeting"), Councilor Ellis introduced and discussed her concern that the CAAB has insufficient staff support to conduct its meetings and work and advocated that the CAAB adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties to support the work of the CAAB within a specific amount of time; and
>
> 2. In the record City of Corvallis City Council meeting held on September 18, 2023 (the "Council Meeting"), Councilor Ellis moved "to direct the City Manager to post the full-time job of Climate Program specialist within two weeks and provide an update of the hiring process at every meeting until the position is filled," which motion was later amended by substitution.
>
> The actions of Councilor Ellis violated Section 23(f) in that they were both direct and indirect attempts, by suggestion or otherwise, to influence or coerce the City Manager in the appointment of an employee or officer.  These charges are reflected in the Resolution noted for hearing on February 5, 2024.

Shepherd Decl. Ex. E, at 4.

Plaintiff commenced this action in Benton County Circuit Court on January 22, 2024. ECF No. 1-1. Plaintiff also sought a preliminary injunction halting efforts to remove her from office. The City removed the case to federal court, but did not respond to Plaintiff's motion for preliminary injunction. This Court granted the preliminary injunction.

Plaintiff affirms that "[i]t has been made clear to me by city officials that, consistent with the Expulsion Resolution, but for my statements at the September 13th and 18th meetings the City would not have initiated proceedings to remove me from office under section 23(f) of the City Charter." Ellis Decl. ¶ 13. Plaintiff also affirms that, because of the Expulsion Resolution and the City's efforts to remove Plaintiff from office, Plaintiff has "refrained from making additional *public* statements at Climate Action Advisory Board and City Council meetings on the subject City hiring activities, including statements related to my political position on the importance of posting the Climate Program Specialist position for hiring." *Id.* at ¶ 14 (emphasis in original). Plaintiff affirms that, had the City not initiated expulsion proceedings against her, she would have continued to make similar statements and that her "public political speech has been chilled by the City's expulsion proceeding," and that her ability to represent her constituents has been compromised. *Id.* Plaintiff also asserts that, as a result of the Expulsion Resolution and related efforts, she has "refrained from making certain *non-public* statements" on the hiring of the Climate Program Specialists. *Id.* at ¶ 15 (emphasis in original).

Plaintiff asserts that she has learned that other elected officials are wary of "sharing [her] fate (*i.e.*, threatened expulsion)" and so have self-censored their public statements on matters of public importance in Corvallis.  Ellis Decl. ¶ 16.

## DISCUSSION

In this action, Plaintiff seeks a declaration (1) that the City's expulsion proceeding violates Article 1, section 8 of the Oregon Constitution and the First Amendment of the United States Constitution; (2) that any decision of the City Council that purports to remove Plaintiff from her position based on her protected speech is void; (3) that Section 23(f) of the Corvallis City Charter is invalid under the Oregon Constitution and the First Amendment.  Plaintiff seeks an award of nominal damages.  Plaintiff brings both facial and as-applied challenges to Section 23(f), as well as a retaliation claim under the First Amendment.

As a preliminary matter, the Court must address Plaintiff's argument about whether the statements Plaintiff made at the September 13, 2023, CAAB meeting and the September 18, 2023, City Council meeting are covered by Section 23(f).  The final sentence of Section 23(f) provides: "Nothing in this section shall be construed, however, as prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City."

Plaintiff asserts that the challenged statements were made while the CAAB and City Council were in "open session" and were part of a "full and free" suggestion to the Manager of a course of action "pertaining to the City affairs or the interests of

the City." As a result, Plaintiff argues, her statements do not fall within the bounds of Section 23(f). If the Court were to accept this interpretation, Plaintiff asserts, there would be no need to address Plaintiff's as-applied challenge to Section 23(f).

This Court does not have jurisdiction, however, to pass upon substance of the charges against Plaintiff outside of an as-applied challenge. This case is a challenge to the constitutionality of Section 23(f) of the Corvallis City Charter, under which the City seeks to expel Plaintiff from her position on the City Council. It is not a case about whether Plaintiff *actually violated* Section 23(f). It may well be that Plaintiff's statements were made in open session and so fall beyond the bounds of Section 23(f), but that is a question for a different body than this Court.

## I.    Construction of Section 23(f), the Charges Against Plaintiff, and Standing

The parties present divergent interpretations of Section 23(f), based on the grammatical structure of the provision. The subsection is a single block of text, but two distinct clauses can be discerned, offset from one another by a semicolon. However, the second clause forbids two distinct categories of conduct which are separated with a disjunctive "or." These distinct categories refer respectively to the extraction of promises from prospective city managers and to discussions with current city managers, which suggests that they were intended to be considered separately. As a result, the Court concludes that there are three substantive clauses in Section 23(f). When the clauses are separated from one another according to the position of the semicolon and the disjunctive "or," the following formulation emerges:

Neither the Mayor nor any member of the Council shall

> [i] in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the purchase of supplies; or
>
> [ii] attempt to exact any promise relative to any appointment from any candidate for manager, or
>
> [iii] discuss, directly or indirectly, with the Manager the matter of specific appointment to any City office or employment.
>
> A violation of the foregoing provisions of this section shall forfeit the office of the offender . . .

Shepherd Decl. Ex. A, at 9.

For ease of reference, the Court shall refer to the first clause as the "Influence Clause," and the second clause as the "Promises Clause," and the third clause as the "Discussion Clause."

This distinction is important because the parties have very different ideas of the "charges" against Plaintiff. The City asserts that Plaintiff was only "charged" with violation of the Influence Clause and so lacks standing to challenge the other clauses of Section 23(f).

In the context of an overbreadth challenge, the traditional elements from *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), apply. *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007). Those elements are (1) an injury in fact which is actual, concrete, and particularized; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury can be redressed by a favorable decision of the court. *Lujan*, 504 U.S. at 560-61.

To maintain standing in a "pre-enforcement action," the plaintiff must demonstrate "a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (internal quotation marks and citation omitted). "It is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably infected with constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *Id.* (internal quotation marks and citation omitted). First Amendment challenges "present unique standing considerations such that the inquiry tilts dramatically toward a finding of standing," because "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Id.* (internal quotation marks and citation omitted).

As noted, the City maintains that Plaintiff only has standing to challenge the Influence Clause. In support of its argument, the City points to the Due Process Memo submitted by the City for Plaintiff's due process hearing. Shepherd Decl. Ex. E. In the Due Process Memo, the City maintains that Plaintiff violated the Influence Clause but does not assert that Plaintiff violated the Promises Clause or the Discussion Clause. As a result, the City claims, Plaintiff cannot demonstrate any realistic danger that the other clauses would be enforced against her.

Plaintiff, by contrast, rests her argument on the Expulsion Resolution, which charges Plaintiff with violation of the Discussion Clause in addition to the Influence

Clause, as to both the September 13, 2023, CAAB Meeting and the September 18, 2023, City Council Meeting:

> WHEREAS the actions of Councilor Ellis at the Corvallis Action Advisory Board *were a direct and indirect attempt to influence the City Manager* in the appointment of an employee and *an attempt to discuss indirectly with the City Manager the matter of specific appointment to City employment*; and
>
> WHEREAS the actions of Councilor Ellis at the City of Corvallis Council meeting *were a direct and indirect attempt to influence the City Manager* in the appointment of an employee and *an attempt to discuss indirectly with the City Manager the matter of specific appointment to City employment*; and . . .

Ellis Decl. Ex. 1, at 3 (emphasis added).

Whether or not the City chose to actively *argue* that Plaintiff violated of the Discussion Clause of Section 23(f), Plaintiff was explicitly threatened with expulsion from the City Council for violation of both the Influence Clause and the Discussion Clause. The City's Due Process Memo references the Expulsion Resolution as a live measure: "The City of Corvallis has charged Counselor Ellis with violating the Charter, specifically Section 23(f) in two particulars . . . These charges are reflected in the Resolution noted for hearing on February 5, 2024." Shepherd Decl. Ex. E, at 4-5. The Due Process Memo also indicates that the Expulsion Resolution was attached as an exhibit. Shepherd Decl. Ex. E, at 10.

The Court concludes that Plaintiff was charged with violation of both the Influence Clause and the Discussion Clause of Section 23(f) as set forth in the Expulsion Resolution. Plaintiff faces a credible threat that the Discussion Clause and the Influence Clause will be involved against her and so has standing to challenge

the constitutionality of those clauses in this action. In addition, Plaintiff has presented evidence of chilled speech in the form of her own declaration.

## II.    Oregon Constitution Article I, Section 8

Plaintiff asserts that the Influence and Discussion Clauses of Section 23(f) are facially unconstitutional under article I, section 8 of the Oregon Constitution. Plaintiff also brings an as-applied challenge to the enforcement of those provisions.

### A. The *Robertson* Analysis

The Oregon Constitution provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." Or. Const. art. 1, § 8. "This forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined to within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson*, 293 Or. 402, 412 (1982).

The Oregon Supreme Court has "recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on the pursuit or accomplishment of *forbidden results*." *State v. Plowman*, 314 Or. 157, 163-64 (1992) (citing *Robertson*, 293 Or. at 416-17) (emphasis in original). Accordingly, under *Robertson*, laws restricting speech are divided into three categories. *Multnonah Cnty. v. Mehrwein*, 366 Or. 295, 301 (2020).

The first *Robertson* category "encompasses any law 'that is written in terms directed to the substance of any 'opinion' or any 'subject' of communication.'" *Mehrwein*, 366 Or. at 301 (quoting *State v. Babson*, 355 Or. 383, 393-94 (2014)). Laws that focus on the content of the speech will violate the Oregon constitution unless they fall within some historical exception. *Robertson*, 293 Or. at 412. Such laws are termed a "Category One" law under *Robertson*. "Analysis under the first category of *Robertson* is focused on the text of the law," and examines the context and legislative history "only when there is some question regarding the legislature's intent regarding the meaning or scope of the text of the statute." *State v. Babson*, 355 Or. 383, 394, 396 (2014). "The court in *Robertson* framed this inquiry as whether the statute was 'written in terms' directed at speech." *Id.* at 394.

"A law falls under the second category of *Robertson* if it is 'directed in terms against the pursuit of a forbidden effect'" and "'the proscribed means [of causing that effect] include speech or writing." *Babson*, 355 Or. at 397 (quoting *Robertson*, 293 Or. at 415, 417-18). When a statute is "directed in terms against the pursuit of a forbidden effect and not . . . against forbidden speech as such, it is not a law whose enactment was for this reason alone wholly withdrawn from legislative authority by article I, section 8." *Robertson*, 293 Or. at 415. As a result, to be permissible, "laws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end." *Id.* at 416-17. "Such laws are analyzed for overbreadth," and "must be scrutinized to determine whether it appears to reach

privileged communication or whether it can be interpreted to avoid such 'overbreadth.'" *Plowman*, 314 Or. at 164 (quoting *Robertson*, 293 Or. at 417-18). A second category law will be held to be "facially invalid" if it is overbroad. *Mehrwein*, 366 Or. at 302. However, to be subject to an overbreadth inquiry under the second *Robertson* category, a law must "expressly refer to expression as a means of causing harm," or it must "'obviously' prohibit expression." *Babson*, 355 Or. at 403-04.

The third *Robertson* category "also focuses on forbidden effects, but without referring to expression at all." *Plowman*, 314 Or. at 164. Most laws fall into this category, including laws "that do not expressly restrict speech but that may have the effect of prohibiting or limiting it." *Mehrwein*, 366 Or. at 302. "If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not be constitutionally applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8." *Robertson*, 293 Or. at 417. In other words, a constitutional challenge to a law that falls under the third *Robertson* category must be "as-applied," rather than a facial challenge, or else for vagueness. *Babson*, 355 Or. at 404. Under that analysis, "a law is invalid as applied to particular expression if it did, in fact, reach privileged communication and enforcement of the law against a particular defendant impermissibly burdened his or her right of free speech." *Babson*, 355 Or. at 406 (internal quotation marks and citation omitted, alterations normalized). Some

burdens on expressive activity are permissible, however, "such as time, place, and manner restrictions." *Id.*

## B. The Discussion Clause and Influence Clause fall into Category One

In applying the analytical framework of *Robertson*, the Oregon Supreme Court has held that the first step "is to determine whether the law is written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Plowman*, 314 Or. at 165 (internal quotation marks and citation omitted). Here, as noted, Plaintiff was "charged" with violating two different clauses of Section 23(f)— the Discussion Clause and the Influence Clause. The Discussion Clause forbids a city councilor to "discuss, directly or indirectly with the Manager the matter of specific appointment to any City office or employment." On its face, the Discussion Clause is directed at the "subject" of communication in that it forbids all communication between the councilors and the City Manager on the matter of specific appointments to employment. *See City of Portland v. Tidyman*, 306 Or. 174, 184 (1988) (noting that the challenged ordinance was "flatly directed against one disfavored type of pictorial or verbal communication."). This prohibition runs directly afoul of article I, section 8 of the Oregon Constitution. The City does not argue that any historical exception to the sweep of the free speech clause will apply to salvage the Discussion Clause, nor has the Court been able to identify an applicable historical exception.

The Influence Clause, which forbids councilors to "in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the Manager in the making of any appointment or removal of any officer or employee or in the

purchase of supplies," is a less obvious case. The parties agree that the Influence Clause implicates speech, Plaintiff by arguing that it falls within Category One and the City by arguing that it falls within Category Two. The Court agrees that, at the very least, the phrase "by suggestion or otherwise" is an explicit reference to speech. The City argues that the Influence Clause falls within Category Two because it is not focused on the content of the speech, but on its effects: an attempt to influence or coerce the City Manager. There is some merit to this argument, but the Court notes that this is not a blanket prohibition on efforts to influence or coerce the City Manager in the performance of their duties. Instead, the Influence Clause is focused on the specific areas of employment and procurement and restricts speech only as to those subjects. This is a restriction on the "subject" of communication, which places the Influence Clause within *Robertson* Category One.[1]  *Plowman*, 314 Or. at 165.

The City argues that, even if it falls within Category One, Section 23(f)'s content-based restrictions may be permissible under the "incompatibility" exception. The incompatibility exception has only been applied in limited circumstances to hold that article I section 8 of the Oregon Constitution does not prohibit content-based restrictions of speech by a public official where the speech is so "incompatible" with the official's position that it "vitiates the proper performance of that function under the circumstances of the specific case." *In re Lasswell*, 296 Or. 121, 125 (1983). *Lasswell* involved bar disciplinary proceedings against a prosecutor who had made public statements to news media concerning a prosecution by his office, which might

---

[1] A similar analysis of "content neutrality" applies to First Amendment challenges, as discussed below.

have impaired the right of the accused to a fair trial. *Lasswell*, 296 Or. at 123. The prosecutor challenged the disciplinary rule under the article I, section 8 of the Oregon Constitution as a content-based restraint on his speech. *Lasswell*, 296 Or. at 124. The Oregon Supreme Court held that the "point of the disciplinary rule" was "not restraint of free expression by lawyers because they are lawyers," as such a rule would be facially unconstitutional. *Id.* at 125. Rather, it was focused on his public role as a prosecutor: "In short, a lawyer is not denied freedom to speak, write, or publish; but when one exercises official responsibility for conducting a prosecution according to constitutional standards, one also undertakes the professional responsibility to protect those standards in what he or she says or writes." *Id.* The court concluded that the disciplinary rules survived a facial challenge "if it is narrowly interpreted so as to limit its coverage, in the words of article I, section 8, to a prosecutor's 'abuse' of the right 'to speak, write, or print freely on any subject whatever.'" *Id.*

Several years later, the Oregon Supreme Court revisited the "incompatibility" exception in *In re Fadeley,* 310 Or. 548 (1990). *Fadeley* involved a judge who personally solicited campaign contributions and was charged with violation of the Code of Judicial Conduct. *Id.* at 550-51. The Oregon Supreme Court observed that the "stake of the public in a judiciary that is both honest in fact and honest in appearance is profound," and that when society "leaves many of its final decisions, both constitutional and otherwise, to its judiciary," it "is totally dependent on the scrupulous integrity of that judiciary." *Id.* at 563. As a result, a "judge's direct

request for campaign contributions offers a *quid pro quo* or, at least, can be perceived by the public to do so." *Id.* As a result, the soliciting of campaign contributions by the judge was incompatible with the role of a judge and the Oregon Supreme Court found the judicial canon prohibiting the solicitation of contributions to be constitutional. *Id.* at 564.

The Oregon Supreme Court's application of the "incompatibility" exception in *Lasswell* and *Fadeley* is very limited—it applies when the speech violates a rule of professional conduct meant to shield individuals, or the public at large, from the effects of speech that is necessarily harmful. In *Lasswell*, the speech imperiled the right of the accused to a fair trial, while in *Fadeley*, the prohibited speech undermined the appearance, and possibly the fact, of a neutral and unbiased judiciary.

Here, the situation is significantly different. The Corvallis City Council is charged with supervision of the City Manager in the performance of his duties. The Discussion Clause prohibits councilors from discussing matters of employment with the City Manager in near-absolute terms.[2] It is difficult to see how such speech is so "incompatible" with the Council's obligation to supervise the City Manager that it would vitiate the proper performance of a councilor's duties. The Court declines to find that the Discussion Clause or the Influence Clause falls within the "incompatibility" exception.

---

[2] It might be said that the charter permits discussion of employment-related matters with the manager in "open session" but, as Plaintiff points out, her statements to the City Council on September 18, 2023, were unquestionably made "in open session" and that fact did not insulate her from being charged with violation of the Discussion Clause for those statements.

The Court therefore concludes that the Discussion Clause and the Influence Clause are unconstitutional on their face and the Court need not reach Plaintiff's as-applied challenge under the Oregon Constitution.

## C. Retaliation

Plaintiff argues that the Court should infer the existence of a claim for retaliation under article I, section 8 of the Oregon Constitution and adopt the test and standards for a claim for retaliation under the First Amendment. The Court need not reach that issue, however, as no claim for retaliation has been pleaded in the Complaint with respect to Plaintiff's Oregon Constitutional claims. Compl. ¶¶ 18-23. By contrast, a claim for First Amendment retaliation is explicitly pleaded. *Id.* at ¶ 27. Plaintiff may not seek summary judgment on claims that were not pleaded in the Complaint. The Court will therefore deny Plaintiff's motion for summary judgment on her claim for retaliation under the Oregon Constitution and will grant the City's motion as to that challenge.

In sum, the Court grants Plaintiff's Motion for Summary Judgment on her first claim for relief as to the Discussion Clause and the Influence Clause of Section 23(f) of the Corvallis City Charter, holding both to be facially unconstitutional. The Court denies Plaintiff's motion as to her claim for retaliation under the Oregon Constitution, as no such claim was included in the Complaint. The Court grants the City's motion for summary judgment as to the claim for retaliation, but the City's motion is otherwise denied as to Plaintiff's first claim for relief.

### III.    First Amendment

In her First Amendment claim, Plaintiff brings both facial and as-applied challenges to Section 23(f), as well as a claim for retaliation pursuant to 42 U.S.C. § 1983.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech[.]"  U.S. Const. Amend. I.  The Fourteenth Amendment makes this limitation applicable to the states and to their political subdivisions.  *Foti v. City of Menlo Park*, 146 F.3d 629, 634 n.4 (9th Cir. 1998).  "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content," although "this principle, like other First Amendment principles, is not absolute."  *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks and citation omitted, alterations normalized).

### A.  Facial Challenge

For a facial challenge under the First Amendment, "[a]n ordinance may be facially unconstitutional in one of two ways: [1] either is unconstitutional in every conceivable application, or [2] it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad."  *Foti*, 146 F.3d at 635 (internal quotation marks and citations omitted).  "In the first type of facial challenge, the plaintiff argues that the ordinance could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity."  *Id.* "The second type of facial challenge is an exception to our general standing

requirements: the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties, even if his own speech may be prohibited." *Id.* A successful facial challenge to the law will invalidate the law itself. *Id.*

### 1. Content Based and Content Neutral Laws

A key determination in the facial challenge analysis is whether the challenged law is content based or content neutral, as each type of regulation is subject to a different level of judicial scrutiny. "A regulation of speech is facially content based under the First Amendment if it targets speech based on its communicative content—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed." *Twitter, Inc. v. Garland*, 61 F.4th 686, 697 (9th Cir. 2023) (internal quotation marks and citation omitted). "Regulations draw such a distinction if they target speech based on its communicative content, prohibit public discussion of an entire topic, or single out specific subject matter for differential treatment." *Id.* (internal quotation marks and citation omitted, alterations normalized).

The key feature of a content-neutral regulation is that it restricts without reference to the *subject* of the speech. *See In re National Security Letter*, 33 F.4th 1058, 1071-72 (9th Cir. 2022) (holding that "a law that restricts speech based on its topic, message, or content is 'content based' on its face, and is accordingly subject to strict scrutiny."). In *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), for example, the government was not restricting the plaintiffs because they were performing music

expressing opposition to racism, but because they were performing music at too great a volume. *Id.* at 792. "Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Id*. at 791 (internal quotation marks and citation omitted, emphasis in original).

In this case, the Court concludes that the Discussion Clause is facially a content-based restriction on speech. It expressly forbids "discussion," *i.e.*, speech, on the specific topic of employment with the City. By its plain terms, the Discussion Clause targets speech based on its communicative content and the topic discussed.

The Influence Clause again presents a more nuanced question. The Influence Clause does implicate specific topics—hiring and procurement—without purporting to entirely forbid discussion of those topics in the same way that the Discussion Clause does. The City argues that the Influence Clause is content neutral because "the Clause applies equally to *pro*-cronyism and *anti*-cronyism messages." Def. Reply at 19, ECF No. 18. That argument conflates the "dual concepts of viewpoint-neutrality and content-neutrality," which are "equally disfavored in First Amendment jurisprudence and, thus, are interchangeable insofar as they are both subject to the same degree of judicial scrutiny." *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 432, n.29 (9th Cir. 2008); *see also Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995) ("When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious

form of content discrimination.") (internal citations omitted). "A law that is content based on its face is subject to struct scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 165 (2015) (internal quotation marks and citation omitted). In this case, Plaintiff does not argue that the Influence Clause forbids the councilors from expressing some specific viewpoint on employment or procurement. Rather, Plaintiff argues that the Influence Clause restricts speech on the specific subjects of employment and procurement and is not, therefore, content neutral. The question of viewpoint neutrality is only implicated if the law does not facially restrict the content of speech: "Only if a law is content neutral on its face should a court proceed to consider whether it is nevertheless a content-based regulation on speech because it cannot be justified without reference to the content of the regulated speech or was adopted by the government because of disagreement with the message the speech conveys." *In re National Security Letter*, 33 F.4th at 1072 (internal quotation marks and citations omitted, alterations normalized).

In *In re National Security Letter*, the challenged regulation was a nondisclosure requirement "about one specific issue: the recipient may not disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records by means of [a National Security Letter]." *In re National Security Letter*, 33 F.4th at 1072 (internal quotation marks and citations omitted). The Ninth Circuit concluded that this law was "content based on its face" because it

"targets speech based on its communicative content and restricts speech based on its function or purpose." *Id.* (internal quotation marks and citation omitted, alterations normalized). As a result, the Ninth Circuit was not obliged to consider the questions of whether "the statute stifles views with which the government disagrees," or "distinguishes among views . . . in deciding which speech is prohibited." *Id.*

In the present case, the Influence Clause does not provide a blanket prohibition on attempting to influence or coerce the City Manager. Instead, like the National Security Letter statutes, it forbids speech related to specific topics—employment and procurement—without reference to the content of that speech. Nor does it set out a content-neutral prohibition on improper influence or coercion of the City Manager in the performance of his duties. A councilor might, for example, directly coerce the City Manager to speed the issuance of a parade permit without running afoul of Section 23(f) because the coercion does not concern the prohibited topics of employment and procurement. Because the Influence Clause restricts speech according to subject and communicative purpose, it is not content neutral. As a result, it will be subject to strict scrutiny.

### 2. Strict Scrutiny

For the reasons set forth above, the Court concludes that both the Discussion Clause and the Influence Clause will be subject to strict scrutiny. "Content based regulations are presumptively unconstitutional." *Foti*, 146 F.3d at 637; *see also Lone Star Security and Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1197 (9th Cir. 2016) ("Certain types of speech regulations are presumptively invalid, including laws

that target speech based on its communicative content.") (internal quotation marks and citation omitted). "These kinds of regulations are strictly scrutinized and will be upheld only if they are narrowly tailored to serve compelling state interests." *Lone Star Sec.*, 827 F.3d at 1197. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). "To do otherwise would restrict speech without an adequate justification, a course the First Amendment does not permit." *Id.* "It is rare that a regulation restricting speech because of its content will ever be permissible." *Id.* at 818. The government bears the burden of proving the constitutionality of its laws. *Lone Star*, 827 F.3d at 1197.

In this case, the Court notes that the City has not presented an argument that either the Discussion Clause or the Influence Clause survive strict scrutiny. In a footnote of its Reply brief, the City states that it does not concede that the Influence Clause would fail strict scrutiny. Def. Reply at 18, n.6. The City's substantive arguments concern intermediate scrutiny, Def. Mot. at 22-23; Def. Reply at 20-21, but within those arguments the City maintains that the purpose of Section 23(f) is to maintain a separation of powers and to prevent corruption and that, because it applies only the Mayor and City Council, Section 23(f) is the least restrictive means of achieving that goal.

With respect to the compelling governmental interest at stake, the Court concludes that the clauses of Section 23(f) are clearly aimed at preventing corruption,

particularly cronyism and patronage in municipal employment.[3]  The Court has no trouble concluding that the prevention of corruption in municipal government is a compelling governmental interest.  As the Supreme Court has held, however, "an innocuous justification cannot transform a facially content-based law into one that is content neutral."  *Reed*, 576 U.S. at 166.  Section 23(f) must still be narrowly tailored to serve that interest.

The Court will first consider the Discussion Clause.  As noted, this covers all direct or indirect discussion of the topic of employment with the City Manager.  The fact that the provision applies only to the Mayor and City Council will not save the provision.  As the Supreme Court has recently observed, elected officials still enjoy the protection of the First Amendment and "whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that it was adopted in part to protect the free discussion of governmental affairs."  *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022) (internal quotation marks and citation omitted, alterations normalized).  "The First Amendment surely promises an elected representative . . . the right to speak freely on questions of government policy."  *Id*.

The only other significant limitation on the reach of the Discussion Clause is Section 23(f)'s final sentence: "Nothing in this section shall be construed, however, as

---

[3] The City asserts that Section 23(f) is a separation of powers provision, but the Court notes that Section 23(f) does not forbid the City Councilors from attempting to influence *any* part of the City Manager's work, but only restricts their speech in matters of employment and procurement.  Viewed in context, Section 23(f) is plainly an anti-corruption measure, rather than a structural separation of powers provision.

prohibiting the Council, while in open session, from discussing with or suggesting to the Manager, fully and freely, anything pertaining to the City affairs or the interests of the City." The purpose of this clause seems clear—municipal corruption can flourish behind closed doors, while statements made in open session would be subject to scrutiny and comment by the public, reducing the risk of the subversion of the City Manager. As Plaintiff has noted, however, "open session" is not defined in the Charter. Absence of a definition leaves Section 23(f) open to interpretation about which councilor statements and motions made during council sessions might expose councilors to the City's attempts to remove them from office.[4] Further, not all communication with the City Manager concerning employment necessarily implicates corruption. The Court concludes that the Discussion Clause fails to satisfy strict scrutiny.

The Court turns to the Influence Clause, the scope of which is not as sweeping as the Discussion Clause. However, a prohibition against attempting to "influence" the City Manager "in any manner, directly or indirectly, by suggestion or otherwise," in matters of employment or procurement is still extremely broad. As with "discussion," a councilor might attempt to influence the City Manager about employment in a manner that does not implicate concerns about corruption. Moreover, the same concerns about the lack of definition of the "open session" exception apply to the Influence Clause. The Court concludes the Influence Clause

---

[4] This possibility is not a remote or hypothetical one because, as Plaintiff points out, that is what happened in this very case. *See Tucson v. City of Seattle*, 91 F.4th 1318, 1327-28 (9th Cir. 2024) ("In determining whether a constitutional application is realistic, courts may consider whether that application has occurred in the past.").

sweeps far too broadly to be "narrowly tailored" or the least restrictive means of achieving the goal of preventing municipal corruption.

The Court concludes that both the Discussion Clause and the Influence Clause are facially unconstitutional. As such, the Court need not reach Plaintiff's as-applied challenge.

### B. Retaliation

The First Amendment "prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Wilson*, 595 U.S. at 474 (internal quotation marks and citation omitted). This prohibition extends to retaliation against elected officials for their protected speech. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). "An elected official's claim under 42 U.S.C. § 1983 for First Amendment retaliation by his elected peers begins with the elements of the plaintiff's prima facie case." *Id.* at 775. To maintain a prima face case, a plaintiff must show (1) she engaged in constitutionally protected activity; (2) as a result she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Id.*

Here, the City challenges only whether Plaintiff's speech was protected by the First Amendment and asserts that the speech in question was an exercise of the power of Plaintiff's office. The First Amendment "has no application when what is restricted is not protected speech." *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S.

117, 121 (2011). Plaintiffs bear the burden of establishing that the activity in question is protected expression. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).

The Ninth Circuit has recently held that the exercise of the powers of a legislator's office for expressive purposes is not protected expression for purposes of the First Amendment. *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024). Legislative power "is not personal to the legislator but belongs to the people; the legislator has no personal right to it," *Carrigan*, 564 U.S. at 126, and the First Amendment does not confer a right to "use governmental mechanics to convey a message." *Linthicum*, 94 F.4th at 893 (internal quotation marks and citation omitted).

Applied to the present case, Plaintiff is a "legislator" in her capacity as a member of the City Council and so, consistent with *Carrigan* and *Linthicum*, she has no personal right to use the powers conferred on her by her office for expressive purposes because those powers belong, ultimately, to the people of Corvallis and the Ward she represents. Any use of those powers for expressive purposes will not, therefore, be protected expression.

Following that train of reasoning, Plaintiff's motion during the September 18, 2023, meeting of the City Council was an exercise of her official power as a member of the City Council. That activity would not, therefore, be protected expression and so cannot sustain a claim for retaliation.

Plaintiff's statements at the CAAB meeting present a different situation, however. The Expulsion Resolution charges that Plaintiff "introduced and discussed a concern" that the CAAB "had insufficient staff support to conduct its meetings and work and advocated to the [CAAB] that it adopt a motion recommending that the City Council direct the City Manager to post and fill a specific position with a specific job title and specific duties[.]" Ellis Decl. Ex. 1, at 2. The same language was used in the City's Due Process Memo. Shepherd Decl. Ex. E, at 4. The language of the charge is telling. Plaintiff did not "move" the CAAB, but instead "introduced and discussed a concern" and "advocated" for a course of action. *Id.* Unlike making a motion to the City Council, which involves the use of governmental mechanics, "discussing," "introducing a concern," and "advocating" are simple speech.

The argument that Plaintiff's actions at the CAAB meeting were the exercise of the powers of her office suffers an additional defect in that the CAAB is not part of the City Council. *See* Brewer Decl. ¶ 8 ("To be clear, CAAB advisory board meetings are not meetings of the City Council. Rather, these are public meetings of an advisory body that require some administrative effort by City staff assigned by the Manager."). As the City explained in its Due Process Memo:

> The CAAB is a separate entity from the Council—it is a Policy Advisory Board. Policy Advisory Bodies are established by the Council and include seven voting members, including one City Councilor. While Policy Advisory Bodies may make recommendations to the City Council, they do not have the authority to direct the Council or staff to take action, nor does a Policy Advisory Body have an operational role in the work of the City.

Shepherd Decl. Ex. E, at 28 (internal quotation marks and citations omitted, alterations normalized).

Although Plaintiff chaired the CAAB because she was a councilor, Ellis Decl. ¶ 4, one need not be a member of the City Council in order to be part of the CAAB, as evidenced by the fact that six out of seven voting members of Policy Advisory Bodies are not councilors.[5] Any member of the CAAB might have made the statements at issue here and so those statements cannot be an exercise of the power of Plaintiff's office.[6] Accordingly, the Court concludes that Plaintiff's statements to the CAAB on September 13, 2023, were protected speech, satisfying the first element of the test for First Amendment retaliation.

The second and third elements of the test cannot reasonably be disputed. The effort to expel Plaintiff from the City Council is plainly an adverse action and Plaintiff has presented evidence of the chilling effect of the adverse action. Ellis Decl. ¶ 16. The causal relationship between the protected conduct and the adverse action is spelled out explicitly in the Expulsion Resolution. Accordingly, the Court concludes that the City unconstitutionally retaliated against Plaintiff for the exercise of her protected First Amendment rights.

In sum, the Court grants Plaintiff's Motion for Summary Judgment as to her second claim for relief, finding that both the Discussion Clause and the Influence

---

[5] The members of the CAAB also planned to attend the September 18, 2023, meeting of the City Council to show their support for Plaintiff's motion, which clearly demonstrates that the other member of the CAAB were not part of the City Council. Shepherd Decl. Ex. 1, at 46-47.
[6] The fact that Plaintiff was only susceptible to sanction under Section 23(f) by virtue of her position as a councilor does not make the statements themselves an exercise of the power of her office.

Clause are facially unconstitutional, and finding that the City retaliated against Plaintiff for the exercise of her First Amendment rights. Plaintiff seeks only nominal damages. Nominal damages are an available remedy for the invasion of a plaintiff's rights. *Uzuegbunum v. Preczewski*, 592 U.S. 279, 289-90 (2021). As Plaintiff requests, the Court will award Plaintiff nominal damages in the amount of $1.00.

## CONCLUSION

Defendants' Cross-Motion for Summary Judgment, ECF No. 10, is GRANTED in part and DENIED in part and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 15, is GRANTED in part and DENIED in part as set forth below:

### I.    Plaintiff's First Claim for Relief

Court declares that the Discussion Clause and the Influence Clause of the Corvallis City Charter are facially unconstitutional under article I, section 8 of the Oregon Constitution and the City's efforts to expel Plaintiff from the City Council under those provisions are void. Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED as to this issue.

Plaintiff has not pleaded a claim for retaliation under the Oregon Constitution and so Plaintiff's Motion is DENIED as to this issue and Defendant's Motion is GRANTED as to this issue.

### II.    Plaintiff's Second Claim for Relief

The Court declares that both the Discussion Clause and the Influence Clause of Section 23(f) of the Corvallis City Charter are facially unconstitutional under the First Amendment and the City's efforts to expel Plaintiff from the City Council under

those provisions are void. The Court further declares that the City retaliated against Plaintiff for the protected exercise of her First Amendment rights. Plaintiff's Motion for Summary Judgment is GRANTED as to Plaintiff's Second Claim and Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's Second Claim for Relief.

## III.   Nominal Damages

Plaintiff is awarded nominal damages in the amount of $1.00 for the violation of her constitutional rights.

It is so ORDERED and DATED this <u>10th</u> day of January 2025

<u>/s/Ann Aiken</u>
ANN AIKEN
United States District Judge